# EXHIBIT 2

Case 6:19-cv-00532-ADA Document 155 Filed 11/12/19 Page 2 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 2 of 20

Drake Turner
January 15, 2019                                                    1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3
   UNILOC USA, INC. And UNILOC    ) CIVIL ACTION NOS:
 4 LUXEMBOURG, S.A.,              ) 1:18-cv-00158,
              Plaintiffs,         ) 1:18-cv-159,
 5                                ) 1:18-cv-161,
   VS.                            ) 1:18-cv-163,
 6                                ) 1:18-cv-164,
   APPLE, INC.                    ) 1:18-cv-166, 1:18-cv-293
 7            Defendant.          ) LY

 8

 9

10      -------------------------------------------

11         ORAL AND VIDEOTAPED DEPOSITION OF

12                    DRAKE TURNER

13            TUESDAY, JANUARY 15, 2019

14                      VOLUME 1

15      -------------------------------------------

16         ORAL AND VIDEOTAPED DEPOSITION OF DRAKE

17 TURNER, produced as a witness at the instance of the

18 Defendant, and duly sworn, was taken in the above-styled

19 and -numbered cause on the 15th day of January, 2019,

20 from 9:13 a.m. to 3:25 p.m., before Natasha Duckworth, a

21 CSR in and for the State of Texas, reported by machine

22 shorthand at the offices of DLA Piper, LLP, 1717 Main

23 Street, Suite 4600, Dallas, Texas, pursuant to the

24 Federal Rules of Civil Procedure and the provisions

25 stated on the record or attached hereto.
```

Case 6:19-cv-00532-ADA   Document 155   Filed 11/12/19   Page 3 of 20
Case 1:18-cv-00158-LY   Document 56-5   Filed 05/01/19   Page 3 of 20

Drake Turner
January 15, 2019                                                    2

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:

 4       MR. KEVIN GANNON
         PRINCE LOBEL TYE, LLP
 5       One International Place
         Suite 3700
 6       Boston, Massachusetts 02110
         Telephone:  617.456.8000
 7       Facsimile:  617.456.8100
         E-mail:  Kgannon@princelobel.com
 8

 9
     FOR THE DEFENDANT:
10
         MR. JOHN M. GUARAGNA
11       DLA PIPER, LLP (US)
         401 Congress Avenue
12       Suite 2500
         Austin, Texas 78701
13       Telephone:  512.457.7125
         Facsimile:  512.721.2325
14       E-mail:  John.guaragna@dlapiper.com

15

16   ALSO PRESENT:

17       Terry van der Hayden, videographer

18

19

20

21

22

23

24

25
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 4 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 4 of 20

Drake Turner
January 15, 2019                                                    5

```
 1      A.    Drake Lee Turner.
 2      Q.    Where do you currently work?
 3      A.    In Hermosa Beach, California.
 4      Q.    Who do you work for?
 5      A.    Uniloc Luxembourg.
 6      Q.    Is Uniloc Luxembourg your only current
 7 employer?
 8      A.    Yes.
 9      Q.    Is Hermosa Beach your physical address?
10      A.    Yes.
11      Q.    Does Uniloc Luxembourg have an office in
12 Hermosa Beach?
13      A.    No.
14      Q.    Do you work from your home?
15      A.    Yes.
16      Q.    How long have you worked for Uniloc Luxembourg?
17      A.    Since June of 2014.
18      Q.    Since June of 2014 and today, have you had any
19 other employers besides Uniloc Luxembourg?
20      A.    No.
21      Q.    What were you doing before June of 2014,
22 immediately before?
23      A.    I had my own CPA practice.
24      Q.    What is your current job title with Uniloc
25 Luxembourg?
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 5 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 5 of 20

Drake Turner
January 15, 2019                                                21

```
 1  for space somewhere?
 2      A.   Uniloc 2017 is considering space in Plano and
 3  in California.  I don't believe it's currently
 4  negotiating anything.
 5      Q.   Where in California?
 6      A.   Newport Beach.
 7      Q.   Do you understand the timeline for decision on
 8  whether or not to obtain new space in Plano or Newport
 9  Beach?
10      A.   I don't know a specific timeline, but I do know
11  there's conversations with leasing agents about
12  potential space.
13      Q.   You described it as an exigent circumstance.
14  Right?
15      A.   Well, the year was closing and it was important
16  to get a closing process in place towards the end of
17  2018 rather than let it spill deep into 2019.  I wish we
18  had done it earlier.  And I'm trained as a CPA, and I
19  like to have processes in place in advance for closing
20  books.
21      Q.   You mentioned that Mr. Burdick has left Uniloc
22  USA.  Is that your testimony?
23      A.   Yes, he resigned.
24      Q.   When did that happen?
25      A.   Effective December 31st, 2018.
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 6 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 6 of 20

Drake Turner
January 15, 2019                                                    22

```
 1       Q.   Last month?
 2       A.   Yes.
 3       Q.   Did you speak with Mr. Burdick about his
 4   resignation?
 5       A.   Very briefly.
 6       Q.   What did you discuss?
 7       A.   I spoke to him on the phone maybe 60 seconds,
 8   and I thanked him for the relationship in the service
 9   over the years and asked him what his plans were.
10       Q.   What did he tell you his plans were?
11       A.   He said he needed to be in Boise, Idaho more
12   than in the past and that he was moving into private
13   practice of patent prosecution.
14       Q.   Did Mr. Burdick identify a reason for his
15   resignation?
16       A.   That he enjoyed patent prosecution the most and
17   enjoyed the freedom of being in private practice.  And I
18   was also under the impression there might be other
19   nonprofessional reasons that he needed to be in Boise.
20       Q.   Prior to his resignation, was Mr. Burdick
21   working on patent prosecution for Uniloc?
22       A.   Yes.
23       Q.   Do you anticipate he will continue the work of
24   patent prosecution for Uniloc post resignation?
25       A.   I hope that he will; though I haven't heard
```

Case 6:19-cv-00532-ADA Document 155 Filed 11/12/19 Page 7 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 7 of 20

Drake Turner
January 15, 2019                                                57

1    A.    There's a name Michelle Moreland.  Again, these
2  are signature lines.  I'm not certain they're managers,
3  but if they are these are the names.  Erez, E-r-e-z
4  Levy, L-e-v-y; James Palmer.  There's probably a couple
5  of others.  I can't think of the names.
6    Q.    So it's your testimony that there may be six
7  managers, and you can recall four as you're sitting here
8  today.  Mr. Etchegoyen, Ms. Moreland, Mr. Levy, and
9  Mr. Palmer.  Is that fair?
10   A.    That sounds about right, yep.
11   Q.    Anyone else you can recall?
12   A.    I know that -- again, I see this from the
13 Uniloc Luxembourg side, and I'm very familiar with Craig
14 being on that group.  And then all the other people were
15 designated as managers from the CF Holdings side, and
16 that's the side that I'm not super familiar with.
17   Q.    Have you ever met Ms. Moreland?
18   A.    I have.
19   Q.    Do you know where she lives?
20   A.    I don't know where she lives, but I know she's
21 based out of the Fortress office in San Francisco.
22   Q.    What about Mr. Levy?
23   A.    I've met him.
24   Q.    Where does he live?
25   A.    Same answer as Michelle Moreland.

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 8 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 8 of 20

Drake Turner
January 15, 2019                                                58

1    Q.   He works out of the Fortress office in San
2  Francisco?
3    A.   Yes.
4    Q.   What about Mr. Palmer?
5    A.   Same answer as the prior two.
6    Q.   And with regard to the other names that you
7  couldn't recall, is it your understanding that they also
8  work out of the Fortress offices in San Francisco?
9    A.   I would draw that conclusion, yes.  I'll also
10 add that I'm not sure if they're managers.  They may
11 just be on a committee.
12   Q.   Whether it's a manager or committee member,
13 they have duties and responsibilities with regard to
14 Uniloc 2017.  Correct?
15        MR. GANNON:  I'm going to object.
16 Mr. Turner is here on behalf of Uniloc USA and Uniloc
17 Luxembourg.  And these -- I've been giving you quite a
18 bit of leeway asking questions with respect to Uniloc
19 2017, and this deposition is limited to venue.  Venue is
20 determined at the time of the complaint being filed,
21 which would be for the Uniloc 2017 transaction.
22   Q.   (BY MR. GUARAGNA)  Do you have the question in
23 mind, sir?
24   A.   What's the question again?
25   Q.   Whether it's a manager or committee member,

Case 6:19-cv-00532-ADA Document 155 Filed 11/12/19 Page 9 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 05/01/19 Page 9 of 20

Drake Turner
January 15, 2019                                                61

```
 1      A.    It was in 2018.
 2      Q.    And that also took place in San Francisco?
 3      A.    Yes.
 4      Q.    Who did you meet with?
 5      A.    I met with the same people I just noted as
 6   possible managers.
 7      Q.    That's Ms. Moreland, Mr. Levy, Mr. Palmer?
 8      A.    Yes.
 9      Q.    Do you remember any others who were in the
10   meeting?
11      A.    There was another individual named Yoni Shtein,
12   Y-o-n-i S-h-t-e-i-n and one or two others that I don't
13   know their names at this point.
14      Q.    Were you the only representative of Uniloc
15   Luxembourg in the meeting?
16      A.    No.
17      Q.    Who else was there?
18      A.    Craig Etchegoyen.
19      Q.    How long did that meeting last?
20      A.    45 minutes.
21      Q.    What was the nature of that meeting?
22      A.    We were discussing the potential transaction
23   that ultimately came to fruition in May of 2018.
24      Q.    Who is Mr. Shtein?
25      A.    He's a guy who works at Fortress.
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 10 of 20
Case 1:18-cv-00133-LY Document 56-5 Filed 03/01/19 Page 10 of 20

Drake Turner
January 15, 2019

85

1  property would meet with the property manager to discuss
2  the property and repairs or, you know, any significant
3  outlays of cost or relationship or the employees of one
4  who -- of the other company that might be irritating
5  tenants, etcetera, status reports, you'd have to have
6  those meetings somewhere.
7           So typically, you know, in this case, the
8  company -- Luxembourg company being based in Luxembourg
9  and Uniloc USA being based in Texas, when the people
10 happen to be in the same place in California, it's more
11 convenient for them to meet there in California.  So it
12 was really a matter of convenience and not that it was
13 set aside as an executive location for purposes of these
14 Uniloc USA meetings or Uniloc Luxembourg meetings.  It
15 was used I guess periodically when Sean might meet with
16 Craig and discuss that relationship between Uniloc USA
17 as a service provider and Uniloc Luxembourg as the asset
18 owner.
19    Q.   So fair to say that that California location
20 was a convenient place for Uniloc people to meet?
21    A.   Yes, and Uniloc USA was paying for it so why
22 not use it.
23           MR. GUARAGNA:  We'll take five.
24           THE VIDEOGRAPHER:  We're going off the
25 record at 11:32 a.m.

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 11 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 11 of 20

Drake Turner
January 15, 2019                                                87

```
 1  Texas?
 2      A.   I will answer that in the sense that none of
 3  them maintains any office.  But to the extent that any
 4  of them have a Texas presence, it would be listed as the
 5  Tyler, Texas location.
 6      Q.   That's the only one that you're aware of?
 7      A.   Yes.
 8      Q.   All right.  How many employees does Uniloc USA
 9  currently have?
10      A.   Four.
11      Q.   Can you list them for me?
12      A.   Yes.  The three I mentioned earlier Sharon
13  Setzler, Sarah Gallegos, and Kris K, and then there's
14  Michael Ford, is that his name, as well.  And until
15  recently, of course, Sean.
16      Q.   So who is Mike Ford?
17      A.   I've never met him, but I am aware that he is
18  an employee of Uniloc USA and performs some specialized
19  services relative to some technology and research.
20      Q.   What type of specialized services does he
21  provide?
22      A.   I'm not clear about that.
23      Q.   What type of research does he do?
24      A.   Again, not clear about that.
25      Q.   Did you attempt to figure that out for purposes
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 12 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 12 of 20

Drake Turner
January 15, 2019                                                91

```
 1   yes.
 2       Q.   And that would include patents its asserting
 3   against Apple.  Right?
 4       A.   It's my -- yes, yes.
 5       Q.   And Mr. Ford is currently working on that
 6   platform in Roseville, California.  Right?
 7       A.   He works on that in Roseville in his supporting
 8   role.
 9       Q.   Who does he support in that role?
10       A.   Until now it was Sean Burdick.
11       Q.   As of today he is -- withdrawn.
12                As of today, is he the only Uniloc employee
13   working on the Centurion platform?
14       A.   When you say working on it, are you meaning
15   maintaining it, developing it, adding to it, or what?
16       Q.   As of today, what is your understanding as to
17   Mr. Ford's duties and responsibilities vis-a-vis the
18   Centurion technology platform?
19       A.   I believe his responsibilities are to maintain,
20   add, and augment as Mr. Burdick may request and as Craig
21   Etchegoyen may ask Burdick to request.
22       Q.   Have you asked Mr. Ford to utilize the
23   Centurion platform for any Uniloc work?
24       A.   I have not.
25       Q.   Are you aware of Mr. Etchegoyen asking him to
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 13 of 20
Case 1:18-cv-00138-LY Document 56-5 Filed 03/01/19 Page 13 of 20

Drake Turner
January 15, 2019                                                    95

1       A.      Yes.
2       Q.      Okay.  When did Uniloc Luxembourg take
3  ownership of the Centurion platform?
4       A.      It was developed internally by Uniloc
5  Luxembourg.
6       Q.      Internally by whom?
7       A.      Craig outsourced to software developers the job
8  of developing it.
9       Q.      Which software developers?
10      A.      I don't know the names of them.  This was
11 mostly accomplished prior to 2014 when I came on board.
12      Q.      Do you know where they were located?
13      A.      I do not.
14      Q.      Does Uniloc Luxembourg still own the Centurion
15 platform?
16      A.      No.
17      Q.      Who owns the Centurion platform?
18      A.      Uniloc 2017.
19      Q.      When did the ownership of the Centurion
20 platform shift from Uniloc Luxembourg to Uniloc 2017?
21      A.      It was part of the asset sell from Uniloc
22 Luxembourg to Uniloc 2017 in early May of 2018.
23      Q.      Is Uniloc Luxembourg still able to utilize the
24 Centurion platform now owned by Uniloc 2017?
25      A.      With permission from Uniloc 2017, I bet it can.

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 14 of 20
Case 1:18-cv-00138-LY Document 56-5 Filed 03/01/19 Page 14 of 20

Drake Turner
January 15, 2019                                                96

1  But there would be no reason for it -- them to -- there
2  would be no reason to ask or to be granted permission.
3  I can't envision why they would.
4      Q.   Is that because the activities of searching for
5  and asserting patents is no longer within the province
6  of Uniloc Luxembourg?
7      A.   Yes, that's my conclusion.
8      Q.   It's now within the province of Uniloc 2017.
9      A.   Yes.
10     Q.   Does anyone at Uniloc USA presently have access
11 to the Centurion platform for the work of Uniloc USA?
12     A.   Now that Sean is gone, I think the answer is in
13 practice, no.  Not because it's prohibited, just because
14 it's not relevant to anyone's job description.
15     Q.   Is not relevant to Mr. Ford's job description
16 today?
17     A.   Oh, of course he has access.  Sorry.  I don't
18 think of him as having access to use it.  I think of him
19 as having access to maintain it.
20     Q.   So he maintains the platform?
21     A.   Yes.
22     Q.   Does Uniloc USA have to pay Uniloc 2017 to use
23 the Centurion platform?
24     A.   I -- if I had to guess, it's the opposite.
25 Uniloc 2017, probably we should seek to be reimbursed

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 15 of 20
Case 1:18-cv-00138-LY Document 56-5 Filed 03/01/19 Page 15 of 20

Drake Turner
January 15, 2019                                                    119

1      A.   Just based on my awareness of where he is at
2   any given time in terms of if I'm calling him or talking
3   to him or saying, hey, can we get together.  Oh, no, I'm
4   not back to California until three weeks from now.  It's
5   just kind of the pattern of my observations.
6                Also I know his wife and the kids and
7   stuff, so there's a little bit of -- I'm more aware than
8   most.
9      Q.   Is Mr. Etchegoyen married?
10     A.   Yes.
11     Q.   Does his family reside in Hawaii?
12     A.   Yes.
13     Q.   You mentioned he also spends time in Texas.  Is
14  that right?
15     A.   Off and on, yes.
16     Q.   In the last six months, how much time has
17  Mr. Etchegoyen spent in Texas?
18     A.   If I had to guess, he might have been here once
19  or twice.
20     Q.   I'm not asking you to guess.  Do you have an
21  understanding as to how much time Mr. Etchegoyen spent
22  in Texas in the last six months?
23     A.   In the last six months, it's -- I would have to
24  say once if -- if he had a reason to come here for a
25  deposition, but I'm not aware of any specific instance.

Case 6:19-cv-00532-ADA Document 155-5 Filed 11/12/19 Page 16 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 16 of 20

Drake Turner
January 15, 2019                                                    120

```
 1     Q.   You can only think of one time he's been in
 2  Texas --
 3     A.   Probably, uh-huh.
 4     Q.   What about in the last 12 months?  Can you
 5  think of any other times he's traveled to Texas within
 6  the last 12 months?
 7     A.   I'm not specifically aware of his Texas travels
 8  off and on.  Again, he and I don't see each other that
 9  much.  We just correspond by phone and by e-mail.  I see
10  him about once or twice a month in a good month for
11  about 15 minutes or an hour.
12     Q.   So if you only see him once or twice a month,
13  how confident are you in your estimate as to what time
14  he spends in Hawaii versus California?
15     A.   Much more confident than the Texas element
16  because I -- if I'm going to see him face to face,
17  generally it's going to be in California because I'm not
18  going to go to Hawaii to meet with him.  I'm in
19  California; he's in California from time to time.  So
20  I'll pay much more closer attention to his whereabouts
21  as it relates to California than anything else.
22     Q.   Okay.  Would it be a fair summary of your
23  testimony to say Mr. Etchegoyen spends more time in
24  Hawaii but not specifically more than he spends in
25  California?
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 17 of 20
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 17 of 20

Drake Turner
January 15, 2019                                                  121

1    A.   I would say he spends meaningfully more but not
2  significantly more.  But at the same time, he's clearly
3  more in California than in Texas in my book.
4    Q.   And he only comes to Texas from time to time.
5  Correct?
6    A.   I think as needed, yes.
7    Q.   Okay.  Flipping over to Page 9 of Exhibit 2.
8  It says that "Mr. Etchegoyen was also the CEO of Uniloc
9  Luxembourg (the prior owner of Uniloc of 2017's patents)
10 and held the same responsibilities in that role as
11 well."
12            And I understand that to be referring to
13 the responsibilities from the previous sentence.  Is
14 that your understanding?
15   A.   Yes, that's how I read it.
16   Q.   Okay.  And this statement in the brief
17 indicates that Mr. Etchegoyen was the CEO of Uniloc
18 Luxembourg.  Do you understand him to still have that
19 role?
20   A.   That's a good question.  I believe he holds
21 that role effectively, but he's no longer -- let's try
22 this again.
23            In the transaction that occurred in May of
24 2018, the asset sell, Craig resigned his -- he -- I'm
25 sorry.  He signed a new employment agreement for Uniloc

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 18 of 20
Case 1:18-cv-00133-LY Document 56-5 Filed 03/01/19 Page 18 of 20

Drake Turner
January 15, 2019                                           164

```
 1     Q.   Okay.  And that's the Centurion platform we
 2  discussed earlier that Mr. Ford is responsible for
 3  maintaining.  Right?
 4     A.   For the maintenance, yes.
 5     Q.   Did he participate at all in the design and
 6  development of that?
 7     A.   No.
 8     Q.   That was all done by outside contractors.
 9     A.   Yes, before it came into the company.
10     Q.   Do you know which additional patents the
11  company acquired using the Centurion platform that are
12  referenced -- that is referenced in this document?
13            MR. GANNON:  I'm going to caution you not
14  to reveal any conversations or discussions with outside
15  counsel.
16     Q.   (BY MR. GUARAGNA)  The question was do you
17  know?
18     A.   I believe that the platform started being put
19  into use to some degree beginning in 2015, and therefore
20  all patents that were acquired since then probably had
21  some use of the platform but I don't know to the degree,
22  which the decisions made by those recommending it were
23  influenced by the platform.  But I do know that as time
24  went along, it became more and more important and that
25  allowed us to reduce the head count of people.
```

Case 6:19-cv-00532-ADA Document 15-5 Filed 11/12/19 Page 19 of 20
Case 1:18-cv-00138-LY Document 56-5 Filed 03/01/19 Page 19 of 20

Drake Turner
January 15, 2019                                            199

```
 1  STATE OF TEXAS       )
 2  COUNTY OF DALLAS     )
 3
 4
 5           I, Natasha Duckworth, a Certified Shorthand
 6  Reporter duly commissioned and qualified in and for the
 7  State of Texas, do hereby certify that there came before
 8  me on the 15th day of January, 2019, at DLA Piper, LLP,
 9  located at 1717 Main Street, Suite 4600, Dallas, Texas,
10  the following named person, to-wit:  DRAKE TURNER, who
11  was duly sworn to testify the truth, the whole truth,
12  and nothing but the truth of knowledge touching and
13  concerning the matters in controversy in this cause; and
14  that he was thereupon examined upon oath and his
15  examination reduced to typewriting under my supervision;
16  that the deposition is a true record of the testimony
17  given by the witness.
18           I further certify that pursuant to FRCP
19  Rule 30(e)(1) that the signature of the deponent:
20           ___ was requested by the deponent or a
21  party before the completion of the deposition, and that
22  signature is to be before any notary public and returned
23  within 30 days from date of receipt of the transcript;
24           _X_ was not requested by the deponent or a
25  party before the completion of the deposition.
```

Case 6:19-cv-00532-ADA   Document 15-5   Filed 11/12/19   Page 20 of 20
Case 1:18-cv-00138-LY   Document 56-5   Filed 03/01/19   Page 20 of 20

Drake Turner
January 15, 2019                                                      200

```
 1            I further certify that I am neither

 2   attorney or counsel for, nor related to or employed by

 3   any of the parties to the action in which this

 4   deposition is taken, and further that I am not a

 5   relative or employee of any attorney or counsel employed

 6   by the parties hereto, or financially interested in the

 7   action.

 8            CERTIFIED TO BY ME on this the 28th day of

 9   January 2019.

10

11

12

13   _____
     NATASHA DUCKWORTH, CSR
14   Texas CSR 8410
     Expiration Date:  12/31/21
15   US Legal Support, Inc.
     CRCB Registration No. 343
16   100 Premier Place
     5910 North Central Expressway
17   Dallas, Texas  75206-5190
     (214) 741-6001
18

19

20

21   Taxable cost of original charged to Defendant $ _____

22   Attorney:  Mr. John M. Guaragna

23

24

25
```