# EXHIBIT 4

JACOBS DECLARATION

EXHIBIT A

(REDACTED)

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice*)
Jennifer Greenblatt (*pro hac vice*)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (*pro hac vice*)
Emma C. Neff (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
Shaun Zhang (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eneff@goldmanismail.com
labendshien@goldmanismail.com
szhang@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

(Additional counsel listed in signature block)

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNILOC USA, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>    Defendant. | Case Nos.    3:18-cv-00360-WHA<br>         3:18-cv-00363-WHA<br>         3:18-cv-00365-WHA<br>         3:18-cv-00572-WHA<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>DATE: Thursday, November 29, 2018<br>TIME: 8:00 a.m.<br>COURTROOM: 12, 19th Floor<br>JUDGE: Hon. William Alsup |

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................iii

NOTICE OF MOTION .................................................................................................................... 1

STATEMENT OF RELIEF REQUESTED ...................................................................................... 1

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................... 2

      A.      Uniloc Lux and Uniloc USA Grant Fortress a License in All Patents of
            Uniloc Lux and Uniloc USA, Including the Right to Sublicense Third Parties .......... 3

      B.      Multiple Events of Default Occur, Vesting Fortress with Full Rights to
            Sublicense and Transfer Any and All Patents of Uniloc Lux and Uniloc USA .......... 4

      C.      Uniloc Lux Acquires the Patents-in-Suit and Purports to Grant "Exclusive"
            Rights to Uniloc USA Before Filing Suit Against Apple ............................................ 6

      D.      Uniloc Lux Terminates License to Uniloc USA and Assigns All Rights to
            Uniloc 2017, LLC ........................................................................................................ 6

      E.      Uniloc 2017 Gives a Bare Right to Sue to Both Uniloc USA and Uniloc
            Licensing USA, LLC and Retains No Right to Sue or Recover Damages ................... 7

      F.      Uniloc 2017 Grants Substantial Rights to CF Uniloc Holdings, LLC ........................ 8

      G.      Plaintiffs' Failures to Produce Discovery Relating to Standing ................................. 8

III.    LEGAL STANDARDS ...................................................................................................... 10

IV.     ARGUMENT ..................................................................................................................... 11

      A.      Plaintiffs Lacked Article III Standing at the Time They Filed Suit ......................... 11

      B.      The Court Currently Lacks Subject-Matter Jurisdiction Because the Named
            Plaintiffs Lack Article III Standing ........................................................................... 14

            1)      Uniloc USA is Solely a Litigation Agent and Lacks Constitutional
                 Standing to Sue ............................................................................................... 15

            2)      The August 28 Amendments Do Not Cure the Standing Defect for
                 Uniloc USA ...................................................................................................... 16

            3)      Uniloc USA and Uniloc Lux Cannot Remain as Parties, Even as "Co-
                 Plaintiffs" ......................................................................................................... 17

      C.      Uniloc 2017 Cannot Join the Litigation Because It, Too, Lacks Standing ............... 17

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

| | | |
|---|---|---|
| | 1) | Uniloc 2017 Expressly Relinquished All Rights to Sue and Recover Damages ................................................................ 18 |
| | 2) | Uniloc 2017 Lacks Substantial Rights in the Patents-in-Suit ....................... 19 |
| | 3) | Rule 25(c) Does Not and Cannot Cure the Uniloc Entities' Current Lack of Standing ........................................................... 21 |
| D. | | These Actions Should be Dismissed with Prejudice ................................. 22 |
| | 1) | Plaintiffs Concealed the Fortress License and the Uniloc 2017 Assignment ........................................................ 22 |
| | 2) | Plaintiffs Misrepresented and Concealed Their Standing Problems for Months ................................................................ 24 |
| | 3) | Plaintiffs Had Multiple Opportunities to Cure Their Current Standing Problem and Failed to Do So ............................................ 24 |
| V. | CONCLUSION | ................................................................. 25 |

Case 6:19-cv-00532-ADA   Document 15-7   Filed 11/12/19   Page 6 of 34

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995)...................................................................................20

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  2017 WL 3668597 (D. Del. Aug. 24, 2017) ...............................................................13

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010)..................................................................................20

*Azure Networks, LLC v. CSR PLC*,
  771 F.3d 1336 (Fed. Cir. 2014),
  *vacated on other grounds*, 135 S. Ct. 1846 (2015)..............................................10, 19

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
  261 U.S. 24 (1923)......................................................................................................15

*Enhanced Security Research, LLC v. Juniper Networks, Inc.*,
  2010 WL 2898298 (D. Del. July 20, 2010) ................................................................21

*Enviro Noise Control Corp. v. Stealth Acoustical & Emission Control Corp.*,
  2008 WL 11363360 (D. Colo. July 9, 2008) ..............................................................19

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  630 F. Supp. 2d 365 (D. Del. 2007)..........................................................11, 18, 19, 21

*In re Lone Star Silicon Innovations LLC*,
  2018 WL 500258 (N.D. Cal. Jan. 20, 2018) .............................................10, 13, 14, 16

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
  814 F.3d 1343 (Fed. Cir. 2016)...........................................................................12, 13

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)...........................................................................passim

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995)....................................................................................15

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
  2015 WL 1538259 (N.D. Cal. Apr. 6, 2015) .............................................................17

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000)............................................................................14, 16

*Propat Int'l Corp. v. Rpost, Inc.*,
  473 F.3d 1187 (Fed. Cir. 2007)............................................................................15, 20

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

*Rite-Hite Corp. v. Kelly Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ........................................................................... 14

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) ................................................................... 15, 17

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ................................................................... 10, 25

*SPH Am., LLC v. Huawei Techs.*, Co.,
   2017 WL 1331920 (S.D. Cal. Apr. 10, 2017) ................................................. 16

*Textile Prods., Inc. v. Mead Corp.*,
   134 F.3d 1481 (Fed. Cir. 1998) ........................................................................ 15

*Trend Micro Corp. v. Whitecell Software, Inc.*,
   2010 WL 4722504 (N.D. Cal. Nov. 15, 2010) ............................................... 22

*WiAV Solutions v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010) ............................................... 10, 11, 13, 14

*Wittman v. Personhuballah*,
   136 S. Ct. 1732 (2016) ..................................................................................... 10

**RULES**

Fed R. Civ. P. 12(h)(3) ............................................................................................ 10

*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

### NOTICE OF MOTION

1  **PLEASE TAKE NOTICE** that on Thursday, November 29, 2018, at 8:00 am, in

2  Courtroom 12 of the United States District Court located at 450 Golden Gate Avenue, San

3  Francisco, California, 94102, before the Honorable William Alsup, Defendant Apple Inc. ("Apple")

4  will and hereby does respectfully move this Court for an order granting Apple's Motion to Dismiss

5  for Lack of Subject-Matter Jurisdiction.

6  

### STATEMENT OF RELIEF REQUESTED

7  Through this motion, Defendant Apple requests an order dismissing with prejudice the

8  above-captioned actions brought by Plaintiffs Uniloc Luxembourg, S.A. ("Uniloc Lux") and Uniloc

9  USA, LLC ("Uniloc USA") for lack of subject-matter jurisdiction.[1] Apple further requests that the

10 Court deny as futile Plaintiffs' Motion to Join New Patent Owner Uniloc 2017. (Dkt. No. 119.)[2]

11 

## I.  INTRODUCTION

12 When analyzing standing in patent cases, courts often analogize patent rights to a "bundle of

13 sticks" and ask how much of that bundle the plaintiffs hold. Here, Plaintiffs took their "bundle of

14 sticks," stuffed them into a wood chipper, and scattered the chips. Plaintiffs' decision may satisfy

15 their business needs, but it does not satisfy Article III. Plaintiffs lacked standing to sue when they

16 filed these actions, and they lack standing today. The Court thus lacks subject-matter jurisdiction.

17 Plaintiffs lacked standing from the day these cases were filed. A patent plaintiff has standing

18 only if it has a right to exclude the defendant from practicing the patents. So if a third party has the

19 right to license the defendant's activities, the plaintiff lacks the needed exclusionary rights. Before

20 filing suit here, Plaintiffs granted a license to their creditor, Fortress Credit Co LLC ("Fortress"), to

21 secure a loan. Later, but still before filing suit, Plaintiffs defaulted on that agreement. Under the

22 agreement's terms, this default gave Fortress the right to transfer or sublicense any of Plaintiffs'

23 patents at Fortress' "sole and absolute discretion"—including to Apple. As a result, Plaintiffs

24 lacked the right to exclude Apple from using the patents and could not claim an injury-in-fact. And

25 because injury-in-fact is a required element for Article III standing, Plaintiffs never had standing.

---

[1] This Court stayed these actions on September 14, 2018. (Dkt. No. 131.) Despite the stay, however, the Court authorized Apple to file this motion regarding subject-matter jurisdiction. (*Id.* at 2.)

[2] Documents referenced herein are to case number 3:18-cv-00360-WHA, unless noted otherwise.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

Even assuming that Plaintiffs had standing at the time they filed suit, they assuredly do not have it now. As of May 3, 2018, Uniloc Lux assigned away all its rights in the patents-in-suit, including the right to sue for past damages. It thus has no standing to sue, even as a co-plaintiff. At the same time, Uniloc USA's rights in the patents-in-suit were reduced to a bare "right to sue," without any right to exclude others from using the patents, or even to use them itself. Under longstanding precedent, this is not enough to grant standing. Finally, the new entity Plaintiffs have created, Uniloc 2017, LLC ("Uniloc 2017"), cannot ride to the rescue. Although Uniloc 2017 is now the purported owner of the patents-in-suit, it contractually gave up any and all rights to sue for infringement. Uniloc 2017 also ceded control over settlement and assignment decisions to yet another Uniloc entity, CF Uniloc Holdings LLC ("CF Uniloc"). The result of this licensing scheme is that the entity that was assigned the right to sue in this litigation—Uniloc USA—has no constitutional standing to enforce that right.

Plaintiffs' lack of standing is a fatal problem. Both Uniloc Lux and Uniloc USA lacked Article III standing at the time they filed suit. And it is black-letter law that a standing defect that existed at the outset of a case cannot be cured. Even if Plaintiffs had had standing when they filed suit, they have since lost it. In either case, these actions should be dismissed. Further, Plaintiffs have repeatedly withheld or misrepresented information regarding how the rights in the patents-in-suit are divided. This behavior has already caused the Court to enter final judgment in one suit despite a lack of standing. And it has caused the parties to invest significant resources in merits discovery and briefing in these actions, where Plaintiffs also lack standing. Plaintiffs' pattern of misconduct warrants dismissal with prejudice.

## II.    BACKGROUND

The history of the rights and interests in the patents-in-suit is far thornier than Plaintiffs let on in their two-page "Detailed History of Ownership" (Dkt. No. 120) and two-paragraph motion to add Uniloc 2017 pursuant to Federal Rule of Civil Procedure 25 (Dkt. No. 119). Uniloc Lux acquired the patents-in-suit from Hewlett Packard Enterprise Development LP and Hewlett Packard Enterprise Company on May 16, 2017. (Dkt. No. 120.) Both before and after Uniloc Lux acquired the patents-in-suit, however, it entered into multiple agreements that split up the rights to those

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

patents in several ways. These rights are described below and summarized in Appendix A.

**A.    Uniloc Lux and Uniloc USA Grant Fortress a License in All Patents of Uniloc Lux and Uniloc USA, Including the Right to Sublicense Third Parties**

Since 2014, Uniloc Lux and Uniloc USA have operated as patent-acquisition and -enforcement entities. Needing money to pay for their litigation campaigns, they approached Fortress. On December 30, 2014, Uniloc Lux and Uniloc USA entered into at least two agreements with Fortress that memorialized a loan of money to the Uniloc entities. These agreements included: (1) a Revenue Sharing and Note and Warrant Purchase Agreement ("Revenue Sharing Agreement") (Ex. A); and (2) a Patent License Agreement ("Fortress License") (Ex. B). The Revenue Sharing Agreement was later amended three times, with the final amendment occurring on May 15, 2017. (Ex. C.)

As part of this financing arrangement, Uniloc Lux and Uniloc USA granted a patent license to Fortress. (Ex. A, § 2.8.) Fortress' license "***include[ed] the right to grant sublicenses***[] with respect to the Patents" and applied to "all intellectual property of [Uniloc Lux and Uniloc USA]," including the patents-in-suit. (*Id.* § 2.8, Appendix I A-7 (emphasis added); Ex. D, Levy Dep. 66:22–67:5; Ex. E, Turner Dep. 23:24–24:3.) The key language of the Fortress License provided:

> Subject to the terms and conditions herein and in the Purchase Agreement, Licensor hereby grants to Licensee a non-exclusive, ***transferrable, sub-licensable***, divisible, irrevocable, fully paid-up, royalty-free, and worldwide license to the Licensed Patents, including, but not limited to, the rights to make, have made, market, use, sell, offer for sale, import, export and distribute the inventions disclosed in the Licensed Patents and otherwise exploit the Licensed Patents in any lawful manner in ***Licensee's sole and absolute discretion*** solely for the benefit of the Secured Parties ("Patent License"), provided that Licensee shall only use the Patent License following an Event of Default.

(Ex. B, § 2.1 (emphasis added).) Fortress' right to sublicense was thus essentially unfettered. Fortress could grant licenses in its "sole and absolute discretion" unless the sublicense imposed "financial obligations or restrictions" on Uniloc Lux or Uniloc USA. (*Id.* at § 2.2.) Fortress was also permitted to transfer its rights and interests "without restriction" and "without consent of [Uniloc Lux or Uniloc USA]." (*Id.* at § 8.)

There was only one restriction on Fortress' sublicense rights. The Fortress License provided that "[Fortress] shall only use the Patent License following an Event of Default" (as defined in the

APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER JURISDICTION
3
CASE NOS. 3:18-CV-00360-WHA; -00363-WHA; -00365-WHA; -00572-WHA

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1    Revenue Sharing Agreement). (*Id.* at § 2.1.) The parties defined "Event[] of Default" very broadly.

2    (Ex. A, § 7.1) For instance, an "Event[] of Default" would occur if Uniloc Lux or Uniloc USA

3    "fail[ed] to perform or observe ***any*** of the [dozen-plus] covenants or agreements contained in

4    Article VI [of the Revenue Sharing Agreement]." (*Id.* at § 7.1.2, Article VI (first emphasis added,

5    second omitted).) Likewise, an Event of Default would occur if "*[a]ny* representation or

6    warranty . . . with respect to [Uniloc Lux and Uniloc USA] . . . [were] false in any material respect

7    on the date as of which it was made." (*Id.* at § 7.1.3 (emphasis added).) These terms allowed

8    Fortress to protect itself if the Uniloc entities did not perform as required. In that case, Fortress

9    would automatically gain the right to sublicense or even take possession of and sell any or all of

10   Uniloc Lux's and Uniloc USA's patents. (Ex. F, Security Agreement at § 7.1.)

11          **B.     Multiple Events of Default Occur, Vesting Fortress with Full Rights to
               Sublicense and Transfer Any and All Patents of Uniloc Lux and Uniloc USA**

12

13          Fortress, Uniloc Lux, and Uniloc USA executed the Third Amended Revenue Sharing

14   Agreement on May 15, 2017. As of that date—and at the time Uniloc Lux acquired the patents-in-

15   suit—at least two different Events of Default had occurred.

16          First, Uniloc Lux and Uniloc USA failed to meet the revenue covenant of Section 6.2.2 of

17   the Revenue Sharing Agreement. This covenant required that, "[a]s of March 31, 2017 and the last

18   day of each fiscal quarter thereafter, [Uniloc Lux and Uniloc USA] . . . have received at least

19   ███████ in Actual Monetization Revenues during the fourth fiscal quarter period ending on

20   such date." (Ex. A, § 6.2.2.) "Actual Monetization Revenues" referred to revenues that Uniloc Lux

21   or Uniloc USA received from licensing or judgments. (*See id.* at Appendix I A-1 (defining "Actual

22   Monetization Revenue"); Ex. D, Levy Dep. 77:23–78:5.) As of March 31, 2017, Uniloc Lux and

23   Uniloc USA had generated █████████████████ in licensing revenues for the four-

24   quarter period ending on that date. (Ex. A, Schedule 4.5(a) (total of all license agreements dated

25   between April 1, 2016, and March 31, 2017); Ex. E, Turner Dep. 29:6–30:8.) Further, Uniloc Lux

26   and Uniloc USA reported ████████ in licensing and litigation revenue for the four quarters

27   ending June 30, 2017. (Ex. G, Disclosure Schedules at -16839, -16849; Ex. E, Turner Dep. 66:4–

28   67:6, 68:15–18.)

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1   Second, Uniloc Lux and Uniloc USA breached a covenant requiring certain representations

2   to be correct. (*See* Ex. A, § 7.1.3.) Article IV of the Revenue Sharing Agreement set forth

3   representations that Uniloc Lux and Uniloc USA made "[i]n order to induce [Fortress]" to enter that

4   agreement. (*Id.* at Art. IV.) These representations were first made as of the original closing date of

5   December 30, 2014 and were later re-affirmed upon the signing of the May 15, 2017 amendment.

6   (Ex. C, § 3.02 ("The representations and warranties of [Uniloc Lux and Uniloc USA] contained in

7   the Agreement being true and correct in all material respects . . . each on and as of [May 15,

8   2017].").)

9   Among other things, Uniloc Lux and Uniloc USA represented that "[***a]ll** of the Patents . . .

10   **have not been adjudged invalid or unenforceable,** in whole or in part, and **none of the Patents [is]**

11   **at this time . . . subject to any challenge to their validity or enforceability**. (Ex. A, § 4.5 (emphasis

12   added).) Uniloc Lux and Uniloc USA also represented that they had "no notice of any lawsuits,

13   actions or opposition, cancellation, revocation, re-examination or reissue proceedings commenced

14   or threatened with reference to any of the Patents." (*Id.*) But by May 15, 2017, at least 7 Uniloc

15   patents had already "been adjudged invalid or unenforceable, in whole or in part." (*See generally*

16   Appendix B; Ex. A, § 4.5.) And at least 13 more Uniloc patents were "subject to . . . challenge[s] to

17   their validity or enforceability" in lawsuits and re-examination proceedings. (*Id.*)[3]

18   Fortress never waived these or any other Events of Default even though the Revenue

19   Sharing Agreement permitted it to do so. (Ex. D, Levy Dep. 89:13–90:15.) Nor is there any

20   evidence that Plaintiffs cured either Event of Default at any time. As a result, Fortress' right to

21   sublicense any patents owned by Plaintiffs had vested by May 15, 2017 and continued until the

22   Fortress License was ultimately terminated on May 3, 2018. (Ex. J, Termination Agreement.)

23

24

25

26

---

27   [3] Plaintiffs' representations were also false at the time they were first made on December 30, 2014.
     By that date, at least one Uniloc patent had already been adjudged invalid in part, and at least two
28   other patents were subject to pending invalidity challenges. (Ex. H, IPR2013-00391 Final Decision;
     Ex. I, Case No. 6:14-cv-00625-RWS (E.D. Tex.), Dkt. No. 73.)

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

### C.   Uniloc Lux Acquires the Patents-in-Suit and Purports to Grant "Exclusive" Rights to Uniloc USA Before Filing Suit Against Apple

On May 16, 2017—the day after executing the Third Amended Revenue Sharing Agreement—Uniloc Lux acquired the Patents-in-Suit from Hewlett Packard Enterprise Development LP and Hewlett Packard Enterprise Company. (Ex. K, Patent Sale Agreement.) Because the Revenue Sharing Agreement encompassed "all intellectual property of [Uniloc Lux and Uniloc USA]," Fortress' licensing rights attached to the patents-in-suit. (Ex. A, § 2.8, Appendix I A-7; Ex. D, Levy Dep. 66:22–67:5, 71:21–72:1 (parties intended for Fortress' rights to "attach to all of [Uniloc Lux's] . . . intellectual property" and "to include the patents Uniloc Luxembourg later acquired from Hewlett Packard").)

On May 26, 2017, Uniloc Lux and Uniloc USA entered into a License Agreement ("Lux-to-USA License"). (Ex. L, License Agreement; *see also* Dkt. No. 120.) The Lux-to-USA License purported to give Uniloc USA the "exclusive" right to make, use, sell, and sublicense the patents-in-suit. (Ex. L, § 1.) Fortress, however, already had rights to sublicense or transfer its interest in the same patents. (Ex. D, Levy Dep. 66:22–67:5, 71:21–72:1.)

### D.   Uniloc Lux Terminates License to Uniloc USA and Assigns All Rights to Uniloc 2017, LLC

In 2018, Uniloc Lux exited the picture, and a new, Fortress-controlled entity called Uniloc 2017 appeared. On March 28, 2018, Uniloc Lux agreed to assign the patents-in-suit to Uniloc 2017 and to terminate both the Lux-to-USA License and the Fortress License. (Ex. M, Asset Purchase Agreement at § 2.7(b)(iii) and (vi).) The termination formally occurred on May 3, 2018. (Ex. J.) That same day, Uniloc Lux assigned all of its right, title, and interest to the patents-in-suit to Uniloc 2017. (Ex. N, Patent Assignment at § 1(a).) Uniloc Lux also assigned all of its enforcement rights for any act of infringement—past, present, or future—to Uniloc 2017. (*Id.*)

Thus, as of May 3, 2018, Uniloc Lux no longer had any interest or rights in the patents-in-suit or in any cause of action based on infringement of these patents. Because Uniloc USA's rights in the patents-in-suit arose from the Lux-to-USA License, they, too, were terminated.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

**E.     Uniloc 2017 Gives a Bare Right to Sue to Both Uniloc USA and Uniloc Licensing USA, LLC and Retains No Right to Sue or Recover Damages**

Upon acquiring the patents-in-suit, Uniloc 2017 immediately entered into two "License Agreements": one with Uniloc USA, and one with another new entity called Uniloc Licensing (the "2017-to-USA License" (Ex. O) and the "2017-to-Licensing License," (Ex. P) respectively).

The 2017-to-USA License purported to give Uniloc USA the "exclusive" right to sue on the patents-in-suit—but **only** the right to sue. Uniloc 2017 granted Uniloc USA a "non-assignable exclusive license . . . **solely to enforce through litigation** . . . such Licensed Patents . . . in [all territories except the European Union]." (Ex. O, § 2.1 (emphasis added).) Uniloc USA's license to the Patents-in-Suit extended only to "licensing and enforcement" and "the planning and management of litigation." (*Id.* at § 1.5; *id. at* § 2.2 (providing a "limited license under the Licensed Patents solely for use in providing the Services" defined in § 1.5).) Uniloc 2017 also granted Uniloc USA "the **exclusive right** to . . . (a) manage and oversee any present suit for infringement . . . [and] (c) recover damages, profits and awards of whatever nature for past and present infringement of the Licensed Patents." (*Id.* at § 3.1 (emphasis added).) The license required Uniloc USA to remit "100%" of any proceeds received from any litigation or settlement to Uniloc 2017. (*Id.* at § 3.2.) The new license from Uniloc 2017 to Uniloc USA conveyed **no right** to practice the patents-in-suit or to exclude others from doing so. To the contrary, the 2017-to-USA License stated that, beyond the litigation rights discussed above, "no license to, or right of Uniloc 2017 under, any patents . . . is either granted or implied to Uniloc USA and all rights not expressly granted in this Agreement are reserved by Uniloc 2017." (*Id.* at § 2.4.)

In parallel with the 2017-to-USA License, Uniloc 2017 executed a May 3 license that purported to also give Uniloc Licensing an "exclusive" right to enforce the patents-in-suit. (Ex. P, § 2.1.) This license also purported to grant Uniloc Licensing an "exclusive" right to recover damages for past and present infringement, and required Uniloc Licensing to remit 100% of any proceeds recovered. (*Id.* §§ 3.1, 3.2.) And, just like the 2017-to-USA license, the 2017-to-Licensing license granted **no rights** to Uniloc Licensing to practice, or exclude others from practicing, any patents. (*Id.* at § 2.5.)

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

At some point, the Uniloc entities apparently realized that they had doled out overlapping "exclusive" rights to Uniloc USA and Uniloc Licensing. On August 28, 2018, the Uniloc entities amended the licenses granted to each of those entities, presumably to address this issue. (Ex. Q, Amendment No. 1 to 2017-USA License Agreement ("Amended 2017-to-USA License"); Ex. R, Amendment No. 1 to 2017-to-Licensing License Agreement ("Amended 2017-to-Licensing License").) Uniloc USA's license was amended to specify that Uniloc USA's exclusive right to sue related solely to a list of preexisting litigation matters. (Ex. Q, § 1(a)–(c).) That list includes the cases before this Court. (*Id.* at Schedule A-4.) The 2017-to-Licensing License, in contrast, was amended to specify that its exclusive right to sue related to all ***other*** litigation matters. (Ex. R, § 1(a)–(c).) Neither amended license gave Uniloc USA or Uniloc Licensing any exclusionary rights in the patents-in-suit, such as the right to exclude others from making or selling the inventions claimed.

### F.     Uniloc 2017 Grants Substantial Rights to CF Uniloc Holdings, LLC

At the same time as the May 3 transactions, yet another Uniloc entity—CF Uniloc Holdings LLC ("CF Uniloc")—made an appearance. Uniloc 2017 granted CF Uniloc several rights that limit Uniloc 2017's ability to control the enforcement and disposition of the patents-in-suit. (Ex. S, Note and Security Agreement at § 4.1.) First, Uniloc 2017 must "take such actions, at its expense," that CF Uniloc "deems reasonable and appropriate under the circumstances to protect or enforce" Uniloc 2017's patents. (*Id.* at § 4.9(b).) Second, Uniloc 2017 must pay all maintenance fees for all patents, and cannot elect to discontinue payment without written consent of CF Uniloc. (*Id.* at § 4.9(a).) Third, Uniloc 2017 cannot "sell, lease, transfer or otherwise dispose of" its patents without CF Uniloc's written consent. (*Id.* at § 7.1(d).) Fourth, Uniloc 2017 cannot settle any litigation unless CF Uniloc, in its sole discretion, provides written consent. (Ex. W, at § 5.6(s).)

### G.     Plaintiffs' Failures to Produce Discovery Relating to Standing

Although the transactions described above had all been completed by May 3, 2018, Plaintiffs withheld documents and information relating to them for months. By February 2018, Apple had served numerous discovery requests regarding ownership and licensing of the patents-in-suit. Responses to these requests had been due for months when the May 3 transactions occurred.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1    Yet by late August, Plaintiffs had produced ***none*** of the above-cited documents. (Dkt. No. 117.) In

2    early August, the May 3, 2018 assignment of the patents-in-suit first became available in the public

3    record. Once Apple learned of this assignment, it immediately asked Plaintiffs to produce all

4    materials regarding the transfer of ownership of or interests in the patents. (Ex. T, Winnard 8/13/18

5    Letter.) When Plaintiffs failed to make a complete production, Apple sought the Court's

6    intervention. (Ex. U, Pieja 8/21/18 Email to Foster; Dkt. No. 117.) On August 22, the Court ordered

7    Plaintiffs to "provide the Court and defendant with a detailed account setting forth the exact history

8    of ownership of the patents-in-suit by Uniloc Luxembourg, S.A. and Uniloc USA, Inc. and the

9    exact history of any ownership interest by Uniloc 2017, LLC." (Dkt. No. 118 at p. 1.) The Court

10   also ordered Plaintiffs "to supply complete details about ownership (including licensing) of the

11   patents-in-suit." (*Id.* at p. 2.)

12          The next day, Plaintiffs filed a motion to add Uniloc 2017 as a party to the litigation. (Dkt.

13   119.) In that motion, Plaintiffs represented that "Uniloc Luxembourg, S.A. assigned all of its rights,

14   interest, and title in the patents-in-suit, including the right to all causes of action, to Uniloc 2017

15   LLC." (*Id.* at pp. 1–2.) The motion did not disclose that Uniloc 2017 had divested itself of all rights

16   in the causes of action by giving exclusive rights to sue and recover damages against Apple on the

17   patents-in-suit to Uniloc USA. (Ex. O at § 2.1, 3.1(c).)

18          On August 29, Plaintiffs filed a "Detailed Account of Patent Ownership History" as ordered

19   by the Court. (Dkt. No. 120.) Yet Plaintiffs' "account" did not reveal that their creditor, Fortress,

20   had a license to the patents-in-suit that included the right to sublicense the patents. (*Compare id.*

21   *with* Ex. B at § 2.1 and Ex. D, Levy Dep. 66:22–67:5, 71:21–72:1.) Plaintiffs also did not tell the

22   Court that the 2017-to-USA License did not grant Uniloc USA any exclusionary rights in the

23   patents-in-suit.

24          On September 4, 2018, the Court ordered Uniloc to produce, by September 11, all

25   documents—"[e]verything[, n]ot just 99 percent"—responsive to Apple's requests regarding the

26   ownership of the Patents-in-Suit. (Ex. V, Hearing Tr. 18:21–24.) Those documents included

27   agreements between Uniloc Lux and Fortress. (*Id.* at 11:12–21.) On September 14, after multiple

28   requests from Apple's counsel, Plaintiffs belatedly produced the Fortress License. It was only then

*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1    that Apple learned, for the first time, that Fortress had possessed a nearly unfettered right to
2    sublicense the patents-in-suit when Plaintiffs had filed suit.

3    **III.    LEGAL STANDARDS**

4         Standing is a jurisdictional issue that arises from the "case or controversy" requirement of
5    Article III. "The party bringing the action bears the burden of establishing it has standing." *In re*
6    *Lone Star Silicon Innovations LLC*, No. C 17-03980 WHA, 2018 WL 500258, at *3 (N.D. Cal. Jan.
7    20, 2018). "A party has standing only if he shows that he has suffered an 'injury in fact' . . .."
8    *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016) ("The need to satisfy [this] requirement[]
9    persists throughout the life of the lawsuit.") (citations omitted). A lack of constitutional standing at
10   the time of filing is fatal to the action and requires dismissal. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
11   427 F.3d 971, 975–76 (Fed. Cir. 2005); *see also* Fed R. Civ. P. 12(h)(3) ("If the court determines at
12   any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). To have
13   constitutional standing to sue for patent infringement, an entity must suffer an injury-in-fact from a
14   violation of its exclusionary rights in the patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340–
15   41 (Fed. Cir. 2007). The right to exclude the accused infringer is dispositive; it distinguishes the
16   entities that can sue, whether in their own name or with another, from those that cannot. *Id.; see In*
17   *re Lone Star*, 2018 WL 500258, at *3.

18        Critically, the right to exclude can be nullified by licensing rights held by a third party. If an
19   accused infringer "has the ability to obtain . . . a license from another party with the right to grant
20   it," then the putative plaintiff "does not have an exclusionary right with respect to the alleged
21   infringer and thus is not injured by that alleged infringer." *WiAV Solutions v. Motorola, Inc.*, 631
22   F.3d 1257, 1266 (Fed. Cir. 2010). Without the right to exclude, neither a patent owner nor a
23   licensee has standing to sue, no matter what other rights each may hold. *Morrow*, 499 F.3d at 1340–
24   41*; see Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1344 (Fed. Cir. 2014) ("[A]
25   nonexclusive . . . licensee does not have a legally protected interest conferred by the Patent Act.
26   That same logic applies even if it is the patent owner holding the nonexclusive right . . . ."),
27   *vacated on other grounds*, 135 S. Ct. 1846 (2015). Similarly, a licensee that holds a bare right to
28   sue, separate from exclusionary rights in a patent, lacks Article III standing. *Morrow*, 499 F.3d at

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1342. Conversely, a patent owner that divests itself of the right to sue also lacks standing. *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 630 F. Supp. 2d 365, 372 (D. Del. 2007).

## IV.    ARGUMENT

### A.    Plaintiffs Lacked Article III Standing at the Time They Filed Suit

Article III standing in a patent case requires that the plaintiff have the "exclusive" right to control the use of the patents-in-suit. If a third party has the right to license the defendant's allegedly infringing activities, the plaintiff has no such exclusionary rights. *See WiAV*, 631 F.3d at 1266. In such a case, the plaintiff suffers no injury-in-fact from the defendant's acts because it lacks the right to exclude the defendants from using the patents to begin with. Here, neither Uniloc Lux nor Uniloc USA held exclusionary rights in the patents-in-suit when they filed these actions, because a third party—Fortress—had the right to license those patents to Apple.

As set forth above, before acquiring the patents-in-suit, Plaintiffs had granted Fortress the right to sublicense ***any*** patents owned by Plaintiffs. (Ex. A, § 2.8.) Fortress' sublicensing right attached to the patents-in-suit when Uniloc acquired them on May 16, 2017. (*See* Ex. D, Levy Dep. 66:22–67:5, 71:21–72:1.) This right was limited by one condition: Fortress could exercise it only "following an Event of Default." (Ex. B, § 2.1.) But by the time Plaintiffs had sued Apple, at least two Events of Default had already occurred.

***The first*** Event of Default occurred on March 31, 2017, because Plaintiffs did not realize ▌▌▌▌▌ in revenue for the four-quarter period ending on that date, as required by § 6.2.2 of the Revenue Sharing Agreement. (Ex. A, § 6.2.2.) Plaintiffs managed ▌▌▌▌▌ in revenue over the relevant period—a fact confirmed by Uniloc Lux's financial records and the deposition testimony of its Chief Financial Officer, Drake Turner. (Ex. A, Schedule 4.5(a); Ex. E, Turner Dep. 66:4–67:6, 68:15–18.) Under the express terms of the Revenue Sharing Agreement, Plaintiffs' failure to meet the ▌▌▌▌ threshold automatically triggered an Event of Default. (Ex. A, § 7.1.2.) That Event of Default continued through at least June 30, 2017, as Plaintiffs collected ▌▌▌▌▌ for the four-quarter period ending as of that date—again short of the ▌▌▌▌ required by the Revenue Sharing Agreement. (Ex. G.) The revenue-based Event of Default was therefore ongoing when Uniloc Lux acquired the patents-in-suit in May 2017.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1   ***The second*** Event of Default occurred with the execution of the Third Amended Revenue

2   Sharing Agreement on May 15, 2017, as Uniloc Lux and Uniloc USA made inaccurate

3   representations in that agreement. (Ex. C, Art. IV.) The agreement provided that, if certain stated

4   representations were false, an Event of Default occurred automatically. (Ex. A, § 7.1.3.) Among

5   other things, Uniloc Lux and Uniloc USA represented that, as of May 15, 2017, none of their

6   patents had been found invalid and none was subject to any pending invalidity challenge. (Ex. C,

7   § 3.02; Ex. A, § 4.5.)

8        These representations were false, and materially so. By May 15, 2017, Plaintiffs had

9   asserted 29 patents in total, at least 7 of which (nearly 25%) had been found invalid, in whole or in

10  part, and 13 more of which (another 44%) were subject to pending invalidity challenges. (*See*

11  Appendix B, List of Uniloc Patents.) These rulings and challenges to Plaintiffs' patents were

12  information material to Plaintiffs' patent-enforcement business. Plaintiffs' patents represented the

13  sole collateral for Fortress' multi-million-dollar loan. Uniloc Lux's Chief Financial Officer, Drake

14  Turner, confirmed what common sense suggests—a patent being found invalid would lower the

15  value of this collateral. (Ex. E, Turner Dep. 122:24–123:23.)

16       When Uniloc Lux acquired the patents-in-suit, then, these two Events of Default had given

17  Fortress the right in its "sole and absolute discretion" to sublicense Plaintiffs' patents for its own

18  benefit, as long as the sublicense did not impose "financial obligations or restrictions on

19  [Plaintiffs]." (Ex. B, § 2.2.) Fortress had also acquired the right to assign its right to practice

20  Plaintiffs' patents "without [] consent of [Plaintiffs]" and "without restriction." (*Id.* at § 8.) Under

21  the terms of the Fortress License, Fortress' rights extended to the patents-in-suit. (Ex. D, Levy Dep.

22  66:22–67:5, 71:21–72:1; Ex. E, Turner Dep. 23:20–24:3.) Thus, Fortress had the right to sublicense

23  the Patents-in-Suit to Apple when Plaintiffs filed suit.

24       Because Fortress had the right to sublicense or transfer its license to Apple, neither Uniloc

25  Lux nor Uniloc USA had the right to exclude Apple from practicing the patents-in-suit. Without

26  that right, Plaintiffs lacked constitutional standing to sue. *See Luminara Worldwide, LLC v. Liown*

27  *Elecs. Co.*, 814 F.3d 1343, 1348 (Fed. Cir. 2016) ("If [the patentee] could . . . license any

28  entity . . . , [the licensee] would not have had exclusionary rights to the asserted patents.");

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1  *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2017 WL 3668597, at \*3
2  (D. Del. Aug. 24, 2017) (third party's ability to license the accused infringers deprived plaintiff of
3  standing to sue). And because Fortress had the right to practice and sublicense the patents-in-suit,
4  Uniloc Lux and Uniloc USA held only ***non-exclusive*** rights in those patents. As holders of non-
5  exclusive rights, Plaintiffs fall in the category of parties that the Federal Circuit has repeatedly held
6  "cannot sue or even participate" in a patent case. *See In re Lone Star*, 2018 WL 500258, at \*3. The
7  fact that Plaintiffs describe their rights as "exclusive" is irrelevant; it is the substance of the rights,
8  not their form, that controls. *See id.*

9        Critically, Fortress' right to sublicense the Patents-in-Suit was not restricted in any legally
10  relevant way. In both *Luminara* and *WiAV*, the Federal Circuit noted that, in analyzing whether a
11  third party's licensing rights defeated standing, the dispositive issue was whether the right extended
12  to licensing the accused infringer. *Luminara*, 814 F.3d at 1348; *WiAV*, 631 F.3d at 1267. Although
13  the Federal Circuit found standing in *Luminara* and *WiAV*, it did so because the licenses at issue
14  allowed the third party to sublicense only to "affiliate[s]," and the accused infringer did not qualify
15  as an affiliate. *Luminara*, 814 F.3d at 1349; *WiAV*, 631 F.3d at 1262–63. Here, in contrast, Fortress'
16  right to sublicense had no similar restrictions. Once an Event of Default had occurred, Fortress had
17  the right to grant any sublicenses in its "sole and absolute discretion." (Ex. B, § 2.1.) Fortress also
18  held the right to transfer its rights to any third party "without restriction" and "without [Plaintiffs']
19  consent" (*Id.* at § 8.) The only restriction was that Fortress could not enter a license requiring
20  Plaintiffs to make financial "obligations." This restriction posed no limitation on Fortress' ability to
21  license Apple—Fortress could, among other things, agree to a royalty-free license that imposed no
22  financial "obligation" on anyone.[4]

23        Further, whether Fortress took action based on these Events of Default is irrelevant. Fortress
24  did not need to do anything to obtain its rights in the patents-in-suit: they vested automatically when
25  the Events of Default occurred. (Ex. A, §§ 6.2.2, 7.1.2.) Nor does it matter that Fortress did not

26

27  [4] Plaintiffs knew how to restrict a licensee's right to sublicense when they intended to do so. When
28  Uniloc Lux acquired the patents-in-suit, for example, it limited the original patent owner's ability to
sublicense to affiliates and to particular products. (Ex. K.) But Uniloc Lux and Uniloc USA agreed
not to restrict Fortress' rights in this way.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1    actually grant a license to Apple. Apple's ***ability*** to obtain a license from a party other than

2    Plaintiffs is what vitiates any claim that Plaintiffs had "exclusionary" rights in the patents-in-suit.

3    *See WiAV*, 631 F.3d at 1266 ("[A]n exclusive licensee lacks standing to sue a party who has the

4    ***ability*** to obtain such a license from another party with the right to grant it.") (emphasis added).

5         It is similarly irrelevant that the Lux-to-USA License purported to grant "exclusive" rights

6    to Uniloc USA. (Ex. L, § 1) Use of the word "exclusive" in an agreement is not a magic totem: for

7    standing purposes, it is the substance of the rights held, not their form, that governs. *See In re Lone*

8    *Star*, 2018 WL 500258, at \*3. Here, at the time Plaintiffs executed the Lux-to-USA License on May

9    26, 2017, Fortress already possessed the right to grant sublicenses to any patents owned by Uniloc

10   Lux because the Events of Default had already occurred. Fortress' rights attached to the patents-in-

11   suit when Uniloc Lux acquired them on May 16, 2017. (*See* Ex. D, Levy Dep. 66:22–67:5, 71:21–

12   72:1.) Thus, as of May 26, 2017, Uniloc Lux did not itself have an exclusive right to license the

13   patents-in-suit. Because "an owner or licensee of a patent cannot convey that which it does not

14   possess," *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000), Uniloc Lux

15   could not convey exclusive rights to Uniloc USA. In other words, Uniloc Lux could not grant

16   Uniloc USA "exclusive" rights in the patents-in-suit because Uniloc Lux itself could not "promise

17   that others shall be excluded from practicing the invention within [the relevant] territory," *Rite-Hite*

18   *Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995).

19        Plaintiffs and Fortress may not have appreciated that granting Fortress such broad rights

20   would undermine Plaintiffs' standing to sue potential infringers. But the parties' agreements are

21   deliberate and clear. "While parties are free to assign some or all patent rights as they see fit based

22   on their interests and objectives, this does not mean that the chosen method of division will satisfy

23   standing requirements." *Morrow*, 499 F. 3d at 1341 n.8. Plaintiffs' chosen division deprived them

24   of standing to sue, and their cases must be dismissed for lack of subject-matter jurisdiction.

25   **B.    The Court Currently Lacks Subject-Matter Jurisdiction Because the Named**
26        **Plaintiffs Lack Article III Standing**

27        Even if Plaintiffs could somehow show that they had constitutional standing at the time suit

28   was filed, they do not have standing now. Uniloc Lux no longer has standing because it divested

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

itself of all rights in the patents-in-suit when it assigned them to Uniloc 2017 on May 3, 2018. (Ex. N, § 1(a)); *see Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202–03 (Fed. Cir. 2005) ("[W]hen Schreiber transferred the '860 patent and became a mere non-exclusive licensee, Schreiber lost standing to sue for infringement and the case became moot."). To Apple's understanding, Plaintiffs do not appear to dispute that Uniloc Lux currently lacks standing.

As for Uniloc USA, its license from Uniloc Lux was terminated on May 3, 2018. (Ex. J.) Thus, Uniloc USA's only rights in the patents-in-suit are those it received in the 2017-to-USA License. But because those rights include only a bare right to prosecute litigation, and no exclusionary rights, they are insufficient to confer constitutional standing.

     1) <u>Uniloc USA is Solely a Litigation Agent and Lacks Constitutional Standing to Sue</u>

Uniloc USA currently lacks standing to sue because it holds ***only*** the right to conduct litigation, without any exclusionary rights that could be harmed by any supposed infringement. It is black-letter law that a party in this situation lacks Article III standing. Nearly one hundred years ago, the Supreme Court stated that "[t]he profits or damages for infringement cannot be sued for . . . on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title." *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923) (citations omitted). The Federal Circuit has reiterated this principle numerous times. *See Morrow*, 499 F.3d at 1342–43 (entity that possessed bare right to sue, without exclusionary rights in patent, lacked constitutional standing); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1192 (Fed. Cir. 2007) ("It has long been held that a 'right to sue' clause in a contract, unaccompanied by the transfer of other incidents of ownership, does not constitute an assignment of the patent rights that entitles the transferee to sue in its own name."); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) ("A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee."); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995) ("[A] right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights.").

Here, the relevant licenses explicitly and repeatedly state that Uniloc USA possesses only a license to litigate. The 2017-to-USA License unequivocally provides that Uniloc USA's rights are

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

"**solely** to enforce through litigation" and "**solely** for use in providing the [licensing and enforcement] Services." (Ex. O, §§ 2.1, 2.2 (emphases added).) Likewise, the "exclusive right[s]" granted to Uniloc USA are limited to managing litigation, recovering damages for past and present infringement, and settling litigation. (*Id.* at § 3.1.) Nowhere does the License grant Uniloc USA a right to exclude others from practicing the patents. (*Id.* at §§ 2.1–2.4.) Nor does the License grant Uniloc USA any such rights by implication: Uniloc 2017 reserved all rights not expressly granted to Uniloc USA. (*Id.* at § 2.4.) Uniloc USA does not even have a license to practice the patents-in-suit; it is merely a litigation agent with a "hunting license." *See Prima Tek II*, 222 F.3d at 1381; *SPH Am., LLC v. Huawei Techs.*, Co., No. 13-CV-2323-CAB-KSC, 2017 WL 1331920, at \*5 (S.D. Cal. Apr. 10, 2017) (bare right to sue is a "hunting license" that cannot confer standing).

These facts doom Uniloc USA's claim to standing. Because Uniloc USA has no right to exclude others from practicing the patents-in-suit, it "suffers no legal injury in fact to the patent's exclusionary rights" from any alleged infringement. *Morrow*, 499 F.3d at 1342. Uniloc USA was granted only the right to sue for ***Uniloc 2017's*** purported injury for alleged infringement. This arrangement does not confer constitutional standing on Uniloc USA. *See id.* ("For any suit that GUCLT brings, its grievance is that the exclusionary interests held by AHLT are being violated. GUCLT is not the party to which the statutes grant judicial relief."). Nor does Uniloc USA's right to sue imply any right to practice the patents or exclude others from doing so. *See In re Lone Star*, 2018 WL 500258, at \*4 (rejecting non-practicing licensee's argument that it "acquired the unfettered right to practice the patents-in-suit because only it can enforce them"); *see also* Ex. O, § 2.4. Uniloc USA thus possesses nothing but a bare right to sue, separated from any right to exclude others. This is legally insufficient to confer Article III standing on Uniloc USA. *Morrow*, 499 F.3d at 1342.

    2)  The August 28 Amendments Do Not Cure the Standing Defect for Uniloc USA

On August 28, Uniloc 2017's licenses to Uniloc USA and Uniloc Licensing were amended in an apparent attempt to cure the current standing problems. (Exs. Q, R.) These amendments failed to do so. The amendments clarified that the "exclusive" rights to sue possessed by Uniloc USA and Uniloc Licensing did not overlap. But the defect in Uniloc USA's standing was not that its right to

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

sue was not truly "exclusive." Rather, the defect was that a bare right to sue—exclusive or otherwise—does not give rise to Article III standing. The August 28 amendments did nothing to address this issue. Indeed, Plaintiffs' scheme illustrates why a party with only the right to sue cannot maintain standing. If this kind of scheme were effective, **both** Uniloc USA and Uniloc Licensing would apparently have the "exclusive" right to sue Apple if it released a new product that allegedly infringed a patent-in-suit. Uniloc USA could attempt to add the product to this litigation, and Uniloc Licensing could attempt to bring a new case entirely. This would improperly subject Apple to the threat of duplicative infringement suits from different entities on the same cause of action. Worse, neither of the entities would possess a right to practice the patents, and thus neither could grant Apple that right in order to resolve any claims that were brought. This scenario is exactly what the law of standing is intended to prevent.

### 3)  Uniloc USA and Uniloc Lux Cannot Remain as Parties, Even as "Co-Plaintiffs"

The defects in constitutional standing that bar both Uniloc Lux and Uniloc USA from participating in this case cannot be cured by adding Uniloc 2017. An entity that is merely a non-exclusive licensee—or less, as in the case of both Uniloc Lux and Uniloc USA—cannot be a party to an infringement action even as a co-plaintiff. *Morrow*, 499 F.3d at 1344 ("Joining the legal title holder . . . cannot cure constitutional standing deficiencies."). Uniloc Lux lacks constitutional standing because it divested itself of all rights in the patents-in-suit. *See Schreiber Foods*, 402 F.3d 1198, 1202–03; *see also Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. 5:12-CV-04958-PSG, 2015 WL 1538259, at \*4 (N.D. Cal. Apr. 6, 2015). Uniloc USA lacks constitutional standing because it suffers no injury-in-fact. *Morrow*, 499 F.3d at 1343–44. Adding Uniloc 2017 cannot cure these defects in constitutional standing, and thus both named Plaintiffs must be dismissed.

### C.      Uniloc 2017 Cannot Join the Litigation Because It, Too, Lacks Standing

While the current Plaintiffs must bow out of this case for lack of standing, Uniloc 2017 is legally barred from replacing them. Uniloc 2017 contracted away all of its rights to sue and recover damages for past and present infringement. For this reason alone, Uniloc 2017 lacks standing to sue. Uniloc 2017 also ceded substantial rights to yet another Uniloc entity, CF Uniloc, further eroding its claim for standing.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1)   Uniloc 2017 Expressly Relinquished All Rights to Sue and Recover Damages

Uniloc 2017 cannot be added to or substituted into the litigation because it relinquished any right to sue or to recover damages for any infringement of the patents-in-suit. Uniloc 2017 granted Uniloc USA the "exclusive" right "to enforce through litigation" those patents. (Ex. O, §§ 2.1, 3.1(c).) Uniloc 2017 also granted Uniloc USA "the exclusive right to: . . . (c) recover damages, profits and awards of whatever nature for past and present infringement of the Licensed Patents." (*Id.* at § 3.1(c) (emphasis added); *see also* Ex. Q, § 1(a).) The transfer of these rights to Uniloc USA was not effective to confer standing on Uniloc USA, as discussed above. It was, however, effective to deprive Uniloc 2017 of standing.

As the Federal Circuit warned in *Morrow*, "[w]hile parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements." 499 F.3d at 1341 n.8. Several district courts have applied *Morrow* and determined that when a patent owner or other entity with exclusionary rights in a patent relinquishes its right to sue, that entity lacks standing. In *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, for example, the patent owner (Intersil) had given a licensee (Fairchild) "the sole and exclusive right" to sue the accused infringer (Power Integrations) on the patents-in-suit. 630 F. Supp. 2d 365, 371 (D. Del. 2007). The court determined that the patent owner had contracted away its right to sue and therefore lacked standing:

> As for Intersil, the Court likewise concludes that Intersil lacks standing to maintain this action against Power Integrations. ***Intersil contracted away its right to sue Power Integrations to Fairchild. That Fairchild lacks standing to take advantage of that right does not mean that Intersil regains it.*** Indeed, the Federal Circuit recognized in *Morrow* . . . that the contractual division of patent rights may have the effect of defeating standing as to all relevant parties.

*Id.* at 372–73 (emphasis added). The court held that, because the patent owner had no right to sue and the licensee had no Article III standing, the patent owner could not be added in order to cure the standing problem—and dismissed the action. *Id.* at 373.

The reasoning in *Fairchild* applies here. Like Intersil, Uniloc 2017 signed away its right to sue to Uniloc USA, including all rights to recover damages for past or present infringement; Uniloc 2017 thus lacks standing. (Ex. O, §§ 2.1, 3.1.) *See Fairchild*, 630 F. Supp. 2d at 373. And like

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1   *Fairchild*, Uniloc USA is a bare licensee and cannot satisfy constitutional standing requirements.

2   Thus, as in *Fairchild*, Plaintiffs have divided their rights in such a way that ***neither*** Uniloc 2017 nor

3   Uniloc USA has standing. *See id.* at 372–73.

4           The court in *Enviro Noise Control Corp. v. Stealth Acoustical & Emission Control Corp.*

5   reached a similar conclusion on similar facts. No. 07-CV-02555-EWN-KLM, 2008 WL 11363360

6   (D. Colo. July 9, 2008). In *Enviro Noise*, the licensee possessed exclusionary rights in the patents-

7   in-suit, but the patent owner possessed the exclusive right to sue and to recover damages. *Id.* at \*7.

8   The court concluded that the licensee had "no mechanism" to enforce its exclusionary rights and

9   thus lacked standing. *Id* (quoting *Morrow*, 499 F.3d at 1342). The situation here is the same.

10  Although Uniloc 2017 may have retained the right to exclude others from making, using, or selling

11  the invention claimed in the patents-in-suit, it lacks the mechanism to enforce that right. Uniloc

12  2017 retained only two rights with respect to enforcement: (1) a right to consent to settle litigation,

13  and (2) a right to all proceeds from damages awards obtained by Uniloc USA. (Ex. O, §§ 3.1(d),

14  3.2.) Neither right is sufficient to allow Uniloc 2017 to enforce the patents-in-suit. First, Uniloc

15  2017's right to give consent to settle litigation is illusory. Uniloc 2017's Operating Agreement

16  grants yet another Uniloc entity—CF Uniloc—the right, in its sole discretion, to grant or withhold

17  consent for "the settlement by [Uniloc 2017] or any Subsidiary thereof of any litigation." (Ex. W,

18  Uniloc 2017 Operating Agreement, § 5.6(s).) Second, Uniloc 2017's right to receive all proceeds

19  indicates that Uniloc 2017 did not intend to retain a right to sue for itself. Rather, the parties

20  contemplated that Uniloc 2017 would have no need to retain a right to sue because Uniloc USA

21  would remit all litigation proceeds to Uniloc 2017. As a result, Uniloc 2017 has no standing to sue

22  Apple here.

23          2)   Uniloc 2017 Lacks Substantial Rights in the Patents-in-Suit

24          Uniloc 2017 also lacks standing for an independent reason: it gave up substantial rights to

25  enforce the patents to CF Uniloc. The Federal Circuit has explained that the holder of legal title in a

26  patent lacks standing to sue if it no longer holds sufficient rights and interests in that patent. *See*

27  *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other*

28  *grounds*, 135 S. Ct. 1846 (2015). Here, Uniloc 2017's Operating Agreement grants CF Uniloc

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

extensive control over the enforcement and disposition of Uniloc 2017's patents. CF Uniloc, in its sole discretion, has the authority to provide or withhold consent regarding: (1) the assignment or transfer of the patents-in-suit (Ex. S, § 7.1(d); Ex. W, § 5.6(f)); (2) the settlement of any litigation regarding the patents-in-suit (Ex. W, § 5.6(s)); and (3) the payment of maintenance fees on the patents-in-suit (Ex. S, § 4.9(a).) Furthermore, CF Uniloc can determine that Uniloc 2017 must "take such actions . . . as [Uniloc 2017 or CF Uniloc] deems reasonable and appropriate under the circumstances to protect or enforce" the patents-in-suit. (*Id.* at § 4.9(b).) Thus, even if Uniloc 2017 were to decide it did not want to pursue a suspected infringer, CF Uniloc could decide otherwise. (*Id.*) And, as stated above, Uniloc 2017 has no right to enforce the patents-in-suit itself because it transferred the rights to sue and to recover damages to Uniloc USA and Uniloc Licensing. At bottom, Uniloc 2017 holds legal title and an exclusionary interest in the patents-in-suit, but it retained neither the right to enforce its interests (granted to Uniloc USA and Uniloc Licensing) nor the right to control enforcement, settlement, and assignment decisions (granted to CF Uniloc).

The rights that Uniloc 2017 has given away are exactly the type that the Federal Circuit commonly finds important to standing. First, Uniloc 2017 expressly relinquished its right to sue—a right that is "frequently" considered "the most important consideration" in the standing analysis. *See Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010). Second, CF Uniloc has the right to force Uniloc 2017 to take whatever actions CF Uniloc deems "appropriate and necessary" to enforce the patents-in-suit. (Ex. S, § 4.9(b).) Thus, Uniloc 2017 "does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue." *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). Third, "[Uniloc 2017] lacks important indicia of a true ownership interest in the patent, such as the right to transfer its interest. Under the [Note and Security Agreement], [Uniloc 2017] is not allowed to assign its interests under the agreement without [CF Uniloc's] consent, which can be withheld on any ground," *Propat*, 473 F.3d at 1194; Ex. S, § 7.1(d).

Uniloc 2017's situation is similar to other nominal patent holders who have been found to lack standing to sue. For example, in *Enhanced Security Research, LLC v. Juniper Networks, Inc.*, the court held that the patent owner did not have Article III standing because it "lack[ed] authority

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

to make decisions concerning licensing and assignments, whether to initiate enforcement proceedings and/or settlement discussions, how to conduct litigation, and the approval of any settlements." No. CIV.A. 09-871-JJF, 2010 WL 2898298, at *4–5 (D. Del. July 20, 2010). Uniloc 2017's rights and authority are similarly curtailed. Uniloc 2017 lacks authority to enforce the patents-in-suit against Apple here because it granted Uniloc USA the exclusive rights to do so, even down to the right to select counsel and consultants for use in these actions. (Ex. O, §§ 2.1, 3.1; Ex. Q, § 1(a).) Uniloc 2017 also relinquished control, to CF Uniloc, to make decisions regarding the assignment of the patents-in-suit (Ex. S, § 7.1(d)), and the settlement of any litigation (Ex. W, § 5.6(d)). Thus, just as in *Juniper Networks,* the patent owner here is merely a nominal owner who has retained insufficient rights to sue.

Indeed, Uniloc's slicing up of patent rights goes far beyond the typical scenario. Standing disputes usually turn on the division of patent rights between two entities—the assignor/licensor and the assignee/licensee. Here, however, the rights are divided amongst at least **four** different entities. Plaintiffs' machinations resulted in two licensees with a right to sue but no constitutional standing to pursue it (Uniloc USA and Uniloc Licensing), a patent owner with exclusionary rights but no right or power to enforce them (Uniloc 2017), and a controlling entity with rights to control enforcement and assignment decisions but no exclusionary rights or rights to sue under the patents-in-suit (CF Uniloc). This is exactly the type of scheme that the Federal Circuit warned in *Morrow* could deprive all entities of standing. *See Fairchild*, 630 F. Supp. 2d at 372–73.

3) Rule 25(c) Does Not and Cannot Cure the Uniloc Entities' Current Lack of Standing

Perhaps recognizing the current defect in standing for the named Plaintiffs, Plaintiffs have tried to restore subject-matter jurisdiction by moving to add Uniloc 2017 pursuant to Federal Rule of Civil Procedure 25(c). (Dkt. No. 119.) Rule 25(c) is irrelevant.[5] That rule relates to the "transfer" of interests in an action. Fed. R. Civ. P. 25(c). But the lack of standing as to all Uniloc entities did not arise because Uniloc Lux "transferred" an interest to Uniloc 2017. Rather, the Uniloc entities (1) terminated Uniloc USA's "exclusive" license and did not re-grant it any exclusionary rights;

---

[5] If the Court determines that Plaintiffs lacked standing at the outset of the case, Rule 25(c) is also irrelevant because an initial lack of standing cannot be cured by later amendment.

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1    (2) separated the right to sue from whatever exclusionary rights Uniloc 2017 held in the patents;

2    and (3) granted substantial rights to control enforcement, settlement, and assignment to another

3    entity, CF Uniloc. Uniloc 2017 thus did not step into the shoes of Uniloc Lux: it bought the shoes,

4    cut them into pieces, and divided those pieces amongst multiple entities. It is this fragmentation of

5    rights that divests the Court of subject-matter jurisdiction. Lastly, Rule 25(c) does not and cannot

6    permit Plaintiffs to side-step the threshold "case or controversy" requirement of Article III. *See*

7    *Trend Micro Corp. v. Whitecell Software, Inc.*, No. C 10-02248 WHA, 2010 WL 4722504, at \*4

8    (N.D. Cal. Nov. 15, 2010). Uniloc's motion to add Uniloc 2017 is both improper and moot.

9         **D.**      **These Actions Should be Dismissed with Prejudice**

10         As set forth above, these actions should be dismissed for lack of subject-matter jurisdiction.

11    And, because Plaintiffs concealed the relevant facts for months, even leading the Court to enter

12    final judgment in a case in which it lacked jurisdiction, that dismissal should be with prejudice.

13         **1)**   **Plaintiffs Concealed the Fortress License and the Uniloc 2017 Assignment**

14         Early in this litigation, Apple served interrogatories and requests for production seeking

15    discovery on who owned the various rights and interests in the patents-in-suit. For instance, Apple

16    served its first set of interrogatories on Plaintiffs on December 19, 2017. Interrogatory No. 2, in

17    relevant part, asked Plaintiffs to "[d]escribe with particularity all occasions on which You or any

18    prior owner . . . offered, or agreed to license, convey, or acquire any rights in or to any of the

19    Patents-in-Suit." (Ex. X, 12/19/17 Common Rogs.) The interrogatory further asked Plaintiffs to

20    "identify any Third Party involved in the offer[], the patents involved, the dates of any relevant

21    communications, the [proposed or actual] terms or conditions," and all individuals and documents

22    related to the offer. (*Id.*)

23         Plaintiffs' response to this interrogatory was, and remains, woefully incomplete. In January

24    2018, Uniloc stated that it "ha[d] no information, as yet, responsive to this interrogatory." (Ex. Y,

25    1/18/18 Response to Common Rogs at p. 2.) But at that time, Plaintiffs knew that they had granted

26    Fortress licensing rights to ***all*** of their patents, including the patents-in-suit. (*See* Ex. D, Levy Dep.

27    66:22–67:5, 71:21–72:1.) Yet Plaintiffs concealed this information from both Apple and the Court.

28    Worse, Uniloc never supplemented its response after May 3, 2018 to reflect that Uniloc 2017

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

1    acquired ownership rights, and Uniloc Licensing acquired litigation rights, to the patents-in-suit.

2    Uniloc also stymied Apple's attempts to obtain documentary evidence regarding the

3    distribution of patent rights. Apple served Requests for Production on February 8, 2018. (Ex. Z,

4    Apple First Common RFPs Nos. 1–41.) Apple's Request No. 16 sought the production of

5    "Documents Relating to Any and All agreements between Uniloc and Any other Person, Relating to

6    or concerning ownership . . . of the inventions claimed in the Patent[s]-in-Suit, including . . . license

7    agreements." (*Id.*) Plaintiffs did not produce either the Fortress License, the license from Uniloc

8    2017 to Uniloc USA, or the license from Uniloc 2017 to Uniloc Licensing—any of which would

9    have alerted Apple to at least some of the issues raised in this motion. Instead, Plaintiffs falsely

10    represented that all responsive documents had "already been produced." (Ex. AA, Uniloc Resp. to

11    Apple RFPs 1–41.)

12    Plaintiffs' failure to comply with their discovery obligations wasted the Court's and the

13    parties' resources. Most glaringly, Plaintiffs caused final judgment to be entered in a case where

14    they lacked standing. On May 18, 2018, this Court entered judgment in favor of Apple in the -358

15    action after holding that the asserted patent (U.S. Patent No. 6,661,203) was invalid under § 101.

16    (3:18-cv-00358-WHA, Dkt. Nos. 99, 100.) As of May 18, however, Uniloc Lux had assigned away

17    all of its interest in the '203 Patent, and Uniloc USA held no exclusionary rights in that patent.

18    Thus, by the time the Court prepared its opinion and entered judgment, Plaintiffs' licensing scheme

19    had divested the Court of subject-matter jurisdiction. Plaintiffs knew or should have known this.

20    The Court and Apple, on the other hand, were kept in the dark because of Plaintiffs' discovery

21    misconduct. Further, Plaintiffs' discovery failures caused the Court and Apple to expend substantial

22    resources on motion practice, depositions, and briefing for the Court's showdown proceeding in the

23    above-captioned cases—all while Plaintiffs lacked standing.

24    At no time did Plaintiffs ever voluntarily take action to bring any information regarding the

25    ownership of the patents-in-suit to Apple's or the Court's attention. Indeed, the issue became clear

26    only when, in early August, Apple independently learned of the May 3, 2018 assignment of the

27    patents-in-suit from newly-available public records. Apple then asked Plaintiffs to produce all

28    materials regarding the transfer of ownership of or interests in the patents—the same materials

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

Apple had requested a half-year earlier in discovery. (Ex. T.) Plaintiffs still did not produce the requested documents until the Court ordered them to do so. Absent Apple's and the Court's efforts, then, Plaintiffs apparently planned to induce the Court to proceed full steam ahead into summary judgment or trial. This misconduct warrants dismissal with prejudice.

### 2) Plaintiffs Misrepresented and Concealed Their Standing Problems for Months

Plaintiffs also repeatedly misrepresented the rights and interests in the patents-in-suit. On May 16, 2018, Plaintiffs moved for leave to file a second amended complaint in the -359 action. (3:18-cv-00359-WHA, Dkt. No. 97.) The proposed amended complaint asserted that Uniloc Lux was the owner of the patent-in-suit and that Uniloc USA was an exclusive licensee with the "right to grant sublicenses" and the right to "exclude others." (*Id.* at Ex. A, ¶¶ 5–6.) These allegations were false, as Plaintiffs should have known. By May 16, Uniloc Lux had assigned away all rights in the patent-in-suit, and Uniloc USA had no right to grant sublicenses or to exclude others.

Plaintiffs also failed to comply with the Court's August 22 Order, which ordered Plaintiffs "to supply complete details about ownership (including licensing) of the patents-in-suit." (Dkt. No. 118 at p. 2.) First, Plaintiffs did not disclose that they had granted rights in the patents-in-suit to Fortress. Compare Dkt. No. 120 with Ex. B § 2.1 and Ex. D, Levy Dep. 66:22–67:5, , 71:21–72:1.) Nor did they disclose the nature of that grant, which gave Fortress a nearly unfettered right to transfer or sublicense its rights to practice the patents-in-suit upon occurrence of an Event of Default. (Ex. B, §§ 2.1, 8.) Second, Plaintiffs did not disclose that Uniloc USA's "exclusive license" from Uniloc Lux had been terminated on May 3, 2018, and that Uniloc USA was now only a litigation agent with a bare right to sue. (*See* Ex. J.) Uniloc's discovery misconduct warrants dismissal with prejudice.

### 3) Plaintiffs Had Multiple Opportunities to Cure Their Current Standing Problem and Failed to Do So

In addition, the Court should dismiss these actions with prejudice because Plaintiffs have already tried and failed twice to cure their current standing problem. First, Uniloc moved to add Uniloc 2017 to this case. (Dkt. No. 119.) But Uniloc 2017 cannot sue Apple or recover damages here because it contracted away those rights. *See* Section IV.C, *supra*. Second, Uniloc amended the

*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

2017-to-USA and 2017-to-Licensing agreements to clarify the "exclusive" nature of the rights to sue held by Uniloc USA and Uniloc Licensing. (Exs. Q, R.) But these amendments could not confer standing because they did not grant exclusionary rights required for Article III standing. *See* Section IV.B, *supra*. Where, as here, the plaintiff has failed to cure the standing defect after multiple attempts to do so, dismissal with prejudice is appropriate. *Sicom*, 427 F.3d at 980.

## V. CONCLUSION

Uniloc Lux and Uniloc USA lacked constitutional standing when they filed suit, and that lack of standing continues. Nor does Uniloc 2017 have the right to sue because it contracted that right away. Not one of these Uniloc entities has standing to sue, and thus the actions against Apple should be dismissed with prejudice for lack of subject-matter jurisdiction.

DATED:  October 25, 2018                    Respectfully submitted,


                         */s/ Michael T. Pieja*
                         Michael T. Pieja (CA Bar No. 250351)
                         Alan E. Littmann (*pro hac vice*)
                         Jennifer Greenblatt (*pro hac vice*)
                         Doug Winnard (CA Bar No. 275420)
                         Andrew J. Rima (*pro hac vice*)
                         Emma C. Neff (*pro hac vice*)
                         Lauren Abendshien (*pro hac vice*)
                         Shaun Zhang (*pro hac vice*)
                         GOLDMAN ISMAIL TOMASELLI
                         BRENNAN & BAUM LLP
                         564 W. Randolph St., Suite 400
                         Chicago, IL 60661
                         Tel: (312) 681-6000
                         Fax: (312) 881-5191
                         mpieja@goldmanismail.com
                         alittmann@goldmanismail.com
                         jgreenblatt@goldmanismail.com
                         dwinnard@goldmanismail.com
                         arima@goldmanismail.com
                         eneff@goldmanismail.com
                         labendshien@goldmanismail.com
                         szhang@goldmanismail.com

                         Kenneth Baum (CA Bar No. 250719)
                         GOLDMAN ISMAIL TOMASELLI

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

BRENNAN & BAUM LLP
429 Santa Monica Boulevard, Suite 710
Santa Monica, CA 90401
Tel: (310) 576-6900
Fax: (310) 382-9974
kbaum@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

**\*UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED\***

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION** has been served on October 25, 2018, to all counsel of record who are deemed to have consented to electronic service.

*/s/ Michael T. Pieja*
Michael T. Pieja (CA Bar No. 250351)