**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| UNILOC 2017 LLC, | |
|        Plaintiff, | |
|   v. | Case No. 6:19-CV-00532-ADA |
| APPLE INC., | |
|        Defendant. | |

## APPLE INC.'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    THE ASSERTED '088 PATENT .................................................................... 1

III.   THE *INTER PARTES* REVIEW PROCEEDINGS............................................ 6

     A.    IPR2019-00056 – Apple Inc. v. Uniloc 2017 LLC............................. 6

     B.    IPR2020-00023 – Microsoft Corp. v. Uniloc 2017 LLC ...................... 7

IV.  APPLE'S PROPOSED CLAIM CONSTRUCTIONS SHOULD BE ADOPTED ........... 8

     A.    "known acceptable configurations for the electronic device" / "known
          unacceptable configurations for the electronic device" (claims 1, 11, 21)............ 8

          1.    The term "configurations" means "at least two sets of hardware or
                software components"................................................................. 8

          2.    "known acceptable" means "that were previously determined to be
                compatible with each other … without requiring additional
                investigation" / "known unacceptable" means "that were
                previously determined not to be compatible with each other …
                without requiring additional investigation" ................................. 9

          3.    "for the electronic device" means "on the specific electronic
                device" ........................................................................... 12

     B.    "at least one of a list of known acceptable configurations for the electronic
          device and a list of known unacceptable configurations for the electronic
          device" (claims 1, 11 and 21) .............................................................. 14

V.    CONCLUSION............................................................................................. 15

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017)......................................................................12, 13, 15

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
   285 F.3d 1353 (Fed. Cir. 2002)......................................................................8

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004)......................................................................14

Defendant Apple respectfully submits its Opening Claim Construction Brief.

## I.    INTRODUCTION

Plaintiff Uniloc 2017 LLC ("Uniloc") asserts infringement of sixteen claims of U.S. Patent No. 6,467,088 (the "'088 patent").  The parties dispute the construction of three claim terms, the first two of which are similar and are discussed together herein.  Apple's constructions of these two terms are consistent with the intrinsic evidence and statements made by Uniloc in defending the '088 patent against invalidity challenges at the Patent Trial and Appeal Board ("PTAB").  Apple's construction of the third term reflects the plain and ordinary meaning of that term, consistent with the intrinsic evidence, precedential case law, and Uniloc's arguments to the PTAB.

## II.    THE ASSERTED '088 PATENT

The '088 patent is directed to "techniques for upgrading or otherwise reconfiguring software and/or hardware components in [electronic] devices."  Declaration of John Guaragna In Supp. of Apple's Opening Claim Construction Brief ("Guaragna Decl."), Ex. A ('088 patent) at 1:7-10.  These techniques "ensure[] that upgrades are compatible with the configuration of a given device before they are implemented in that device, thereby avoiding problems associated with inconsistent upgrades."  *Id.* at 2:55-58; *see also id.* at 1:22-26.  The technology that is the subject matter of the '088 patent is now decades old and the '088 patent expired on June 30, 2019.

Figure 3 of the '088 patent, reproduced below, illustrates a system for controlling the reconfiguration of an electronic device.  *Id.* at 3:8-10, 5:41-54.  The system includes a reconfiguration manager 10 (outlined in red), a network 214 (outlined in blue), and an electronic device 12 (outlined in green).  *Id.*

1



FIG. 3

**'088 patent at FIG. 3 (annotated).**

The electronic device includes a number of software and/or hardware "components," including, for example, multiple different software programs. Guaragna Decl., Ex. A ('088 patent) at 3:20-24; *see also id.* at 2:59-64, 6:29-35. The reconfiguration manager includes a list of known acceptable configurations for the electronic device, "indicating which of a set of [] components … are known to work well together or are otherwise compatible." *Id.* at 3:39-42; *see also id.* at Abstract, 2:37-45, 3:27-29, 3:52-58, 4:31-36, 5:19-24, FIGs. 1, 2. The reconfiguration manager also includes a list of known unacceptable configurations for the electronic device, indicating which components are "not compatible." *Id.* at 3:58-61; *see also id.* at Abstract, 2:45-47, 4:62-

5:4, 5:19-25. The '088 patent defines a "list" as including "any stored representation of information indicative of component compatibility."[1]  *Id.* at 4:6-8.

The '088 patent provides an example of the system's operation with reference to Figure 1, reproduced below:



**'088 patent, FIG. 1 (annotated).**

In this example, the electronic device 12 (outlined in **green**) stores "version 1.1 of a software component A" (outlined in **orange**), "version 2.3 of a software component B, and version

---

[1] Apple and Uniloc agree that a "list" should be construed to mean "any stored representation of information indicative of component compatibility."  The PTAB adopted this construction in an *inter partes* review matter challenging claims of the '088 patent.  Guaragna Decl., Ex. B (IPR2019-00056, Paper No. 7 (Institution Decision)) at 7-8.

2.0 of a software component C." Guaragna Decl., Ex. A ('088 patent) at 3:20-25; *see also id.* at FIG. 1 (mistakenly identifying versions 2.3 and 2.0 as corresponding to software component A on the device, rather than to software components B and C respectively, as described in the text of the specification). The reconfiguration manager 10 (outlined in **red**) includes a list of known acceptable configurations among various versions of the three software programs (identified with solid lines), and a list of known unacceptable configurations amongst those versions (identified with broken lines). *Id.* at 3:52-63; *see also id.* at Abstract, 2:37-47, 4:62-5:3, 5:19-28; Guaragna Decl., Ex. C (IPR2020-00023, Paper No. 6) at 5-6. The reconfiguration manager receives a request 20 from the electronic device indicating that the user of the device wants to upgrade the device to version 2.0 of software component A (also outlined in **orange**). Guaragna Decl., Ex. A ('088 patent) at 4:12-15. This request includes a "list of the components currently in the device, i.e., version 1.1 of component A, version 2.0 of component C and version 2.3 of component B." *Id.* at 4:15-19. Using the process described in Figure 2 of the '088 patent, reconfiguration manager 10 then processes the request and "if appropriate delivers to device X a response 22 which includes the requested version 2.0 of software component A." *Id.* at 4:22-26.

Figure 2 of the '088 patent, reproduced below, illustrates the process by which the reconfiguration manager determines whether a requested component is appropriate for the electronic device. *Id.*, 4:22-26, 4:37-39.



FIG. 2

**'088 patent, FIG. 2.**

In step 100, the reconfiguration manager obtains information regarding the hardware and software configuration of the electronic device, either from the request or from a local database storing that information. Guaragna Decl., Ex. A ('088 patent) at 4:39-47, FIG. 2. In step 102, the reconfiguration manager determines that the request includes a request for a software or hardware upgrade. *Id.* at 4:48-61, FIG. 2. In step 104, the reconfiguration manager "generates a potential upgrade configuration that will satisfy the received request." *Id.* at 4:62-64, FIG. 2. In step 106, the reconfiguration manager "searches through a set of known bad configurations." *Id.* at 4:64-66, FIG. 2. In step 108, the reconfiguration manager determines whether the potential upgrade configuration corresponds to one of the known bad configurations. *Id.* at 4:66-5:1, FIG. 2. If it does, then in step 110, the reconfiguration manager "attempts to find a set or sets of potential upgrade configurations from a set of known good configurations." *Id.* at 4:66-5:3, FIG. 2. If in

step 112 the reconfiguration manager determines there are no known good configurations, the upgrade request is denied, "since it is known to be incompatible with the current configuration of device X." *Id.* at 5:4-8, FIG. 2.

If in step 108 the reconfiguration manager instead determines that the potential upgrade configuration "does not correspond to a known bad configuration," then in step 122 the reconfiguration manager "searches the list of known good configurations" to determine if the potential upgrade configuration is a "known good configuration." *Id.* at 5:19-25, FIG. 2. If the potential upgrade configuration is determined to be a known good configuration, the upgrade is approved. *Id.* at 5:24-28.

As shown in Figure 2 and as discussed in the specification, the reconfiguration manager always compares a potential upgrade configuration to both a list of known bad configurations (*i.e.*, steps 106 and 108 of Figure 2) and a list of known good configurations (*i.e.*, steps 110 and 112 or steps 122 and 124). *See also* Ex. A ('088 patent) at Abstract, 2:37-41. In doing so, the alleged invention "ensures that upgrades are compatible with the configuration of a given device before they are implemented in that device." *Id.* at 2:55-58.

## III.    THE *INTER PARTES* REVIEW PROCEEDINGS

The '088 patent has been challenged in two *inter partes* review (IPR) proceedings. These proceedings are identified below because they relate to the claim construction issues to be decided by the Court.

### A.    IPR2019-00056 – Apple Inc. v. Uniloc 2017 LLC

Apple filed a Petition for IPR on October 17, 2018, challenging claims 1-21 of the '088 patent (the "-00056 IPR"). Guaragna Decl., Ex. D (-00056 IPR, Paper No. 1). The Petition presented two grounds of invalidity: (1) obviousness of claims 1-21 in view of U.S. Patent No. 5,752,042 ("*Cole*"), PCT Application Publication No. WO 97/30549 ("*MacInnis*"), and U.S.

6

Patent No. 6,449,723 ("*Elgressy*"); and (2) obviousness of claims 1-21 in view of U.S. Patent No. 7,062,765 ("*Pitzel*"), *Cole*, and *Elgressy*. *Id.* at 3-4. Uniloc filed a Preliminary Response on February 8, 2019. Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6). On April 29, 2019, the PTAB denied institution of the IPR, finding that *Cole*'s comparison of basic system information about the device and the code updates stored by the system merely identified "potentially appropriate" code updates, and not a "known acceptable configuration for the electronic device." Guaragna Decl., Ex. B (-00056 IPR, Paper No. 7) at 11-12, 20.

**B.      IPR2020-00023 – Microsoft Corp. v. Uniloc 2017 LLC**

Microsoft filed a Petition for IPR on October 11, 2019, challenging claims 1-4, 6-14, and 16-21 of the '088 patent (the "-00023 IPR"). Guaragna Decl., Ex. F (-00023 IPR, Paper No. 2). Uniloc filed a Preliminary Response to the Petition on January 22, 2020. Guaragna Decl., Ex. C (-00023 IPR, Paper No. 6). The PTAB is expected to issue an institution decision on the Petition by April 22, 2020.

## IV.   APPLE'S PROPOSED CLAIM CONSTRUCTIONS SHOULD BE ADOPTED[2]

### A.   "known acceptable configurations for the electronic device" / "known unacceptable configurations for the electronic device" (claims 1, 11, 21)

| Term | Apple's Construction | Uniloc's Construction |
|---|---|---|
| "known acceptable configurations for the electronic device" | at least two sets of hardware or software components that were previously determined to be compatible with each other on the specific electronic device without requiring additional investigation | Plain and ordinary meaning |
| "known unacceptable configurations for the electronic device" | at least two sets of hardware or software components that were previously determined not to be compatible with each other on the specific electronic device without requiring additional investigation | Plain and ordinary meaning |

Apple's constructions are consistent with the claim language and the specification of the '088 patent and with arguments presented by Uniloc in the IPR proceedings.

### 1.   The term "configurations" means "at least two sets of hardware or software components"

Independent claims 1, 11 and 21 each recite a list of known acceptable "configurations" (in the plural) and a list of known unacceptable "configurations" (in the plural).  Guaragna Decl., Ex. A ('088 patent) at 6:54-56, 7:48-51, 8:60-62.   As such, the claim language itself requires that each list must include at least *two* configurations.  *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357-58 (Fed. Cir. 2002) (finding a claim reciting "support wires" in the plural as requiring more than one "support wire").   Interpreting "configurations" to require at least two configurations is also consistent with the '088 patent specification, which never refers to a list

---

[2] Apple intends to file a motion demonstrating that the asserted claims of the '088 patent are patent ineligible under 35 U.S.C. § 101.  The asserted claims address the abstract idea of receiving, comparing, and transmitting an approval or denial of a request to update software.  Uniloc has identified no claim terms or proposed claim constructions suggesting otherwise, and in fact, appears to be taking an even broader interpretation than Apple of the claim terms disputed herein.

of acceptable or unacceptable configurations as including only a single configuration.  Rather, the specification also refers to, discusses and depicts the listed "configurations" in the plural.  *See, e.g.*, Guaragna Decl., Ex. A ('088 patent) at Abstract, 2:37-47, 3:28-30, 4:64-5:3, 5:19-25, FIG. 1 (showing multiple "good" configurations with solid lines and multiple "bad" configurations with dashed lines).

The specification also consistently teaches that each configuration comprises a "set" of components.  *See, e.g.*, *id.* at 3:40 (a "set" of software components), 3:52-63 (explaining that a pair of components connected by a solid line in Fig. 1, such as version 1.1 of component A and version 1.5 of component B, corresponds to a good configuration, and that a pair of components connected by a dashed line, such as version 1.8 of component A and version 1.0 of component C, corresponds to a bad configuration), 4:2-6 (explaining that the invention encompasses a two (a "pair") or more ("multiple") components).  There is no teaching in the specification that a configuration comprises a single component.

The specification also states that the components in a configuration may be either hardware or software components.  *Id.* at 2:59-64, 4:51-61, 6:28-35.   Accordingly, "configurations" should be construed to mean "at least two sets of hardware or software components."

  2. **"known acceptable" means "that were previously determined to be compatible with each other … without requiring additional investigation" / "known unacceptable" means "that were previously determined not to be compatible with each other … without requiring additional investigation"**

The '088 patent identifies a good (*i.e.*, acceptable) configuration as a configuration having "components [that] work well together or [that] are otherwise compatible."  Guaragna Decl., Ex. A ('088 patent) at 3:52-58; *see also id.* at 3:39-41 ("a set of software components supported by the manager 10 are known to work well together or are otherwise compatible"); 4:27-36.  Conversely, a bad (*i.e.*, unacceptable) configuration is a configuration in which the components are "not

compatible." *Id.* at 3:58-63.  There is no contrary teaching in the specification.  Thus, the patent plainly teaches that "acceptable" means "compatible" and "unacceptable" means "not compatible."

The '088 patent also unequivocally teaches that the "known" configurations are "previously-stored." *Id.* at Abstract, 2:37-41 (Summary of the Invention); *see also id.* at 3:64-4:11 (describing the configuration lists as being "stored").  The specification also teaches that searches are run on these "known" lists.  *Id*. at 4:64-5:12, 5:19-32.  This teaching underscores the plain meaning of known as referring to something that previously was determined.  Indeed, in defending the validity of the '088 patent in the -00056 IPR, Uniloc itself argued that "known" means "previously determined."  Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6) at 6-7.  The PTAB adopted Uniloc's proposed construction.  Guaragna Decl., Ex. B (-00056 IPR, Paper No. 7) at 8.  Microsoft has advanced this same construction in the -00023 IPR.  Guaragna Decl., Ex. F (-00023 IPR, Paper No. 2) at 19-20.  Thus, "known acceptable" and "known unacceptable" should be construed to require that the configuration be "previously determined."

Moreover, because Uniloc made important disclaiming arguments to save the '088 patent during the -00056 IPR, these two claim terms also should be construed to require that the compatibility or non-compatibility be previously determined "without requiring additional investigation."  The -00056 IPR petition filed by Apple relied on *Cole* as teaching a "list of known acceptable configurations for the electronic device."  Guaragna Decl., Ex. D (-00056 IPR, Paper No. 1) at 20-23.  *Cole* discloses a device that identifies and sends basic system information about the device to a server.  Guaragna Decl., Ex. G (*Cole*) at 3:47-55.  A first check is then performed, in which the server determines "which code updates are consistent with the basic system information of the client and which code updates are inconsistent."  *Id.* at 3:56-62.  *Cole* refers to

each code update that "is consistent with the basic system information," as "potentially appropriate" for the device.  *Id.* at 3:57-4:1.  For each of these "potentially appropriate" code updates, a recognizer program is downloaded to the client.  *Id.* at 4:35-47.  The recognizer program performs a second check to determine whether the code update is "actually needed by the client." *Id.* at 4:53-58, 5:56-60.  This second step is performed because "the client may already have the latest version."  *Id*.  If the recognizer program determines that the code update is not resident on the device, the code update is displayed for selection at the client.  *Id.* at 4:53-58, 5:56-60, 5:65-67, 6:1-34.  Selection of the code update causes the update to be downloaded and installed.  *Id.* at 6:35-55.

If the foregoing process in *Cole* sounds like the '088 patent process, that is because it is. However, Uniloc distinguished *Cole* in the -00056 IPR on the ground that *Cole* only identifies code updates that are *potentially* appropriate for a device, while the '088 patent recites *known* acceptable and *known* unacceptable configurations.  Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6) at 9.  The PTAB agreed and denied institution of the IPR petition on this basis.  Guaragna Decl., Ex. B (-00056 IPR, Paper No. 7) at 10-12, 20.  In so ruling, the PTAB concluded that when the server in *Cole* identifies a code update as "potentially appropriate," the code update is not "known" to be an acceptable configuration because the code update still may be deemed to be inappropriate based on the recognizer program, and may therefore never be installed.  *Id.* at 11-12. Thus, Uniloc succeeded in distinguishing *Cole* in the -00056 IPR on the basis that the update code in *Cole* was not "known" within the meaning of the asserted claims because additional investigation of that code was required.  Accordingly, based on Uniloc's disclaiming arguments to the PTAB, the lists of acceptable and unacceptable configurations cannot simply be ***potential*** matches that require additional investigation; they instead must be construed to be known to be

acceptable or unacceptable without requiring additional investigation. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (holding that "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer").

This conclusion is also consistent with the '088 patent specification.  The specification explains that if the "needed and currently implemented components correspond to a configuration on the list of acceptable configurations, the [reconfiguration] request is approved and the needed components are downloaded to the electronic device," and that if, instead, the "needed and currently implemented components correspond to a configuration on the list of unacceptable configurations, the request is denied."  Guaragna Decl., Ex. A ('088 patent) at Abstract; *see also id.* at 2:41-47.  The specification teaches that this "*ensures* that upgrades are compatible with the configuration of a given device before they are implemented in that device," thus no additional investigation into the compatibility of the upgrades with the device is required.  *Id.* at 2:55-58 (emphasis added); *see also* Guaragna Decl., Ex. H ('088 patent file history, May 7, 2002 Response) at 2-3; Guaragna Decl., Ex. I (European counterpart (EP1105796) file history, July 20, 2007 Office Action) at 1-2; Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6) at 2-3.

Accordingly, "known acceptable" should be construed to require that the configurations "were previously determined to be compatible with each other … without requiring additional investigation," and "known unacceptable" should be construed to require that the configurations "were previously determined not to be compatible with each other … without requiring additional investigation."

### 3.     "for the electronic device" means "on the specific electronic device"

As discussed above, the '088 patent specification teaches that the alleged invention "ensures that upgrades are compatible with the configuration *of a given device* before they are

implemented in that device, thereby avoiding problems with inconsistent upgrades."  Guaragna Decl., Ex. A ('088 patent) at 2:55-58 (emphasis added).  Moreover, in the -00056 IPR, Uniloc repeatedly argued that the claim language "for the electronic device" means "specific to the electronic device in question."  Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6) at 6; *see also id.* at 7 ("the claim language requires a previously determined set of known bad configurations that can be searched and a previously determined set of known good configurations that can be searched for a current configuration *for a specific electronic device*") (emphasis added), 7-8 ("the claim language requires that the list contain previously determined acceptable or unacceptable configurations *specific to the electronic device in question*") (emphasis added), 5, 11, 12.   In this regard, Uniloc distinguished *Cole* by arguing that it "only discloses and utilizes a list of <u>all</u> available updates *without regard to the electronic device*" and "iterates through each and every code update … *without any prior regard for the electronic device*."  *Id.* at 8-10 (underlining in original, other emphases added).  Uniloc similarly distinguished the *Pitzel* reference on the ground that "hosting a catalogue of every available component *without regard for the specific electronic device* is not the required list of known acceptable or unacceptable configurations *for the specific electronic device*."  *Id.* at 13 (emphases added); *see also id.* at 14.

Accordingly, based on both the teaching of the specification and Uniloc's disclaiming arguments before the PTAB, the phrase "for the electronic device" should be interpreted to mean "on the specific electronic device."  *Aylus*, 856 F.3d at 1362.

**B.** **"at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" (claims 1, 11 and 21)**

| Term | Apple's Construction | Uniloc's Construction |
|---|---|---|
| "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" | requires both a list of known acceptable configurations and a list of known unacceptable configurations | Plain and ordinary meaning |

Each of the independent claims recites "***at least one of*** [a] a list of known acceptable configurations for the electronic device ***and*** [b] a list of known unacceptable configurations for the electronic device."   Guaragna Decl., Ex. A ('088 patent) at 6:53-56, 7:59-62, 8:59-62 (emphases added).  This phrase recites a conjunctive list comprising at least one of [a] and at least one of [b].  *See SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) ("The phrase 'at least one of' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria, which connotes a conjunctive list . . . Therefore, the district court correctly interpreted this phrase as requiring that the user select at least one value for each category").  Importantly, no intrinsic evidence suggests construing this language as a disjunctive list in which the claimed invention is practiced by a device that includes only a list of known acceptable configurations ***or*** only a list of known unacceptable configurations.

***First***, the '088 patent specification supports the plain meaning conjunctive construction. The specification uniformly describes the reconfiguration manager as comparing the needed and currently implemented components with ***both*** a list of acceptable configurations ***and*** a list of unacceptable configurations.   Guaragna Decl., Ex. A ('088 patent) at Abstract ("The reconfiguration manager then compares the needed and currently implemented components with previously-stored lists of known acceptable *and* unacceptable configurations for the electronic

14

device.  If the needed and currently implemented components correspond to a configuration on the list of acceptable configurations, the list is approved and the needed components are downloaded to the electronic device.  If the needed and currently implemented components correspond to a configuration on the list of unacceptable configurations, the request is denied.") (emphasis added), 2:37-47, 3:39-63, 4:62-5:28.  As shown above in section II, Figure 1 of the '088 patent illustrates the reconfiguration manager storing both known good configurations (illustrated by solid lines between components) and known bad configurations (illustrated by broken lines between components).  And, as also shown in section II above, the flow diagram shown in Figure 2 and its associated description requires comparing a potential upgrade configuration with both a list of known bad configurations (*i.e.*, in steps 106 and 108) *and* a list of known good configurations (*i.e.*, in steps 110 and 112, or in steps 122 and 124) before a reconfiguration request is approved (step 118) or denied (step 114).

***Second***, Uniloc argued in the -00056 IPR that "the claim language requires a previously determined set of known bad configurations that can be searched ***and*** a previously determined set of known good configurations that can be searched for a current configuration for a specific electronic device."  Guaragna Decl., Ex. E (-00056 IPR, Paper No. 6) at 7 (emphasis added); *see also id.* at 12, 2-3, 5.  Uniloc should be bound by this disclaimer.  *Aylus*, 856 F.3d at 1362.

Accordingly, the term "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" should be construed as requiring both a list of known acceptable configurations and a list of known unacceptable configurations.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court adopt its proposed constructions.

Dated: February 5, 2020          Respectfully submitted,

By:  *John M. Guaragna*
      JOHN M. GUARAGNA
      Texas Bar No. 24043308
      **DLA PIPER LLP (US)**
      401 Congress Avenue, Suite 2500
      Austin, TX 78701-3799
      Tel: 512.457.7125
      Fax: 512.457.7001
      john.guaragna@dlapiper.com

      MARK FOWLER (*pro hac vice*)
      Bar No. 124235
      mark.fowler@dlapiper.com
      CHRISTINE K. CORBETT (*pro hac vice*)
      Bar No. 209128
      christine.corbett@dlapiper.com
      SUMMER TORREZ (*pro hac vice*)
      Bar No. 264858
      summer.torrez@dlapiper.com
      **DLA Piper LLP (US)**
      2000 University Avenue
      East Palo Alto, CA  94303-2215
      Tel:   650.833.2000
      Fax:  650.833.2001

      *ATTORNEYS FOR DEFENDANT APPLE INC.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was electronically filed on February 5, 2020, pursuant to Local Rule CV-5(a), and has been served on all counsel whom have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail on this same date.

*John M. Guaragna*
John M. Guaragna
