# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>      Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>      Defendant. | Case No. 6:19-CV-00532-ADA |

# PLAINTIFF UNILOC 2017 LLC'S
# OPENING CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND AND TECHNOLOGY OVERVIEW ................................................. 1

III. APPLICABLE LAW ....................................................................................................... 3

IV. AGREED CONSTRUCTIONS ....................................................................................... 3

V. ARGUMENT ................................................................................................................... 4

    A. "known [acceptable/unacceptable] configurations for the electronic device" ........ 4

        1. "At least two . . ." ............................................................................................ 4

        2. ". . . sets of hardware or software components that were previously determined [to be/not to be] compatible with each other on the specific electronic device without requiring additional investigation" ........................... 5

    B. "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" ................................................................................. 9

VI. CONCLUSION .............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*3rd Eye Surveillance, LLC v. United States*
    140 Fed. Cl. 39 (2018) ................................................................................................... 11

*Adams Respiratory Therapeutics, Inc. v. Perrigo, Inc.*
    616 F.3d 1283 (Fed. Cir. 2010) ....................................................................................... 8

*Albritton v. Acclarent, Inc.*
    Civil Action No. 3:16-CV-03340-M, 2019 U.S. Dist. LEXIS 58496
    (N.D. Tex. Jan. 16, 2019) ................................................................................................ 8

*Blue Calypso, Inc. v. Groupon, Inc.*
    93 F. Supp. 3d 575 (E.D. Tex. 2015) .............................................................................. 5

*Fujifilm Corp. v. Motorola Mobility LLC*
    No. 12-CV-03587-WHO, 2015 U.S. Dist. LEXIS 35235
    (N.D. Cal. Mar. 19, 2015) ......................................................................................... 11, 12

*Intellectual Ventures II LLC v. FedEx Corp.*
    No. 2:16-CV-00980-JRG, 2017 U.S. Dist. LEXIS 196453 (E.D. Tex. Nov. 29, 2017) ..... 4

*Lodsys, LLC v. Brother Int'l Corp.*
    No. 2:11-CV-00090-JRG, 2013 U.S. Dist. LEXIS 85614 (E.D. Tex. June 14, 2013) ........ 4

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 3, 12

*Pisony v. Commando Constr., Inc.*
    W-17-CV-00055-ADA, 2019 U.S. Dist. LEXIS 31524 (W.D. Tex. Jan. 23, 2019) ........... 3

*Radware, Ltd. v. A10 Networks, Inc.*
    No. C-13-2021 RMW, 2014 U.S. Dist. LEXIS 55913
    (N.D. Cal. Apr. 18, 2014) ..................................................................................... 9, 11, 12

*SuperGuide v. DirecTV*
    358 F.3d 870 (Fed. Cir. 2001) ........................................................................... 10, 11, 12

*Thorner v. Sony Comp. Ent't Am., LLC*
    669 F.3d 1362 (Fed. Cir. 2012) ....................................................................................... 3

*Vitronics Corp. v. Conceptronic Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................ 8

Pursuant to the Court's Scheduling Order (Dkt. 18), Plaintiff Uniloc 2017 LLC respectfully submits this Opening Claim Construction Brief.

## I. INTRODUCTION

The parties dispute the construction of two claim terms. Both of these terms contain understandable language and require no further construction, *e.g.*, the words and phrases "known," "acceptable/unacceptable," "configurations," and "electronic device." Apple's proposed constructions inject a number of additional limitations that are not required by the intrinsic record. Its constructions add language more likely to confuse, rather than help, the jury determine the ultimate factual issues. For those reasons, and those below, Uniloc respectfully requests that the Court reject Apple's proposed constructions and afford these terms their plain meanings.

## II. BACKGROUND AND TECHNOLOGY OVERVIEW

The '088 patent is titled "Reconfiguration Manager for Controlling Upgrades of Electronic Devices." The '088 Patent originated from Phillips Electronics in the late 1990s and issued on October 15, 2002.

The inventors of the '088 Patent observed that, at the time, it was common for developers to improve the software or hardware components of many different electronic devices, such as desktops, laptops and palmtop computers, personal digital assistants (PDAs), telephones, televisions, set-top boxes and other consumer electronic processing devices. Rather than discard their existing devices and purchase new ones, many users would often prefer to upgrade their devices, incrementally, with each new release. For many of these updates, it would generally be necessary to determine if the new or improved component was compatible with the rest of the device, and if not, what other components would need simultaneous upgrading in order to provide the desired compatibility. Making those compatibility determinations could be particularly difficult if the range of possible device configurations is large and the interaction among device

components is complex. *E.g.*, '008 Patent, at 1:12–39.  Further, the inventors of the '088 patent also observed that, while a number of different techniques had been developed for updating components of electronic devices, there were numerous problems and shortcomings with those existing techniques.  *Id.* at 1:30–2:14.  Those included failing to ensure compatibility among software and hardware components for a variety of different electronic devices.  *Id.*

According to the invention of the '088 Patent, a reconfiguration manager is provided that may be implemented on a computer or other data processing device to control the reconfiguration of software or other components of an electronic device. In accordance with the invention, a reconfiguration manager receives a reconfiguration request, *e.g.*, a software upgrade request from the electronic device, and determines one or more device components that are required to implement the reconfiguration request. The reconfiguration manager also determines, *e.g.*, from information supplied by the electronic device as part of the request, identifiers of one or more additional components currently implemented in the electronic device. The reconfiguration manager then compares the needed and currently implemented components with at least one of a list of known acceptable configurations for the electronic device and a list of unacceptable configurations for the electronic device.  If the needed and currently implemented components correspond to a configuration on the list of acceptable configurations, the request is approved, and the needed components are downloaded or otherwise supplied to the electronic device. If the needed and currently implemented components correspond to a configuration on the list of unacceptable configurations, the request is denied.  The invention ensures that upgrades are compatible with the configuration of a given device before they are implemented in that device, thereby avoiding problems associated with inconsistent upgrades.  '008 Patent, at 2:22-67.

### III.   APPLICABLE LAW

The Court is familiar with claim-construction principles. *See Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 U.S. Dist. LEXIS 31524, at *3–8 (W.D. Tex. Jan. 23, 2019).  The "[c]laim language guides the court's construction of a claim term." *Id.*  After the claims, "[t]he second source of intrinsic evidence is the patent specification." *Id.* at *5–6.  The prosecution history is another tool to supply the proper context for claim construction.  *Id.* at *6.

The words of a claim are "generally given their ordinary and customary meaning." *Id.* at *4 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)).  This is the ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *Thorner v. Sony Comp. Ent't Am., LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.*

### IV.   AGREED CONSTRUCTIONS

The Parties have reached agreement on the following construction and request that the Court enter an Order adopting same.

| Term | Agreed Construction |
|---|---|
| "list" | "any stored representation of information indicative of component capability" |

V.   **ARGUMENT**

A.   **"known [acceptable/unacceptable] configurations for the electronic device"**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "At least two sets of hardware or software components that were previously determined [to be/not to be] compatible with each other on the specific electronic device without requiring additional investigation" |

These terms are readily understandable and do not require further construction. There is nothing in the terms "known," "acceptable/unacceptable," "configurations," or "electronic device" that require further definition for a jury to understand. Apple's proposed construction does not define or explain these terms in a way that is more understandable for the ultimate fact-finder than the plain claim language. Apple instead includes a number of additional limitations to the plain claim language, including negative limitations, that are not warranted by the record in this case. For these reasons, and those below, Uniloc respectfully requests that the Court reject Apple's proposed constructions and afford these terms their plain-and-ordinary meaning.

1.   **"At least two . . ."**

Apple's proposal improperly requires "at least two" configurations. Apple sources this limitation from the claims' usage of the term "configurations" instead of "configuration." But "[s]imply because a claim uses a term in a singular — or plural — form does not necessarily mean that the claim should be construed literally based on those singular or plural forms." *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-CV-00090-JRG, 2013 U.S. Dist. LEXIS 85614, at *55 (E.D. Tex. June 14, 2013). Instead, whether the plural of a term includes the singular depends on "how a term is used in context, as well as what the specification discloses." *Id.* at *56 (E.D. Tex. June 14, 2013) (collecting Federal Circuit authority); *see also Intellectual Ventures II LLC v. FedEx Corp.*, No.

2:16-CV-00980-JRG, 2017 U.S. Dist. LEXIS 196453, at *30–34 (E.D. Tex. Nov. 29, 2017) (construing term "field crew" as "one or more personnel . . ."); *Blue Calypso, Inc. v. Groupon, Inc.*, 93 F. Supp. 3d 575, 601 (E.D. Tex. 2015) (finding "set" can be a collection of one or more).

Here, the Patent shows that that the claims do not require "two or more" configurations. The full claim term, which Apple omits, is a "*list* of known [acceptable/unacceptable] configurations for the electronic device." *E.g.*, '088 Patent, claim 1 (emphasis added). In ordinary usage, a "list" of items can include one item (*e.g.*, a "list of groceries" to shop for can include a list with one item). And, in computer science, a "list" data structure may actually be empty. *See, e.g.*, 5:4–10 ("If the resulting *set of potential upgrade configurations* is determined in step 112 *to be empty* . . . .") (emphases added). Indeed, the parties have agreed that the "list" claim term is "any stored representation of information indicative of component capability"—which does not require at least two items stored in the "list." Moreover, the Patent discloses and claims the use of *one* configuration as part of the reconfiguration process. *E.g.*, *Id.* at 4:66–5:3 ("If the upgrade configuration as generated in step 104 is determined in step 108 to correspond to *one* of the known bad configurations . . . .") (emphasis added); *id.* at claim 3 (reciting the step of "downloading the determined component to the electronic device if the determined component and the additional component are consistent with a given *one* of the known acceptable configurations") (emphasis added). All of this intrinsic evidence shows that the claims are not limited to "list[s]" that each contain "two or more" configurations.

    2.    ". . . sets of hardware or software components that were previously determined [to be/not to be] compatible with each other on the specific electronic device without requiring additional investigation"

The remainder of Apple's construction is also flawed and unnecessary. Apple construes the term as "sets of hardware or software components that were previously determined [to be/not to be] compatible with each other on the specific electronic device without requiring additional

investigation." This proposed construction is confusing, contains an improper negative limitation, and limits otherwise understandable claim language. It also does so without an adequate hook in the record: much of the concepts in Apple's proposed construction (*e.g.*, without requiring additional investigation) are not found in '088 Patent—not in the claims and not in the specification. The term "known [acceptable/unacceptable] configurations for the electronic device" does not require construction. It is a composite term that contains words that a jury can understand in the context of the claims.

The ordinary meaning of the term "configuration" in the context of the Patent generally refers to information that indicates how hardware or software components may be arranged on an electronic device. An "acceptable configuration" refers to one that indicates that "the components . . . are otherwise compatible." *See, e.g.*, '088 Patent, at 3:52–55. An "unacceptable configuration" conversely refers to one that indicates that a pair of components are "not compatible." *See, e.g.*, *id.* at 3:58–61. A "known [acceptable/unacceptable] configuration" refers to a configuration that has been determined to be "acceptable" or "unacceptable" by the time of the "comparing" step of the claims. *E.g.*, *id.* at claim 1 ("comparing the determined component and information specifying at least one additional component currently implemented in the electronic device with at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device").

The claims themselves already provide this context. Claim 1, for example, recites a method for controlling the reconfiguration of an electronic device. The method determines at least one device component required to implement the reconfiguration request. It then compares (1) the determined component and information specifying at least one additional component currently implemented in the electronic device with (2) at least one of a list of known acceptable

configurations for the electronic device and a list of known unacceptable configurations for the electronic device. The parties have agreed that the "list" of the claimed "list of known [acceptable/unacceptable] configurations" is "any stored representation of information indicative of component capability." The claims thus already delineate the purpose of the "list of known [acceptable/unacceptable] configurations": one relates to information indicative of a component capability that is acceptable and one relates to information indicative of a component capability that is unacceptable. There is no need to further construe those terms or rewrite the claim language.

Apple's construction also rewrites the "for the electronic device" claim language as "on the specific electronic device." This proposal does not assist the jury in applying the claim language; it simply replaces the words "for the electronic device" with "on the specific electronic device." It is unclear what distinction Apple is making with that change. But if Apple's position is that the determination of whether a configuration is acceptable or unacceptable must be one made "on the specific electronic device," the Patent does not support that limitation. The claim language states that the configurations are *for the electronic device*; it does require that the determination was actually made for components *on the specific electronic device*.

The specification also goes against this type of rewriting of the claim language. Figure 2, for example, discloses generating a "potential upgrade configuration" for a device. *See, e.g.*, '088 Patent, at 4:62–5:18. In this embodiment, a reconfiguration manager first searches "a set of known bad configurations." *Id.* If the upgrade configuration corresponds to one of the known bad configurations, the reconfiguration manager "attempts to find a set or sets of potential upgrade configurations from a set of known good configurations." *Id.* If the resulting set of "potential upgrade configurations" is empty, the reconfiguration manager denies the upgrade. *Id.* If the set of "potential upgrade configurations" is not empty, the reconfiguration manager approves the

upgrade. *Id.* In this embodiment, each of the sets of configurations are for the device—that is, they are used for the device that will receive the "potential upgrade configuration" if there is an appropriate match. But the underlying determinations that one set of configurations was "good" and that one set was "bad" were not necessarily made "on the specific electronic device." This is reflected in the Patent's disclosure of the "potential upgrade configurations" for the device.

Excluding this embodiment from the claims would require extraordinary circumstances. *See Adams Respiratory Therapeutics, Inc. v. Perrigo, Inc.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'") (quoting *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996)). Apple has not pointed to any such circumstances here that would warrant such an exclusion, and Uniloc is not aware of any.

Lastly, Apple's proposed construction includes a negative limitation—"without requiring additional investigation"—not present in the claims or specification. "It is generally improper to import negative limitations when construing a claim term, unless the patent contains an explicit disavowal." *Albritton v. Acclarent, Inc.*, Civil Action No. 3:16-CV-03340-M, 2019 U.S. Dist. LEXIS 58496, at *12 (N.D. Tex. Jan. 16, 2019) (collecting Federal Circuit authority). This case does not include evidence that would clear that high bar. Far from a definitional-type statement to limit the claims, the Patent does not contain any of the "additional investigation" language that Apple is reading into the construction of these terms. The Court should decline to add it.

*   *   *   *   *

These terms do not require further construction. Apple's proposed construction is not helpful to the jury to apply the claim language and rewrites the claim language without a tie to the intrinsic record. Uniloc respectfully requests that the Court decline to further construe this term.

B.    "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Requires both a list of known acceptable configurations and a list of known unacceptable configurations |

The dispute for this term is narrow: does the term "at least one of" a "list of known acceptable configurations" and "a list of known unacceptable configurations" require *both* lists or only *at least one* of those lists (*i.e.*, a "list of known acceptable configurations," "a list of known unacceptable configurations," or both)? The plain language of the claims and the intrinsic record support the latter construction. The record does not require using both lists in all cases. Uniloc respectfully requests that the Court reject Apple's proposed construction for this term.

The claims themselves support Uniloc's construction. The claims recite "comparing the determined component and information specifying at least one additional component currently implemented in the electronic device" with "at least one of [1] a list of known acceptable configurations for the electronic device and [2] a list of known unacceptable configurations for the electronic device." '088 Patent, claim 1. The plain language thus describes a comparison of two pieces of information with at least one of two lists—a list of known acceptable configurations and a list of known unacceptable configurations. While the method could compare against both lists, the claim is not limited in that way. And limiting the claim to using both lists would read the "at least one of" language out of the claim. *See, e.g.*, *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-2021 RMW, 2014 U.S. Dist. LEXIS 55913, at *22-23 (N.D. Cal. Apr. 18, 2014) ("If the inventors had limited their claims to only 'hops and latency,' the phrase 'at least one of' would be

unnecessary: the claim could simply read 'wherein said network controller determines proximities based on hops and latency.'").

The dependent claims further show that the independent claims do not require a comparison to both lists.  A number of dependent claims are drawn to only the "acceptable" or "unacceptable" comparison to allow or deny the reconfiguration of the device.  Claims 2 and 3 for instance recite approving the update (and downloading the update) if "the determined component and the additional component *are consistent with a given one of the known acceptable configurations*." '088 Patent, claims 2 and 3.  Claim 4, in contrast, is drawn to comparing to only the "list of known unacceptable configurations" and then denying the request if the determined component and the additional component *are consistent with a given one of the known unacceptable configurations*." *Id.* at claim 4.  These claims further show that claim 1 is not limited to comparing against **both** lists—it only requires comparing against "at least one of" those lists.

The specification also supports this reading of the claims.  The specification explains that the decision on whether to approve the upgrade request can depend on either a match with the "acceptable configurations" list or a match with the "unacceptable configurations" list:

> If the needed and currently implemented components correspond to a configuration on the list of acceptable configurations, the request is approved and the needed components are downloaded or otherwise supplied to the electronic device. If the needed and currently implemented components correspond to a configuration on the list of unacceptable configurations, the request is denied.

'088 Patent, at 2:41–47.  The specification also describes matching against both lists to ultimately determine whether to approve or deny the request.  *Id.* at Fig. 2, 4:38–5:40.  The intrinsic record supports Uniloc's construction of this term.

The Federal Circuit's decision in *SuperGuide v. DirecTV* (which Uniloc expects Apple to rely upon) does not require a different result.  358 F.3d 870, 885–888 (Fed. Cir. 2001).  There, the

claims recited "at least one of" four different categories "program start time, program end time, program service, and program type," where each category was "further comprised of many possible values." *Id.* at 886. Based on this language, and with no contrary disclosure in the specification, the Court concluded that the phrase required "that the user select at least one value for each category; that is, at least one of a desired program start time, a desired program end time, a desired program service, and a desired program type." *Id.*

The *SuperGuide* decision "did not erect a universal rule of construction for all uses of 'at least one of' in all patents." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 U.S. Dist. LEXIS 35235, at *26 (N.D. Cal. Mar. 19, 2015). The Court's construction was based on the "particular facts and the particular patent at issue there." *Id.* And, for that reason, "numerous courts have declined to follow the *SuperGuide* court's construction of 'at least one of' where the facts before them called for a different understanding of the term." *Id.* (collecting cases).

This is one of those cases in which *SuperGuide* does not apply. First, the claims here only contain two parameters separated by an "and"—not a longer list. *Radware*, 2014 U.S. Dist. LEXIS 55913, at *22 ("The court finds *SuperGuide* distinguishable because it involved selecting from a set of more than two items. Here, the phrase 'at least one of' in the claims of the '319 Patent is only used to select between two parameters separated by 'and.'"). "Unlike *SuperGuide*, the context here is not a list, but rather an option of two. The duality of the term makes it a binary choice between two options — not a list giving rise to the confusion present in *SuperGuide*." *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 69 (2018). In this context, "[t]he use of 'and' is shorthand for preserving the option that both" the lists could be used in the comparison. *Id.* "Using 'or' would have required additional words, e.g., 'or both,' at the end of the term in order for it to be read properly." *Id.* The natural reading of the term in this case is that it

encompasses a comparison to "a list of known acceptable configurations for the electronic device," "a list of known unacceptable configurations for the electronic device," or both. *Id*. And construing the phrase "at least one of" to require both lists in these claims would read the "at least one of" term out of the claim—a highly disfavored result. *Id.* ("Making [the 'at least one of'] this part of the term entirely unnecessary goes against longstanding rules of claim construction."); *Radware*, 2014 U.S. Dist. LEXIS 55913, at *22.

Second, the claims here relate to two lists of configurations—a list of acceptable configurations and a list of unacceptable configurations. These are not "categories comprised of 'many possible values' that users must choose 'at least one of' for the invention's purpose to be served." *Fujifilm*, 2015 U.S. Dist. LEXIS 35235, at *27. Courts have concluded that *SuperGuide* does not apply in this context. *See id.*

Finally, the intrinsic record does not restrict the claims to a comparison using both lists, as reflected above. Indeed, while claim 1 recites "comparing the determined component and information specifying at least one additional component currently implemented in the electronic device with ***at least one of*** a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device," dependent claim 4 specifically recites that the comparison occurs with the list of unacceptable configurations: it states "comparing the determined, component and information specifying at least one additional component currently implemented in the electronic device ***with the list of known unacceptable configurations for the electronic device***." If claim 1 already required a comparison using ***both*** lists in every case, this additional comparison language from claim 4 would be surplusage and unnecessary. This difference in the claims further weighs against importing Apple's requirement of comparing against both lists into all of the claims. *See Phillips*, 415 F.3d at 1314 ("Differences

among claims can also be a useful guide in understanding the meaning of particular claim terms."). Instead, like the plain language and the balance of the disclosure, the difference in claims shows that "at least one of" means "a list of known acceptable configurations for the electronic device," "a list of known unacceptable configurations for the electronic device," or both.

## VI. CONCLUSION

For the foregoing reasons, Uniloc respectfully requests that the Court enter an order adopting Uniloc's proposed constructions and rejecting the positions advanced by Apple in its constructions.

Dated: February 5, 2020

Respectfully submitted,

By: /s/ Christian J. Hurt
William E. Davis, III, *Lead Attorney*
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin (Of Counsel)
Texas State Bar No. 50511688
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
**The Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for Plaintiff
Uniloc 2017 LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service.  Any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by first class U.S. mail on this 5th day of February, 2020.

*/s/ Christian J. Hurt*
Christian J. Hurt