# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>      Defendant. | Case No. 6:19-CV-00532-ADA |

## APPLE INC.'S REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | Apple's Proposed Constructions Should Be Adopted | | 1 |
| | A. | "known [acceptable/unacceptable] configurations for the electronic device" | 1 |
| | | 1. "configurations" | 2 |
| | | 2. "known acceptable/unacceptable configurations" | 5 |
| | | 3. "for the electronic device" | 8 |
| | B. | "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" | 11 |
| III. | Conclusion | | 13 |

WEST\289697609.3

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3rd Eye Surveillance, LLC v. United States*,
  140 Fed. Cl. 39 (2018) ............................................................................................................13

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) ....................................................................................... *passim*

*DealerTrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ..................................................................................................5

*Digital Biometrics, Inc. v. Indentix, Inc.*,
  159 F.3d 1335 (Fed. Cir. 1998) ................................................................................................12

*Every Penny Counts, Inc. v. Bank of Am. Corp.*,
  No. 2:07-CV-42-FtM-29SPC, 2008 U.S. Dist. LEXIS 75672 (M.D. Fla. Sep.
  29, 2008) ....................................................................................................................................4

*Flash Seats, LLC v. Paciolan, Inc.*,
  No. 07-575-JJF, 2010 U.S. Dist. LEXIS 4181 (D. Del. 2010) ...................................................3

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014) ..................................................................................................5

*Gillespie v. Dwidag Systs. Int'l, USA*,
  501 F.3d 1285 (Fed. Cir. 2007) ................................................................................................12

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ....................................................................................................5

*MOAEC, Inc. v. Pandora Media, Inc.*,
  No. 07-CV-654-BBC, 2008 U.S. Dist. LEXIS 76523 (W.D. Wis. Sep. 30,
  2008) ..........................................................................................................................................3

*Radware, Ltd. v. A10 Networks, Inc.*,
  No. C-13-2021 RMW, 2014 U.S. Dist. LEXIS 55913 (N.D. Cal. 2014) ................................13

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ..................................................................................................12

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) ............................................................................................12, 13

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
  392 F.3d 1325 (Fed. Cir. 2004) .............................................................................................2, 3

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Other Authorities**

Webster's New World Dictionary, 1997 ......................................................................................2

ii

**I.      INTRODUCTION**

The parties' opening and responsive briefs demonstrate why Apple's constructions—which are supported by the claims, the specification and Uniloc's own binding disclaiming statements to the Patent Trial and Appeal Board ("PTAB") in *inter partes* review ("IPR") proceedings—should be adopted.

**II.     APPLE'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED**

   A.     **"known [acceptable/unacceptable] configurations for the electronic device"**

| Term | Apple's Construction | Uniloc's Construction |
|---|---|---|
| "known acceptable configurations for the electronic device" | at least two sets of hardware or software components that were previously determined to be compatible with each other on the specific electronic device without requiring additional investigation | Plain and ordinary meaning |
| "known unacceptable configurations for the electronic device" | at least two sets of hardware or software components that were previously determined not to be compatible with each other on the specific electronic device without requiring additional investigation | Plain and ordinary meaning |

While Uniloc again argues that this term "contains understandable words" (Dkt. 43 ("Uniloc Resp. Br.") at 1), this argument is squarely at odds with Uniloc's prior disclaiming statements to the PTAB in the -00056 IPR, in which it argued specific meanings for these words. Dkt. 44 ("Apple Resp. Br.") at 1-2, 5-7. Uniloc is bound by its prior disclaiming statements, and this claim term must be construed for this reason alone. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017). Uniloc's argument is also at odds with statements in its Responsive Brief, which identify certain words in this term (e.g., the word "configurations") as having alternative meanings. *See* Uniloc Resp. Br. at 1 (arguing with respect to the word "configurations" that "[a] list of items, in ordinary English, can have one item" and alternatively that "those in the computer field would understand that a list of items … could be an empty list");

1

*see also id.* at 1-3 (arguing that in the context of the patent the term "configurations" does not require at least two configurations). Moreover, Uniloc's argument that construing this term will not help the jury (Uniloc Resp. Br. at 1) is belied by the fact that the parties have a serious substantive dispute over the meaning of this term (Apple Resp. Br. at 2).

        1.      "configurations"

Uniloc continues to argue that the word "configurations," which is plural, should be broadened to encompass a single configuration. Uniloc Resp. Br. at 1-3. Nothing in the patent suggests this meaning of the term, which is at odds with basic grammar. Apple Resp. Br. at 2-5.

Uniloc again argues that the word "list" preceding the word "configurations" somehow demonstrates "configurations" encompasses only a single configuration. Uniloc Resp. Br. at 1-2. This argument is wrong for two reasons.

***First***, Apple and Uniloc have agreed to construe "list" to mean "any stored representation of information indicative of component compatibility." While this construction addresses the format a list may take, nothing about it suggests, much less requires, that the "configurations" (in the plural) that are on the list may be a single configuration. Apple Resp. Br. at 3. Moreover, Uniloc provides no support for its contention that a "list of items, in ordinary English, can have one item." Uniloc Resp. Br. at 1; *see also* Dkt. 44, Declaration of John Guaragna in Supp. Of Apple's Responsive Claim Construction Brief ("Second Guaragna Decl."), Ex. J (Webster's New World Dictionary, 1997) (defining a "list" as a "*series* of names, words, numbers, etc. set forth in order") (emphasis added).

***Second***, there is nothing in the context of the '088 patent that suggests the "known acceptable configurations" or the "known unacceptable configurations" can encompass only a single configuration. Apple Resp. Br. at 3-4. All of the cases cited in Uniloc's response brief are distinguishable for this reason. *See* Uniloc Resp. Br. at 2. For example, Uniloc cites the *Versa*

2

case for the proposition that, "[*i*]*n context*, the plural can describe a universe ranging from one to some higher number, rather than requiring more than one item." *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (emphasis added). The question in that case was whether the term "means … for creating air channels" required the presence of "both perforated pipes and flutes." *Id.* at 1328. The Court noted that the "specification [] points out that both structures are not required" and that "the language of the claim itself also suggests that the means for creating air channels does not have to include flutes. *Id.* at 1329. Here, nothing in the claims or specification supports the conclusion that a single configuration falls within the scope of the claimed invention.

In the *Flash Seats* case cited by Uniloc, the Court construed the term "asks" as encompassing a single ask in light of the facts that (1) at least two other claims associated the term "asks" with only a single "owner" or "seller," thereby "undermining Defendant's position that the term 'asks' is plural because it is always linked to a plurality of individuals," and (2) "the specification … describe[d] the invention with reference to sale of a single ticket, which is presumably associated with a … single 'ask'"). *Flash Seats, LLC v. Paciolan, Inc.*, No. 07-575-JJF, 2010 U.S. Dist. LEXIS 4181, at *23-24 (D. Del. Jan. 19, 2010). Again, no such facts are present here.

Similarly, in each of the *MOAEC* and *Every Penny Counts* cases, the specific context of the patent resulted in the Court construing the plural form of a word in a manner outside its normal grammatical meaning. *See MOAEC, Inc. v. Pandora Media, Inc.*, No. 07-CV-654-BBC, 2008 U.S. Dist. LEXIS 76523, at *18-20 (W.D. Wis. Sep. 30, 2008) (concluding that the term "music selections" did not require at least two music selections, because such a requirement leads to a "nonsensical result" where "when only one music selection had the category flag matching the

3

category button the user activated, no selection would be displayed"); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-CV-42-FtM-29SPC, 2008 U.S. Dist. LEXIS 75672, at *16-17 (M.D. Fla. Sep. 29, 2008) (construing the term "accounts" as "one or more accounts," where the specification provided examples of a consumer opening a single account and there was nothing to suggest a consumer would have to open two accounts in order to save or to contribute to a charity).

Unlike the facts in the above cases, the context of the '088 patent does not suggest or require a meaning of the term "configurations" that differs from its ordinary grammatical meaning. Specifically, the '088 patent never discloses a list of acceptable or unacceptable configurations as including only a single configuration. *See* Dkt. 33, Declaration of John Guaragna in Supp. Of Apple's Opening Claim Construction Brief ("First Guaragna Decl."), Ex. A ('088 patent) at Abstract, 2:37-47, 3:28-30, 4:64-5:3, 5:10-25, Fig. 1; *see also* Apple Resp. Br. at 3-4 (refuting Uniloc's argument that the passage at column 5:4-10 of the '088 patent somehow supports an interpretation of "configurations" that encompasses only a single "configuration"). In fact, the '088 patent uses the language "one or more" or "at least one" in reference to certain plural nouns, making clear when the patent applicant intended a plural noun to encompass the singular form of the noun. *See* '088 patent at Abstract ("one or more device components" and "one or more additional components"), 7:55-58 ("at least one device component" and "at least one additional component"), 2:29-30, 2:36-37, 6:49-50, 6:52, 7:5, 7:16, 7:30, 8:11, 8:34, 8:55, 8:58.

Uniloc's argument that "the most Apple can point to from the intrinsic record is that Figure 1 shows multiple acceptable and unacceptable configurations (the solid and dashed lines)," and that this is "only a preferred embodiment," is simply untrue. Uniloc Resp. Br. at 2-3. Apple has in fact cited *every discussion* of known acceptable configurations and known unacceptable configurations in the '088 patent, demonstrating how the '088 patent *never* refers to a list of

4

acceptable or unacceptable configurations as including only a single configuration. Dkt. 33 ("Apple Op. Br.") at 8-9. Uniloc further misses the point of Apple's discussion of Figure 1. That discussion was directed to the separate point that a *single* configuration comprises a "set" of components. *Id.* at 9.

Uniloc's reliance on the *GE Lighting Solutions* and *Liebel-Flarsheim* cases is misplaced. Unlike those cases, Apple is not attempting to read limitations from a preferred embodiment described in the specification into the claims. Rather, Apple's construction faithfully states what actually is claimed, which wholly aligns with the consistent teaching of the specification. *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004).

### 2. "known acceptable/unacceptable configurations"

Uniloc argues there is "no need to construe" the word "known." Uniloc Resp. Br. at 3. However, Uniloc repeatedly told the PTAB during the -00056 IPR that this term means "previously determined." Apple's Op. Br. at 10; *see also* First Guaragna Decl., Ex. C (IPR2019-00056, Paper 6 (Patent Owner Preliminary Response ("POPR"))) at 6, 7, 10-12, 14. Uniloc is bound by these disclaiming statements. *Aylus*, 865 F.3d at 1362.

Uniloc also asserts that "without requiring additional investigation" should not be part of the construction because its statements to the PTAB in the -00056 IPR allegedly do not amount to disclaimer. Uniloc Resp. Br. at 3-4. Not so. The facts here are different than those in the *DealerTrack* case cited by Uniloc. Uniloc Resp. Br. at 3. In that case, the Court found an examiner's amendment in the prosecution history of a patent to be insufficient to create a waiver of claim scope. *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir. 2012). By contrast, in the IPR proceeding here, Uniloc argued to the PTAB that the *Cole* reference "fails to disclose either a list of <u>known</u> acceptable configurations or a list of <u>known</u> unacceptable configurations."

5

POPR at 6 (emphasis original). Uniloc argued to the PTAB that this requirement of the claims is "confirmed by the specification of the '088 patent," which Uniloc reproduced for the PTAB with yellow highlighting. *Id.* at 6-7, 11-12. In doing so, Uniloc literally highlighted that in the '088 patent specification, if a configuration corresponds to a known bad configuration, and an alternative good configuration cannot be found, the reconfiguration manager denies the upgrade since it is known to be incompatible. *Id*. at 7, 12. Uniloc further highlighted for the PTAB that if a configuration corresponds to a known good configuration, the reconfiguration manager approves the upgrade as compatible. *Id*. Uniloc further argued to the PTAB that *Cole* was distinguishable from the claimed invention because *Cole* merely identifies *potentially* appropriate code updates:

> In other words, *Cole* merely looks to apply any and all code updates that are stored in its content server 17, … certainly not utilizing a list of <u>known</u> acceptable/unacceptable configurations for the specific electronic device. *Cole* makes this clearer in stating:
>
>> "In the illustrated embodiment, this determination is made by correlating the meta data in data base 13 to the basic system information obtained from client 14. Matches between the meta data and the basic system information indicate that the corresponding code updates are ***potentially appropriate*** for client 14."

*Id.* at 9 (quoting *Cole* at 3:62-4:1) (emphasis original to POPR). Thus, Uniloc's current assertion in its Responsive Brief that "[a]ll the above passage states is that *Cole* looks to 'code updates' or 'meta data' that is potentially appropriate" is incorrect. Uniloc's Resp. Br. at 4. Rather, it is abundantly clear from the passage in the POPR, and its preceding pages (including the portions of the specification that Uniloc highlighted for the PTAB), that Uniloc unambiguously distinguished the "known" configurations of the '088 patent from the merely "potentially appropriate" updates of *Cole*. Apple's construction recognizes this disclaimer made by Uniloc to save its patent.

The fact that Uniloc unambiguously distinguished *Cole* from the patent's claims on the ground that *Cole* only looked for "potentially appropriate" updates, not previously known updates,

6

was clear to the PTAB, which noted that "Patent Owner argues that the match is, at best, potentially appropriate, and, therefore, is not *known* that the code update is an 'acceptable configuration.'" First Guaragna Decl., Ex. B (IPR2019-00056, "Decision Denying Institution") at 11 (emphasis original). Moreover, although this fact is not required for this Court to bind Uniloc by its disclaimer, the PTAB ultimately found Uniloc's disclaiming argument to be persuasive, and denied institution of the IPR as a result. *Id.* ("We are persuaded by Patent Owner's argument"). Thus, Uniloc succeeded in saving its claims by making a clear disclaimer of claim scope, with which it must now be bound. *Aylus*, 865 F.3d at 1362.

Uniloc attempts to avoid its disclaiming statements by putting those statements on the PTAB and arguing that a statement by the Board "is not attributable to the patentee." Uniloc Resp. Br. at 5. But, as shown above, Uniloc is the one that made the argument that *Cole* does not teach using lists of known acceptable and unacceptable configurations and instead determines only whether updates are potentially appropriate, and the PTAB then agreed with that argument. In agreeing with Uniloc's argument, the PTAB stated that "[t]he conclusion that Cole does not teach a 'list of known acceptable configurations' is confirmed by Cole's further explanation of its technique, which requires a further recognition step to ultimately select the code updates that are acceptable for the client computer," and that this "further recognition step is necessary … to actually investigate the hardware, software, and other components of the client computer 'to assist the server in determining whether the *corresponding code update is appropriate for the client*." Decision Denying Institution at 12 (emphasis original). In these statements, the PTAB is further describing the operation of *Cole* and why a "potentially appropriate" update in *Cole* is not the same thing as a "known acceptable" update, which is what Uniloc argued to the PTAB. Thus, regardless of the fact that the PTAB cited further support for Uniloc's disclaimer of claim scope, it was Uniloc

7

that made the disclaimer.

Furthermore, unlike *Cole*, and consistent with Uniloc's disclaiming arguments to the PTAB, the '088 patent provides no examples of additional steps that might be taken in determining whether a "known acceptable configuration" is compatible with the electronic device, or in determining whether a "known unacceptable configuration" is incompatible with the electronic device. Rather, in the '088 patent, if a potential upgrade configuration corresponds to a known bad configuration and no potential upgrade configurations exist in a set of known good configurations, the upgrade is simply denied as "known to be incompatible with the current configuration of device X." '088 patent at 4:62-5:8. Conversely, if the potential upgrade configuration corresponds to a known good configuration, the upgrade is simply approved. *Id.* at 5:24-28. No additional investigation is required because "the invention *ensures* that upgrades are compatible with the configuration of a given device." *Id.* at 2:55-58 (emphasis added).

### 3. "for the electronic device"

Uniloc argues that Apple's construction would "read out a preferred embodiment from the scope of the claims," because the '088 patent describes an "embodiment in which the 'list' is present in a 'reconfiguration manager' that 'interacts with an electronic device.'" Uniloc's Resp. Br. at 7. However, Uniloc appears to misinterpret Apple's construction as requiring that the determination of whether a configuration is acceptable or unacceptable be made on the electronic device. Apple's Resp. Br. at 6-7. This is not what Apple's construction requires. Rather, Apple's construction requires that the components be determined to be (or not to be) compatible with each other *for use on* the specific electronic device.

Uniloc also argues Apple's construction should not be adopted because: (1) the claim language "already speaks to [the] issue based on use of 'the' electronic device in the claims"; (2) Apple's construction would imbue the "list" term with a "specific electronic device" gloss; and (3)

8

changing the word "for" to "on" lacks support in the intrinsic record. Uniloc Resp. Br. at 7-8. None of these points has merit.

*First*, in the -00056 IPR, Uniloc repeatedly argued the claim language "for the electronic device" means "specific to the electronic device in question." Apple Op. Br. at 13; *see also* POPR at 6-14. Uniloc is now bound by these disclaiming statements. *Aylus*, 856 F.3d at 1362.

*Second*, the "list" term should in fact be "imbue[d] … with a 'specific electronic device' gloss" given Uniloc's disclaiming arguments to the PTAB. Uniloc unambiguously argued to the PTAB that "[t]he plain language of the claim limitation *requires that the lists be*: … (2) *specific to the electronic device in question* (*i.e.*, 'for the electronic device')." POPR at 6 (emphasis added), 11; *see also id.* at 7-8, 11, 12 ("[T]he claim language requires that the list contain previously determined acceptable or unacceptable configurations *specific to the electronic device in question*" (emphasis added). Uniloc contrasted these characterizations of the '088 patent with the disclosure of *Cole*, asserting that the lists of *Cole* do not take the specific electronic device into account. POPR at 8 ("*Cole* only discloses and utilizes a list of <u>all</u> available updates *without regard to the electronic device*." *Id.* at 8 (underlining original, other emphasis added); *see also id.* at 8-9 ("*Cole* merely looks to apply any and <u>all</u> code updates that are stored in its content server 17, *without regard to the specific electronic device*") (underlining original, other emphasis added), 9 ("[T]he system of *Cole* merely iterates through every available code update available, without information or knowledge about known acceptable or unacceptable configurations for the electronic device, as is required by the claim language"), 10 ("[T]he system of *Cole* iterates through each and every code update available on its content server 17 *without any prior regard for the electronic device*. Indeed, the system of *Cole* iterates through each and every code update available each and every time it is run without information or knowledge of any previous iterations. Thus, there is nothing

9

in *Cole* that discloses *creating a list of acceptable or unacceptable configurations for the specific electronic device*. Likewise, there is nothing in *Cole* that discloses previously determining and maintaining such a list.") (emphases added), 14.

Uniloc also contrasted its above-quoted characterizations of the '088 patent with the disclosure of the *Pitzel* reference, stating that "the configuration server of *Pitzel* merely hosts a catalogue of *all* available components for the user to choose from" and that "hosting a catalogue of every available component without regard for the specific electronic device is not the required list of known acceptable of unacceptable configurations for the specific electronic device." *Id.* at 13 (emphasis in original); *see also id.* at 14 ("[S]earching through *all* possible version(s) of the component(s) without regard for the specific electronic device is not the required list of known acceptable or unacceptable configurations for the specific electronic device") (emphasis in original). Thus, Uniloc repeatedly told the PTAB that "for the electronic device" means "specific to the electronic device in question."

***Third***, Uniloc's above-described disclaiming statements make clear that the known acceptable configurations on the list previously have been determined to be compatible for use "on the specific electronic device," and that the known unacceptable configurations on the list previously have been determined to be incompatible for use "on the specific electronic device." *See, e.g., id.* at 10 ("[T]he system of *Cole* iterates through each and every code update available on its content server 17 *without any prior regard for the electronic device*. Indeed, the system of *Cole* iterates through each and every code update available each and every time it is run without information or knowledge of any previous iterations. Thus, there is nothing in *Cole* that discloses *creating a list of acceptable or unacceptable configurations for the specific electronic device*.

Likewise, there is nothing in *Cole* that discloses previously determining and maintaining such a list.") (emphases added), 14.

### B. "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device"

| Term | Apple's Construction | Uniloc's Construction |
| --- | --- | --- |
| "at least one of a list of known acceptable configurations for the electronic device and a list of known unacceptable configurations for the electronic device" | requires both a list of known acceptable configurations and a list of known unacceptable configurations | Plain and ordinary meaning |

Uniloc's argument that this claim limitation is not conjunctive necessarily fails in light of its unequivocal, disclaiming statement to the PTAB in the -00056 IPR that "the claim language requires a previously determined set of known bad configurations … *and* a previously determined set of known good configurations that can be searched for a current configuration for a specific electronic device (*i.e.*, 'device X')." POPR at 7 (emphasis added)); *see also id.* at 12 ("As seen in the passage above, the claim language requires a previously determined set of known bad configurations that can be searched *and* a previously determined set of known good configurations that can be searched for a current configuration of a specific electronic device (*i.e.*, 'device X')") (emphasis added), 2-3 ("The reconfiguration manager then compares the needed and currently implemented components with previously-stored *lists* of known acceptable *and* unacceptable configurations for the electronic device") (emphasis added), 5 ("More particularly, none of the applied references discloses lists of <u>known</u> acceptable and <u>known</u> unacceptable configurations") (emphasis in original). Uniloc is bound by these disclaiming statements. *Aylus*, 856 F.3d at 1362.

Uniloc argues these statements do not amount to disclaimer, because, in other sentences from the POPR, Uniloc used "or" rather than "and." Uniloc's Resp. Br. at 9. However, Uniloc's

11

above-quoted statements on this issue to the PTAB are unequivocal. An unambiguous statement that the claim language requires [A] and [B] cannot be interpreted as requiring only [A] or [B].

Uniloc further argues that the disjunctive use should apply because, in the Notice of Allowance, the Examiner appeared to interpret the limitation as constituting a disjunctive list, which Apple recognized in its IPR Petition, and which Apple's expert recognized in his supporting declaration. Uniloc's Resp. Br. at 9-10. This argument fails at least because Uniloc is bound by its **_later_** disclaiming statements before the PTAB. *Aylus*, 856 F.3d at 1362; *see also Gillespie v. Dwidag Systs. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) ("The patentee is held to what he declares during the prosecution of his patent."); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."); *Digital Biometrics, Inc. v. Indentix, Inc.*, 159 F.3d 1335, 1347 (Fed. Cir. 1998) ("The public has a right to rely on such definitive statements during prosecution").

Uniloc also again cites to dependent claim 4. Uniloc's Resp. Br. at 8. However, as discussed in Apple's Responsive Brief, there is nothing in claim 4 (or dependent claims 2 and 3) that somehow suggests that claim 1 encompasses performing the comparing step on only one of the two lists. Apple's Resp. Br. at 8-9. Uniloc argues that claim 4 "is expressly limited to only using the 'list of known unacceptable configurations.'" Uniloc's Resp. Br. at 8. This is incorrect. Nowhere does claim 4 exclude the use of a list of known acceptable configurations. As discussed in Apple's Responsive Brief, claim 4 merely imposes further specificity as to what causes a denial to be generated after the comparison step of claim 1 is performed. Apple's Resp. Br. at 9.

Apple's construction also is consistent with the plain meaning of this claim limitation. *See SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) ("[a] common

12

treatise on grammar teaches that 'an article of a preposition applying to all the members of the series must either be used only before the first term or else be repeated before each term. … Applying this grammatical principle here, the phrase 'at least one of' modifies each member of the list") (citation omitted).  Uniloc cites the *Radware* and *3rd Eye Surveillance* cases as allegedly supporting its contention that the plain meaning does not apply here.  Uniloc Resp. Br. at 8 (citing *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-2021 RMW, 2014 U.S. Dist. LEXIS 55913 (N.D. Cal. 2014); *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39 (2018).  But as discussed in Apple's Responsive Brief, the courts in these cases found the contexts of the underlying patents to support a disjunctive use.  Apple's Resp. Br. at 11.  No such context exists here.  *Id.*

Every embodiment in the '088 patent discusses comparing a potential upgrade configuration with both a list of known acceptable configurations and a list of known unacceptable configurations.  Notwithstanding this, Uniloc again refers to the cases it previously cited for the proposition that the grammatical rule in *SuperGuide* may not apply when the claims (1) contain only two parameters or (2) when the claim terms do not relate to categories comprised of many possible values.  Uniloc Resp. Br. at 10.  But, as explained in Apple's Responsive Brief, the courts in these cases weighed additional facts in making their determination.  Apple's Resp. Br. at 11-13.  Those facts are not present here.  *Id.*  And, as also explained in Apple's Responsive Brief, many courts have found the grammatical rule in *SuperGuide* to apply in the two situations identified by Uniloc as should be the case here given the clear teaching in the specification.  *Id.* at 11-12.

### III.     CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court adopt its proposed constructions.

13

Dated:  March 13, 2020

Respectfully submitted,

By:  /s/ *John M. Guaragna*
JOHN M. GUARAGNA
Texas Bar No. 24043308
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Tel: 512.457.7125
Fax: 512.457.7001
john.guaragna@dlapiper.com

MARK FOWLER (*pro hac vice*)
Bar No. 124235
mark.fowler@dlapiper.com
CHRISTINE K. CORBETT (*pro hac vice*)
Bar No. 209128
christine.corbett@dlapiper.com
SUMMER TORREZ (*pro hac vice*)
Bar No. 264858
summer.torrez@dlapiper.com
**DLA Piper LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:   650.833.2000
Fax:  650.833.2001

*ATTORNEYS FOR DEFENDANT APPLE INC.*

14

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed on March 13, 2020, pursuant to Local Rule CV-5(a), and has been served on all counsel whom have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail on this same date.

>  */s/ John M. Guaragna*
> John M. Guaragna

WEST\289697609.3