**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNILOC 2017 LLC,** | § | |
| *Plaintiff* | § | |
| | § | **CIVIL NO. 6-19-CV-00532-ADA** |
| **-v-** | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant* | § | |
| | § | |

## ORDER DENYING MOTION TO TRANSFER

Came on for consideration this date is Defendant Apple Inc.'s motion for transfer to the

Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). The Court held a

hearing on the Motion on May 12, 2020. ECF No. 58. After considering the Motion, the briefs

filed by the Parties, and oral argument, the Court is of the opinion that the Motion should be

**DENIED**.

## I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant

burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.,* No. 2:13-CV-749, 2014 U.S. Dist.

LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014) (stating the movant has the "evidentiary

burden" to establish "that the desired forum is clearly more convenient than the forum where the

case was filed."). Apple does not contest that venue is proper in the Western District of Texas

("WDTX"), nor could it. *See generally,* Def.'s Mot., ECF No. 15; Pl.'s Resp., ECF No. 38, at 2.

The burden that a movant must carry is not that the alternative venue is more convenient, but that

it is clearly more convenient. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n. 10 (5th Cir. 2008)

(hereinafter "*Volkswagen II*). Apple moved to have this case transferred to NDCA. Apple relies

heavily on the fact that other courts have transferred other patent cases between it and three Uniloc

1

entities, including cases outside this judicial District. This Court finds that Apple fails to show that transfer is warranted. While other cases involving Uniloc and Apple may be informative, the Court notes that this case involves a different asserted patent and different technology from any other case that Apple relies on and the Court believes that its determination in this case should be based on the facts that are unique to this case. In short, discretionary decisions by other courts in different cases do not compel the transfer of the current case. Thus, NDCA is not a clearly more convenient venue and Apple's Motion must be denied.

## II. LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access

to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy").

### III. BACKGROUND

#### A.  Current case

Uniloc filed this lawsuit on September 10, 2019 alleging infringement of U.S. Patent No. 6,467,088 ("the '088 Patent.). Pl.'s Compl., ECF No. 1. Previously, Uniloc filed suit against Apple in WDTX alleging infringement of the '088 Patent, in which Apple filed a petition for *inter partes*

review. *Uniloc USA, Inc. v. Apple Inc.*, No. 1:18-CV-296 (W.D. Tex. April 9, 2019). On April 29, 2019, the Patent Trial and Appeal Board ("PTAB") found no reasonable likelihood that Apple would prevail on its assertions of invalidity and denied to institute *inter partes* review. PTAB Decision, Ex. 1 at 21, ECF No. 38-2. Uniloc then filed the present suit.

According to Uniloc, the '088 Patent is generally directed at "a reconfiguration manager that may be implemented on a computer or other data processing device to control the reconfiguration of software or other components of an electronic device . . . ." '088 Patent at 2:22–25, ECF No. 38-3. The claimed invention addresses the difficulty in "determin[ing] if a new or improved component is compatible with the rest of the device . . . ." *Id.* at 1:22–25. Uniloc alleges that the Accused Products include at least the Apple macOS, iOS, and iPadOS operating systems and associated servers implementing iOS/macOS/iPadOS update functionality, Mac desktop and notebook computers, iPad, iPhone, and iPod devices running the Apple operating systems, the App Store, and associated servers implementing App Store functionality. ECF No. 1 at ¶ 10; Claim Chart Ex. 3 at 1, ECF No. 38-4. According to Uniloc, "Apple (through a contractor, Flextronics) has manufactured the accused Mac Pro computers in Austin." ECF No. 38 at 2.

Uniloc 2017 LLC is a Delaware company that is part of the larger Uniloc family of entities. Uniloc has an office in Tyler, Texas, and employees in Plano, Texas. Uniloc also has an office in California. Apple is a California corporation headquartered in Cupertino, California. Apple has a second campus in Austin, Texas that has 8,000 employees, with plans to have 15,000 employees in the near future.[1] Apple has several stores within WDTX, notably two in Austin, and three others in San Antonio and El Paso.[2]

---

[1] *See* Press Release, Apple, *Apple Expands in Austin,* Apple.com, https://apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited June 10, 2020).
[2] Apple Inc., https://www.apple.com/retail/storelist/ (last visited June 10, 2020).

Apple filed a Motion to Transfer Venue on November 12, 2019. ECF No. 15. On January 17, 2020, the Court granted the Parties' Motion For Leave to Conduct Venue Discovery. On February 10, 2020, Uniloc filed its Response in Opposition to Apple's Motion to Transfer Venue. ECF No. 38. Apple filed its Reply to Uniloc's Response on February 20, 2020. ECF No. 40. The Court held a telephonic hearing on the Motion to Transfer Venue on May 12, 2020 and denied the Motion to Transfer. ECF No. 58.

## B. Apple's serial motions to transfer

Apple's current motion to transfer is the latest in a series of motions to transfer that Apple has filed in this Court. As of the date of this order, Apple has been sued for patent infringement ten times in this Court. Of those ten cases, Apple has yet to file an answer or otherwise respond in two cases (*VoIP-Pal.com, Inc. v. Apple Inc.* (6:20-cv-00275) and *Neonode Smartphone LLC v. Apple Inc.* (6:20-cv-00505))), while another case (*Neodron Ltd. v. Apple, Inc.* (6:20-cv-00116)) was stayed pending ITC review. Of the remaining seven cases, Apple has filed a motion to transfer pursuant to 35 U.S.C. § 1404 in five of them (*Fintiv, Inc. v. Apple Inc.* (1:19-cv-01238), *STC.UNM v. Apple Inc.*(1:20-cv-00351), the instant case, *Solas OLED Ltd. v. Apple Inc.* (6:19-cv-00537), and *Parus Holdings Inc. v. Apple Inc.* (6:19-cv-00432)). Of the five cases in which Apple has filed a motion to transfer, the Court has denied three (including the instant case), while two more are pending. In the two cases (excluding the instant case) in which the Court has denied Apple's motion to transfer, Apple has filed petitions for writ of mandamus in both of them. *In re Apple Inc*, No. 20-00104 (Fed. Cir. 2019), *petition for en banc review denied*; *In re Apple Inc,* 2020-127, 2020 WL 3249953 (Fed. Cir. June 16, 2020). The Federal Circuit denied both petitions for writ of mandamus, as well as Apple's petition for *en banc* review.

Based on the fact that Apple has thousands of employees working in WDTX (with thousands more projected to be added) and has its second largest physical campus here, and given that, in the Fifth Circuit, the transferee venue must be "clearly more convenient," the Court doubts that it is likely that NDCA would actually be the "clearly more convenient" in each and every one of the cases in which Apple has filed a motion to transfer venue.

Rather, it appears that Apple refuses to accept that the transferee district must be "clearly more convenient." *See Volkswagen II*, 545 F.3d at 315; *see also Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*, No. 2:13-CV-528, 2014 WL 5389936, at *5 (E.D. Tex. Mar. 25, 2014) (holding that the defendants failed to carry their burden of "clearly more convenient," a "significant burden" which is "a difficult burden to carry"); *Konami Digital Entm't Co., Ltd. v. Harmonix Music Sys., Inc.*, No. 6:08CV286, 2009 WL 781134, at *1 (E.D. Tex. Mar. 23, 2009) (citing *Volkswagen II*, 545 F.3d at 314 n.10) (stating that a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred); *Estate of Bentley v. Marriott Int'l Inc.*, No. 3:15-CV-1412-B, 2015 WL 5836256, at *1 (N.D. Tex. Oct. 2, 2015) (stating that the "balance of these factors must clearly weigh in favor of transferring to the new venue"); *Fausto v. Parko Group, LLC*, No. 3:18-CV-00323, 2019 WL 6686678, at *2 (S.D. Tex. Oct. 31, 2019) (holding that defendants failed to prove transfer was clearly more convenient when equal numbers of relevant factors favored both transfer and retention of the suit) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology")). But, at least in partial deference to plaintiff's choice of forum, the standard under which cases may be transferred is when the transferee district is "clearly more convenient" than the transferor district, and not just a "little

more convenient." *See Volkswagen II*, 545 F.3d at 315 (holding that "when the transferee venue is not *clearly* more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.") (emphasis added).

At minimum, given that Apple has its second largest campus in WDTX, has thousands of employees within the District, manufactures accused products within the District (*e.g.*, Flex), and many of its suppliers have a significant presence within the District (*e.g.*, Cypress Semiconductor, Maxim Integrated, Samsung Electronics, Cirrus Logic, Intel, Microchip Technology, Micron Technology, NXP Semiconductor, Qualcomm, Renesas Electronics, SK Hynix, STMicroelectronics, and Taiwan Semiconductor Manufacturing,),[3] the Court does not expect that another district in the country will be frequently "clearly more convenient" than WDTX.

But given that Apple has filed several motions to transfer, despite needing to show that the transferee is "clearly more convenient," given that Apple has filed multiple petitions for writ of mandamus, given that Apple has several thousand employees and its second largest campus in the District, and given that Apple has closed its stores in the Eastern District of Texas ("EDTX") (thus making venue improper in EDTX), it appears that Apple is attempting to essentially change the venue laws such that it cannot be sued in Texas, but rather that it can only be sued in NDCA. In other words, if district courts or the Federal Circuit consistently find that a particular transferee forum is consistently "clearly more convenient" than the transferor forum for a corporation like Apple, then the only place where that corporation can be sued is the transferee forum where its primary headquarters is located. Not only is this not the law in the Fifth Circuit, it effectively— but incorrectly—transmutes plaintiff's choice of forum into defendant's choice of forum. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955) ("[p]laintiffs are generally afforded the privilege

---

[3] *Supplier List,* Apple.com, https://www.apple.com/supplier-responsibility/pdf/Apple-Supplier-List.pdf (last visited May 20, 2020).

of bringing an action where he chooses."); *see also Van Dusen*, 376 U.S. at 622 (stating the purpose of 1404 " . . . militates against restricting the number of permissible forums within the federal system."). Nothing would be more restrictive than limiting the number of available forums to solely where a defendant's primary headquarters is located.

## C. Uniloc v. Apple

Uniloc and Apple are no strangers in the courtroom. Since 2016, Uniloc has filed two dozen patent infringement cases against Apple in either the Eastern or Western Districts of Texas. Apple heavily bases its arguments on the fact that, of the twenty-four previous suits between the two parties, twenty-one were transferred to NDCA. ECF No. 15 at 3–4.

In its briefing and during the hearing, Apple attempts to make much of the fact that Judges Gilstrap and Yeakel transferred several *Uniloc v. Apple* cases from the Eastern and Western Districts of Texas to NDCA in 2017 and 2019, respectively. But, as the Court noted during the hearing, decisions by Judges Gilstrap and Yeakel are not binding on this Court. *See* Tr. 7:1–17, 9:1–5. Therefore, the fact that other Texas judges transferred other Uniloc cases from Texas to NDCA is—at the most—only persuasive evidence. But the Court is not persuaded by the reasoning supporting those transfers for the reasons that follow.

### 1. The Court is not bound by prior discretionary decisions

First, by arguing that this Court should follow what Judges Gilstrap and Yeakel decided, Apple effectively seeks to short-circuit the transfer analysis by asking this Court to blindly follow what other Texas judges did in other cases at a different point in time, despite having a different sets of facts. But because analyzing transfer motions is a fact-intensive inquiry, the Court cannot just "follow the crowd," in lieu of undertaking its own independent analysis. *Van Dusen*, 376 U.S.

at 622 (stating § 1404's purpose is an "individualized, case-by-case consideration of convenience and fairness").

### 2. There are significant differences with respect to Apple and Apple's suppliers in the Eastern District of Texas and the Western District of Texas

The first dozen cases between Uniloc and Apple were filed in EDTX, where they were subsequently transferred to NDCA. Although Judge Gilstrap did not analyze each factor in depth in every order to demonstrate which factors weighed in favor of transfer, there are several distinguishing features of WDTX that separate the present case from the EDTX cases. First, the most important feature is that Apple has a significant presence in WDTX through its large campus, manufacturing activities, and numerous stores in the forum. More specifically, Apple engages in engineering and manufacturing with approximately 5,000 employees at its large campus in Austin, with another 2,000 employees within the city. By contrast, Apple does not have <u>any</u> presence in EDTX by virtue of closing down its only two stores in April of 2019.[4] Thus, with respect to Apple, EDTX is not only less convenient, but venue is also <u>improper</u> in EDTX. Accordingly, even if venue were proper in EDTX, WDTX is significantly more convenient for Apple than EDTX because there are more potential documents, more potential witnesses, and a potentially lower cost of attendance for those witnesses. Furthermore, the City of Austin, Travis County, and Williamson County's grant of tax subsidies to Apple for its significant presence indicate that there is an extremely strong local interest in any Apple-related litigation, especially as compared to EDTX.[5]

---

[4] Chaim Gartenberg, *Apple is reportedly closing two stores in a Texas district to avoid patent trolls,* THE VERGE: CIRCUITBREAKER (Feb. 22, 2019) https://www.theverge.com/circuitbreaker/2019/2/22/18236424/apple-closing-stores-eastern-district-texas-avoid-patent-trolls (last visited June 9, 2020).

[5] Jay Wallis, Christy Millweard, *Apple getting big tax rebate from Williamson County with Austin Expansion,* KVUE.com (Dec. 18, 2019), https://www.kvue.com/article/news/local/apple-could-get-big-tax-break-from-williamson-county-with-austin-expansion/269-623955430 (last visited June 18, 2020); *see also* Cindy Widner, *How Apple landed the Apple deal*, CURBED AUSTIN (Dec. 14, 2018), https://austin.curbed.com/2018/12/14/18141017/austin-apple-incentives-taxes-city-state-county (last visited June 18, 2020 (stating that Apple received state subsidies to build Austin campus location).

Second, Apple, through its contract manufacturer Flextronics, manufactures the accused products in the District. To the extent that Flextronics has relevant documents, these documents can be more easily accessed in WDTX as compared to accessing those documents in EDTX. Similarly, if any Flextronics employees were to testify at trial, there is a potentially lower cost of attendance in WDTX as compared to EDTX. Finally, because of companies like Flextronics, WDTX has potentially a greatest local interest than EDTX.

Third, in addition to manufacturing partners, Apple also receives components for many of its products from suppliers that are within WDTX and not EDTX. These suppliers, such as Cirrus Logic, Intel, NXP Semiconductor, and Qualcomm, have design centers and manufacturing centers in Austin. As such, as compared to EDTX, the relative ease of access to sources of proof, the availability of compulsory process, the cost of attendance for willing witnesses, and the localized interest are significantly higher in WDTX, if these companies are relevant to a particular litigation.

Fourth, some standards certification organizations are located within WDTX. Ct. Order at 15–16, *STC.UNM v. Apple*, No. 1:20-cv-00351-ADA, (W.D. Tex Apr. 1, 2020), ECF No. 59. Therefore, as compared to EDTX, the relative ease of access to sources of proof, the availability of compulsory process, the cost of attendance for willing witnesses, and the localized interest are significantly higher in WDTX because of presence of these standards certification organizations.

The above facts indicate that WDTX is more convenient than EDTX, with respect to Apple, for the following public and private factors: (1) relative ease of access to sources of proof, (2) availability of compulsory process to secure the attendance of witnesses (*e.g.*, for Flextronics, NXP, and Wi-Fi Alliance personnel), (3) cost of attendance for willing witnesses, and (4) local interest. Therefore, logic dictates that even if NDCA is "clearly more convenient" than EDTX, because of these facts, NDCA is not also immediately *per se* "clearly more convenient" than

WDTX. As such, the Court rejects Apple's argument that the Court should follow Judge Gilstrap's lead in transferring the case to NDCA.

### 3.   Apple Has a Bigger Presence in Austin

Similarly—but for different reasons—the Court also rejects Apple's argument that the Court should follow Judge Yeakel's lead in transferring the case to NDCA. The fatal flaw with Apple's argument is that it ignores Apple's explosive growth in the timeframe between when the Uniloc cases were filed in Judge Yeakel's court and when they were filed in this Court.

Apple has significantly increased its presence in WDTX in the past few years. For example, 7,000 Apple employees work in Austin as of November 2019 which represents an increase from 6,200 employees as of December 2018 and more than a 50% increase in the previous five years.[6] More importantly, this growing number of employees indicates an increase in the number of Apple engineers in Austin.[7] Furthermore, on December 13, 2018, *i.e.*, in the time between the filings of the previous WDTX cases (February, April, and November 2018) and the filing of the instant case (September 10, 2019), Apple announced the construction of a new campus to accommodate an additional 5,000 new employees, with the ability to have a total of 15,000 employees in WDTX. *See Apple Expands in Austin*, *supra*, note 6 at 11. This new campus will include a 192-room hotel to house Apple employees who presumably travel to Austin for work.[8] When completed, Apple's new campus will comprise three million square feet, including two million square feet of office space, which would make it one of the world's largest office buildings. *Id.* As an incentive to build

---

[6] *See Apple Expands in Austin,* Apple.com, https://apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited June 10, 2020); *see also Apple to Build New Campus in Austin and Add Jobs Across the US*, Apple.com, https://apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/ (last visited June 10, 2020).

[7]*See, e.g.,* Lori Hawkins, *Apple Dives Deeper into Austin's Talent Pool*, AUSTIN AMERICAN-STATESMAN, https://www.statesman.com/news/20160907/apple-dives-deeper-into-austins-talent-pool (last visited June 3, 2020).

[8] Michael Potuck, *Apple plans big upgrade to new $1B Austin campus with 192-room hotel*, 9TO5Mac.com, https://9to5mac.com/2020/05/20/apple-austin-campus-hotel-upgrade/ (last visited June 18, 2020).

this new campus, Apple received tax breaks from Williamson County for building such a large campus and employing thousands of people. *See Apple getting big tax rebate from Williamson County with Austin expansion, supra,* note 5 at 9. The building of the new campus is a continuation of Apple's partnership with the Austin area that has existed for thirty years.[9]

In addition to an increase in the number of employees generally, and engineers specifically, the number of people engaged in Apple-related manufacturing is larger now than it was when the previous cases were filed. *See Apple Expands in Austin*, *supra*, note 6, at 11. For example, just days after this lawsuit was filed, Apple announced that its newly redesigned Mac Pro will be manufactured in Austin, at the same Austin facility where Mac Pros have been made since 2013.[10] The 240,000 square foot Flextronics plant employs about 500 employees and Apple has reportedly invested more than $200,000,000 in the facility. *See id.*

It is significant to this Court that Apple presently employs approximately 8,000 people in WDTX and that its second largest campus is in this District. It is equally important to the Court that Apple is currently building an additional $1 billion facility in Austin to accommodate 5,000-15,000 additional employees and that, when completed, Apple will be the one of the largest private employers in the entire District, if not the largest. The thousands of employees who are and will be working at Apple in this District are performing a "broad range of functions including engineering, R&D, operations, finance, sales and customer support." ECF No. 38, Ex. 5, Jaynes Depo. at 35:18–36:8; Ex. 6. Furthermore, it is also important that Apple has expanded and invested in its contract manufacturing facility in this District.

---

[9]  Kirk Silas, *Apple's Austin Offices and Headquarters: History, Details, and Predictions,* AQUILA, https://aquilacommercial.com/learning-center/apple-austin-offices-headquarters-history-details-predictions/ (last visited June 18, 2020).
[10] *See Apple's new Mac Pro to be made in Texas*, Apple.com, https://www.apple.com/newsroom/2019/09/apples-new-mac-pro-to-be-made-in-texas/ (last visited June 10, 2020);

Apple's significant growth, and its announcements of planned future growth (as well as the associated tax incentives), in the timeframe between when the prior WDTX cases were filed and when the current case was filed dramatically change the transfer analysis. For example, a larger number of employees—especially engineers—in Austin means that more documents and engineers are more likely to be physically located in Austin. Thus, at minimum, the relative ease of access to sources of proof is likely to weigh less heavily towards NDCA, if not even weigh neutrally or against transfer. As another example, given the increased likelihood of local Apple employees testifying at trial, as well as the fact that Apple is building its own hotel, the cost of attending a trial in the Austin division of WDTX may also weigh against transfer. Finally, given that Apple is one of the largest employers in the District, WDTX has a much higher localized interest that it previously did, to the point that this factor may weigh against transfer.

### 4. There are significant factual differences between the prior Western District cases and this case

Finally, there are critical differences, unrelated to Apple, between the instant case and the prior WDTX cases. For example, the inventors of the patents-in-suit of the prior cases lived in California, whereas the inventors in the current case live in New York. Based on the Court's experience, inventor testimony is one of the most critical witnesses that will testify live at trial. As such the inventors being located closer to WDTX is a significant fact that weighs against transfer with respect to the cost of attendance for willing witnesses factor.

Another significant difference are the quantity and significance of third parties. Third party witnesses are one of the biggest factors in the transfer analysis. For example, in the prior WDTX cases, Apple identified key third parties (Intel and Qualcomm) that might have relevant information. *See, e.g., Uniloc USA, Inc. et al v. Apple Inc,* 1-18-cv-00166 (W.D. Tex. February

22, 2018). By contrast, there are no comparable third-parties in this case which may have as many documents as Intel and Qualcomm reasonably could have had in the prior cases.

This case also includes two potentially relevant third parties, Fortress and Flextronics. Fortress is an investment firm based in San Francisco and the parent company of Uniloc.[11] Flextronics is a manufacturer in Austin, Texas. But unlike prior cases where relevant activity for both third-parties, *e.g.*, Intel and Qualcomm, are in NDCA, the relevant activity for Fortress and Flextronics are split between NDCA and WDTX, respectively. Because there is a third party in both the transferor and transferee districts, the relative ease of access to sources of proof factor, the availability of compulsory process, the cost of attendance for willing witnesses each may not weigh in favor of transfer, as it did in the prior cases.

Time-to-trial is another important distinction between the prior cases and the current case. In the prior cases, Judge Yeakel decided that the time to trial did not favor one venue over the other. *See Uniloc USA Inc., et al. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018). Prior to this Court taking the bench, the average time from filing to trial for patent cases in WDTX was approximately 32 months. *Fintiv v. Apple*, No. 6:19-cv-372-ADA, 2019 WL 4743678, at *7 (W.D. Tex. Sept. 13, 2019); *see also* ECF No. 38 at 18 (stating that the median time interval for civil cases in WDTX is 25.4 months). The time from filing to trial in this case will be 18.4 months.  As such, the time to trial in this case is now 13.6 months (42.5%) faster than when Judge Yeakel transferred the prior cases to NDCA. Therefore, the Court rejects Apple's argument that the Court should follow Judge Yeakel's lead in transferring the case to NDCA.

---

[11] Because Fortress is Uniloc's parent company, it seems a lot less likely that compulsory process will be required to compel documents and testimony from Fortress, at least as compared to Flextronics.

## IV. ANALYSIS

The threshold step for a Court to determine in the 1404 analysis is whether this case could have been brought in NDCA. The parties agree that venue is proper in NDCA.

### A. The Private Interest Factors Weigh Against Transfer.

#### 1. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv*, 2019 WL 4743678, at *2. "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). Here, the location of relevant evidence, both from Apple and critical third parties, weighs slightly in favor of transfer for the following reasons.

**Uniloc's sources**: Apple contends that Uniloc has several sources of proof in NDCA, including executives, engineers, and management offices.[12] ECF No. 15 at 10. Apple further contends that Uniloc does not have any physical presence in WDTX. *Id.*

Uniloc responds by stating that Apple's focus on Uniloc's employees in this factor is flawed, since witnesses are not sources of proof. ECF No. 38 at 4. Uniloc cites *Seven Networks, LLC v. Google LLC*, which states that sources of proof are "sources of documentary and physical evidence." No. 2:17-CV-442, 2018 U.S. Dist. LEXIS 146375, at *13 (E.D. Tex. Aug. 14, 2018). Uniloc contends that it stores physical, original documents such as patent acquisition documents, settlement agreements for prior infringement suits, financial records, and letters patent at its office in Tyler, Texas (which is in the EDTX). *Id.*

---

[12] Apple specifically argues that Uniloc's Newport Beach, CA office is a source of proof. *See* ECF No. 15 at 10 ("In addition, Uniloc has numerous sources of proof in or near NDCA, including: . . . "Uniloc's management offices in California"). The Court struggles to see how Uniloc's management office is a "source of proof," but Apple's large campus in Austin, TX is not a source of proof. Thus, the Court believes both are relevant, including Apple's Austin, TX location.

Apple's reply contends that Uniloc's physical documents in Tyler do not warrant denying transfer. ECF No. 40 at 1. Apple points out that Judge Gilstrap previously determined some of Uniloc's documents were publicly available, acquired electronically, and kept electronically on servers in California. *Id.*

**Apple's sources**: Apple relies on the testimony of Michael Jaynes, an Apple senior finance manager, for its own locations of sources of proof. ECF No. 15 at 9–11. Apple contends that the accused technology was designed and developed in NDCA. ECF No. 15 at 9. Apple claims that the documents related to the design and development were generated and stored in NDCA. *Id.* Apple further contends that the documents related to the marketing, sales, and financial information are also in NDCA. *Id.* Apple also claims that it does not have any relevant employees or documents in WDTX. ECF No. 15 at 10.

Uniloc claims that Apple ignores its significant presence in WDTX by not disputing the fact that Apple employs over 8,000 people in this district. ECF No. 38 at 5. Uniloc also contends that factual allegations in Mr. Jaynes's declaration are insufficient to transfer the case because he does not specify where any physical documents are actually located. *Id.* Uniloc cites *Utterback v. Trustmark Nat'l Bank*, in which the Fifth Circuit did not credit vague assertions that did not identify with any specificity which witnesses and what evidence would be inaccessible in one venue but readily available in the other. *Id.*; 716 F. App'x 241, 245 n. 10 (5th Cir. 2017) ("Utterback fails to identify with any specificity which witnesses and what evidence would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit vague and conclusional assertions.").

Uniloc also contends that Apple can remotely access documents in Austin, which results in no difference in relative ease of access between the two districts. ECF No. 38 at 5–6. Uniloc

also identifies financial activities Apple conducts in Austin, including revenue reporting for all of Apple and accounting activities pertaining to royalties arising from Apple's relationships with app developers. ECF No. 38 at 6. Uniloc claims that documents concerning these activities would be relevant to damages and its inducement claim. *Id.* at 6–7. Furthermore, Uniloc contends that Apple has not alleged that AppleCare documents that instruct users on how to update their apps are located in NDCA, and Mr. Jaynes was not able to identify their location. ECF No. 38 at 7.

Uniloc also contends that Apple owns content delivery network (CDN) servers in Dallas used to store and distribute apps and app updates, as well as other content of the accused App Store. ECF No. 38 at 7. Uniloc claims there are employees in this district with job duties related to Apple's CDN, which in turn means there are relevant documents and records within this district. *Id.* Uniloc contends that its identification of relevant documents within this District discredit Mr. Jaynes's declaration. ECF No. 38 at 7. Uniloc claims that Mr. Jaynes's statement that there are "no relevant documents" in the district is a cherry-picked, self-serving statement based on what Apple deems relevant. *Id.*

In its reply, Apple's contends that there is no dispute that all of the relevant Apple documents are located in NDCA, including the relevant source code. ECF No. 40 at 2. Apple further argues that Uniloc's reliance on Flextronics—a third party that assembles the Mac Pro computer—is unwarranted because the case revolves around software, where the accused functionality resides in the operating system that is designed and developed in NDCA. *Id.* at 1.

In a previous order, the Court lamented about the fact that the "relative ease of access to sources of proof" factor, namely the location of documents, is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8. As stated previously, "all (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a

few keystrokes, the party produces these documents." *Id.* Thus, because the documents are located on a server (or given the use of cloud-based storage, documents may be located on multiple servers in multiple districts), there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district since the documents are easily accessible electronically. Such seems to be the case here. As Uniloc acknowledged in its brief, Apple can remotely access documents from its offices in this District. ECF No. 38 at 6. Specifically, Apple can access: (1) sales data and other financial records pertaining to the accused App Store and other Accused Products; (2) marketing documents about the Accused Products; (3) Network-stored records of Dana Dubois (Engineering Manager) and his team members within the App Store Frameworks group; and (4) source code. *See, e.g.,* ECF No. 38, Ex. 5 Jaynes Dep. at 70:18-25; 71:18-75:4, 179:1-24. Moreover, run-of-the-mill electronic documents are even easier to access, as they can be transported over the Internet to any location. Thus, Apple (and Uniloc) could provide relevant documents in either NDCA or WDTX with little effort. Therefore, as clearly demonstrated in this case, access to documents that are available electronically provide little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

However, until the Fifth Circuit addresses the reality previously discussed, trial courts must continue to apply this factor consistent with current precedent. Because Apple is the accused infringer, it is likely that it will have the bulk of the documents that are relevant in this case. *See,*

*e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). However, *Genentech* does not provide an accused infringer with a "built-in factor weighing in its favor." *See Uniloc USA, Inc. et al v. Apple Inc*, No. 2:17-c-258, ECF No. 104, at 12 (E.D. Tex. Dec. 22, 2017).

The Court finds that the location of documents relevant in this case are neutral in the transfer analysis. As an initial point, the Court notes both parties argue that the respective opposing side can access their documents electronically, with minimal effort. *Compare* ECF No. 40 ("Indeed, Judge Gilstrap previously determined that Uniloc's prosecution history and prior art files were publicly available, acquired electronically, and – along with settlement documents – kept electronically on servers located in California.") *with* ECF No. 38 at 6 (noting that Apple's documents are available electronically). Thus, because neither argument is currently in-line with Fifth Circuit precedent, the Court finds both arguments unpersuasive.

Additionally, the Court finds Uniloc's argument concerning the physical location of its documents in Tyler somewhat persuasive. First, Uniloc's office in Tyler, TX is obviously closer and clearly more convenient in terms of physically moving the documents to WDTX rather than NDCA. Second, Judge Gilstrap's concern regarding Uniloc's Tyler office is several years outdated and rebutted by sworn testimony. *See* ECF No. 38 at 4, Ex. 7, Turner Decl. at ¶ 2 ("In September 2018, Uniloc moved all physical documents . . . to its Tyler office."). Therefore, although the physical location of Uniloc's documents are not located in WDTX, access to them is clearly more convenient in this District than NDCA.

The Court also agrees with Uniloc that Apple does have sources of proof in this District—and not exclusively in NDCA. First, Apple employee Kayla Christie testified during her deposition that many aspects of Apple's finances are performed at Apple's Parmer Lane campus in Austin. ECF No. 38, Ex. 9, Christie Depo. at 133:13–134:15. Specifically, the documents included revenue reporting for "all of Apple" as well as accounting activities pertaining to royalties arising from Apple's relationships with app developers. *Id.* Such documents are relevant to ascertaining what damages Uniloc could argue at trial and Uniloc's inducement claim. Additionally, Uniloc points to relevant AppleCare documents that instruct users how to update their apps, which are relevant to Uniloc's inducement claim. ECF No. 38 at 7. Lastly, Uniloc acknowledges the fact that Apple uses a content delivery network (CDN) to store and distribute apps and other content of the accused App Store. *Id.* Because there are Apple-owned CDN servers located in Dallas, and at least seven Apple employees in this District have job duties pertaining to Apple's CDN, Uniloc makes a reasonable argument that these sources of proof are relevant and located in this District. Finally, Flextronics, the third-party manufacturer of an Accused Product, may have relevant documents (*e.g.*, number of accused products manufactured during a specific period of time, which may be important for Uniloc's damages case albeit perhaps duplicative of what Apple may produce) at its location in Austin, Texas. Therefore, the Court finds that there are documents relevant to this case located in this District, such that Apple has not shown it is clearly more convenient to transfer this case to NDCA.

When determining the weight and impact of the location of witnesses, this Court looks at the totality of the circumstances, including but not limited to, "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a

claim, the amount of public information available to the parties, etc." *Fintiv,* 2019 WL 4743678, at *8. Although Uniloc argues that witnesses are not sources of proof, and Apple does not respond to this argument, the Court is not persuaded. Thus, the Court finds that the location of witnesses weighs in favor of transfer for the following reasons.

First, as Apple points out, Uniloc has no physical presence in this District. ECF No. 15 at 10. Additionally, Uniloc's party witnesses, as well as many Apple witnesses, are located in NDCA. Uniloc argues that several Apple employees may have relevant information, such as employees in this District that deal with the royalties arising from Apple's relationships with its app developers, or employees that work on Apple's CDN. ECF No. 38 at 7. Although the Court finds it somewhat difficult to believe that none of the 8,000 or so employees located in this District are relevant, Apple provides sufficient argument that most relevant party witnesses are located in NDCA. ECF No. 15, Ex. A, Jaynes Decl. Therefore, even though Uniloc articulates several potential party witnesses, Apple provides specific evidence supporting its contention more witnesses reside in NDCA.

On the other hand, Uniloc did identify a relevant third party—Flextronics—that is located within WDTX. ECF No. 38 at 3–4. Although Apple contends that Flextronics is not likely to relevant because this case concerns software updates, the Court finds Apple's argument unpersuasive, for the reasons stated by Uniloc in its brief. *Id.* Moreover, even though the Court did permit venue discovery in this case, venue discovery was directed at Apple, not Flextronics. *See Joint Motion for Leave to Conduct Venue* Discovery, ECF No. 31 at 1 ("Specifically, Uniloc seeks to take Rule 30(b)(6) deposition of Apple as to venue-related topics before Uniloc's response brief is due."). Thus, Apple's argument that Uniloc was "free to obtain discovery from Flextronics" is unpersuasive. ECF No. 40 at 1. However, the greater balance of witnesses, whether or not

Flextronics witnesses are in fact relevant, are located within NDCA. Therefore, because the Court found the location of witnesses weighs in favor of transfer and the location of relevant documents was neutral, the Court finds that the "relative ease of access to sources of proof" slightly weighs in favor of transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Apple claims that transfer is favored when a transferee forum has absolute subpoena power over a greater number of third-party witnesses. ECF No. 15 at 11 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009). Apple then points to several Uniloc witnesses in NDCA who would be subject to absolute subpoena power of the district, including Uniloc managers, an engineer, and executives. *Id.* at 12. Apple further identifies potential witnesses from third-party investment firm Fortress who would also be subject to the subpoena power of NDCA. *Id.* at 12–13. Apple claims there are not any witnesses that would be within the absolute subpoena power of WDTX. *Id.* at 13.

Conversely, Uniloc argues that Apple failed to present any non-party witnesses, and the witnesses provided by Uniloc are further from NDCA than WDTX. ECF No. 38 at 9. Uniloc also points to Huawei's employees in Texas and prior art witnesses as falling within WDTX's subpoena power as long as their attendance would not result in "substantial expense." *Id.* at 10 (citing FED. R. CIV. P. 45(c)(1)(B)(ii); ECF No. 38, Ex. 16, Huawei Decl., ¶¶ 3, 5, & 9; ECF No. 38, Ex. 17, ECF No. 38, Ex. 18). Uniloc also asserts that Apple's contention regarding Uniloc's employees and board members does not favor transfer as Apple only identified party witnesses and did not provide evidence demonstrating their unwillingness to testify in WDTX. *Id.* at 10–11 (citing *Peteski Prods. v. Rothman*, No. 5:17-CV122, 2017 U.S. Dist. LEXIS 220980, at *8 (E.D. Tex. Nov. 13, 2017); *In re Barnes & Noble*, 743 F.3d 1381, 1383 (Fed. Cir. 2014)). Uniloc contends that its employees would be willing to testify at a trial in WDTX, and Apple has not proffered any evidence to the contrary. *Id* at 11.

Apple's reply focuses on Uniloc's identification of prior art witnesses in WDTX. ECF No. 40 at 2. Apple contends that the prior art witnesses cited by Uniloc are for patents not identified in its invalidity contentions, so Uniloc's reliance on these witnesses is meritless. *Id.*

The Court finds that this factor is neutral for the reasons that follow. This Court rejected the method of mechanically counting potential witnesses because of the possibility of opening the floodgates to "gaming" the system by future parties by reciting long lists of potential witnesses. *Fintiv*, 2019 WL 4743678, at * 4. As such, the Court disagrees with Apple's contention that the greater number of third-party witnesses governs this factor. *See* ECF No. 15 at 11 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d at 1337–38 (Fed. Cir. 2009). Compulsory process is not needed for party witnesses, so Apple's identification of Uniloc employees within NDCA's subpoena power has no effect on this factor. *See id.* at 12. The two inventors of the patent-in-suit and the

prosecution attorney are outside the subpoena power of both districts, so they have no effect on this factor. The Court agrees with Apple that the prior art inventors were not identified by Apple and are related to patents not asserted in this case. The Court finds that the prior art inventors do not have an effect on this factor.

While Apple points to Fortress employees as witnesses within the subpoena power of NDCA, the Court is hesitant to give these witnesses weight. *See id.* at 12–13. Because Fortress is Uniloc's parent company, it seems a lot less likely that the employees would be unwilling to testify at a trial concerning Uniloc. However, Uniloc provided no evidence showing a willingness to testify by the Fortress employees, so the Court gives some weight to the presence of the Fortress employees in NDCA. Uniloc also points to the fact that Flextronics' employees are located within the subpoena power of WDTX. The Court is somewhat unsure of the relevance of information Flextronics witnesses could provide; however, Apple provides little argument to the contrary, other than stating the case concerns software, not hardware. ECF No. 40 at 1. Thus, the Court affords some weight to presence of these witnesses. Lastly, Huawei's employees would be subject to WDTX's subpoena power due to their residence in Texas, so the Court grants those witnesses weight as well. As the Huawei and Fortress employees weigh equally in favor of WDTX and NDCA respectively, and the Flextronics employees' impact is relatively small, the Court finds that the "availability of compulsory process to secure the attendance of witnesses" factor weighs towards neutral.

### 3.  The Cost of Attendance for Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6. The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5

(E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *Id*. (quoting *Genentech*, 566 at 1342).

Apple contends that four named witnesses and their respective teams have knowledge of the Accused Technology, licensing, finance, sales, and marketing, and are all located in NDCA. ECF No. 15 (referencing Jaynes Decl. ¶¶ 38, 44, 47, ECF No. 15-2 (naming Dana Dubois, Diedre Caldbeck, and Michael Jaynes and stating they work in NDCA); Jaynes Decl. ¶¶ 59, 62, 64, ECF No. 15-1 (renaming Dana Dubois, naming Brian Ankenbrandt, and stating they work in NDCA)). Apple argues the cost of time and money in traveling to WDTX weighs in favor of transfer. *Id.* at 14. Apple also identifies three Uniloc employees—a software engineer and two executives—that reside in NDCA. *Id*. Apple claims that since the vast majority of likely witnesses are in the transferee district, this factor weighs in favor of transfer. *Id.* at 15.

While Apple contends that there is not a single relevant *Apple* witness in WDTX, other relevant witnesses have been identified. *Id*. at 14; ECF No. 38 at 12. Uniloc responds by claiming that the non-party witnesses it previously identified are located disparately from the two forums. ECF No. 38 at 12. As such, a transfer to NDCA would not result in a clear incremental increase of convenience compared to WDTX. *Id*. According to Uniloc, Mr. Piotrowski, the prosecutor of the asserted patent, would have to travel 1,680 miles from his residence in New York to Waco, compared to 2,927 miles from his residence to San Francisco. *Id.* at 12–13. Additionally, Uniloc identifies Mr. Foote as a prior-art witness who represents that he lives in Austin. *Id.* at 13. Uniloc points out it has identified third-party witnesses, while Apple has relied solely on party witnesses.

*Id.* Uniloc then cites *Fintiv*[13] to suggest that the convenience of party witnesses should be given little weight. *Id.* To the extent that party witnesses are considered in this factor, Uniloc contends that its own witnesses' willingness to testify is an indication that it is not inconvenient. *Id.* Furthermore, Uniloc claims that there are Apple employees with relevant knowledge within this District such that trial in WDTX would not be inconvenient for them. *Id.* at 14. These employees include financial and accounting employees, as well as employees with knowledge regarding the aforementioned CDN network. *Id.* at 14–15. Uniloc claims that employees in Austin help run Apple's app stores, which is incompatible with Apple's representation that there are no relevant Apple witnesses within the District. *Id.* at 15.

The Court finds that the convenience of the witnesses' factor to be neutral. First, the location of Apple's witnesses weighs in favor of transfer. Apple has named four likely witnesses, all who reside or work in NDCA. Second, however, the location of Uniloc witnesses is neutral. Uniloc has witnesses in or near both districts that are willing to travel for litigation, so neither district is more convenient than the other. Therefore, the Court finds that the location of party witnesses slightly weighs in favor of transfer to NDCA.

Third, the location of third-party witnesses weighs against transfer. Mr. Foote, a prior-art witness, resides within this district. ECF No. 38 at 13. Despite the Court giving prior-art witnesses' location "minimal" weight, Mr. Foote minimally moves this factor towards retention. *E. Tex. Boot*

---

[13] *Fintiv*, 2019 WL 4743678, at *6. The Court notes Apple's concern regarding the language in *Fintiv*. The Court stands by giving little weight to the convenience of party witnesses in relation to non-party witnesses, but the Court would like to clarify that the convenience of party witnesses is given some weight. However, the weight only becomes consequential in the absence of a significant number of non-party witnesses. For example, the Court would give more weight to a non-party witness when comparing a non-party witness to a party witness. The Federal Circuit previously reviewed a motion to transfer and took no issue with a district court giving the convenience of party witnesses little weight *in relation to* non-party witnesses. *See In re Altera Corp.*, 494 Fed. App'x. 53, 53–54 (Fed. Cir. 2012). Moreover, the Court is not completely ignoring party witness convenience, as demonstrated by the fact that the Court found the convenience of Apple's witnesses did favor transfer.

*Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 28559065, at *4 (E.D. Tex. Feb. 15, 2017). Additionally, Mr. Piotrowski, a New York witness identified by Uniloc, is closer to WDTX than NDCA. The Court considers the "100–mile" rule, which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204–05). Here, Mr. Piotrowski would need to travel over 1,200 additional miles if the case was transferred to NDCA. *See* ECF No. 38 at 12–13. Further, based on the Court's experience, inventor testimony is one of the most critical witnesses that will testify live at trial. As such, the inventors being located closer to WDTX is a significant fact that weighs against transfer as the inventors, believed to reside in New York, will need to travel approximately the same additional distance as Mr. Piotrowski to attend trial in NDCA. *Id.* at 9. Based on the "100-mile" rule, there is a direct increase to the inconvenience of the non-party witnesses if this case was transferred, and thus this factor favors retention. *In re TS Tech USA Corp.*, 551 F.3d at 1320 (finding the district court's refusal to considerably weigh the 100-mile rule in favor of transfer was erroneous).

The Court recognizes that it is likely that both Apple and Uniloc will each have one or more potential trial witnesses from NDCA. In a vacuum, that would favor transferring the case to NDCA based on the cost of attendance of available witnesses. However, at most only one or two third-party witnesses will testify **live**, and each side is likely to only call a few witnesses due to trial-time restraints. As one of the most important witnesses will be the inventors, who are third-parties, and because New York is much closer to WDTX than NDCA, the Court feels that declaring this factor neutral to be the prudent decision when properly factoring in the "100-mile" rule.

27

**4.   All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive**

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*). Apple argues that this factor weighs in favor of transfer because of the twenty-one cases that have been transferred from districts in Texas to NDCA. ECF No. 15 at 17. Apple points out that the present case involves the same parties and many of the same accused products, so NDCA is already familiar with the issues of the present case. *Id.* Apple further argues that judges in NDCA have already considered or resolved issues that are present in this case due to their involvement in the transferred cases. *Id.* Apple also asserts that the present case is in its early stages, so no practical problems exist to prevent transfer. *Id.* at 17–18.

Uniloc argues that NDCA has only four cases for Apple being actively litigated, with the remainder either dismissed or stayed. ECF No. 38 at 17. Uniloc points out that the four cases do not have a trial date set. *Id.* Uniloc also notes that one of the four cases has a dispositive motion date in 2021, which means that trial will not take place for at least several months after that date. *Id.* Uniloc also points out that none of the cases in NDCA involve the '088 Patent. *Id.* Uniloc contends that the uniqueness of the '088 Patent creates unique issues unfamiliar to NDCA and the judges of NDCA. *Id.* Uniloc also notes that NDCA's Local Patent Rules do not dictate that a judge with a pending Uniloc action would receive the present case. *Id.* at 17–18. Uniloc also points to the congested civil docket in NDCA as evidence that keeping the case in WDTX would benefit judicial economy. *Id.* at 18.

Apple's reply contends that efficiency will be achieved through transfer. ECF No. 40 at 5. Apple points to the protective order provisions in this case that have already been resolved by

NDCA. *Id.* Apple asserts that a conflicting protective order provision from this district would require duplicative production of documents and source code, possibly with different production protocols, and differing access control to a variety of overlapping people. *Id.* Apple makes similar arguments regarding duplicative discovery, standing, and subject matter jurisdiction disputes. *Id.* Apple also argues that denying transfer would prevent the cases from having aligned schedule since NDCA cases have been referred to a single magistrate judge for mediation. *Id.*

The Court and the parties have already taken significant steps in this case. The parties have already exchanged infringement and invalidity contentions. They have briefed and argued *Markman* claim terms, and the Court has already issued a claim construction order. *See* ECF No. 70. Duplicative actions regarding claim construction would be taken if the Court transferred this case. Moreover, since the asserted patent is unique to this case, the documents and source code relevant to proving infringement would also be unique. *See* ECF No. 40 at 5. In addition, the actively litigated cases in NDCA do not have a trial date set whereas this court has a trial date set. *See* ECF No. 38 at 17; ECF No. 66. While similar cases litigated in the same district could positively impact judicial economy, the lack of set trial dates and the number of stayed cases indicate that keeping the case in WDTX would have a more positive impact.[14]

In addition, WDTX is simply a less congested venue than NDCA. As Uniloc points out in its brief, the number of civil cases pending in NDCA was 9,332 as of June 30, 2019. ECF No. 38, Ex. 32, Civil Statistics Table C-1. Conversely, the number of civil cases pending at this same time

---

[14] *Compare* Ct. Order at 19, *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, 6:20-cv-00069-ADA, ECF No. 41 (W.D. Tex. June 16, 2020) (transferring case based, in part, on judicial economy because the case was in early stages (*i.e.*, no claim construction ordered issued, no trial date set) and a *jointly agreed to* stay was in place in transferee district) *with Uniloc2017 LLC v. Apple Inc.*, 6:19-cv-00532-ADA (W.D. Tex. Sept. 10, 2019) (denying transfer based, in part, on judicial economy because case is not in early stages (*i.e.,* claim construction order issued, trial date set) and significant court congestion is present in transferee district)).

in WDTX was 2,959. *Id.* Thus, a transfer in this case to a forum with a significantly higher level of case congestion is an act *against* judicial economy.

Moreover, the Court agrees with Uniloc that NDCA would not be as familiar with the present case because the asserted patent is unique to this case. *See* ECF No. 38 at 17. The Court disagrees that a case should be transferred when another case with the same parties and only some overlapping issues such as standing and subject matter jurisdiction are present in another district. *See* ECF No. 15 at 17; ECF No. 40 at 5. The Court has already familiarized itself with the patent and has already conducted a *Markman* hearing and proffered constructions. The NDCA would have to duplicate this Court's efforts to construe the patent unless it merely chose to accept what this Court has already determined and entered. In addition, transferring cases based on this standard alone would essentially eliminate venue law. Plaintiffs have the ability to file different cases in different venues based on a myriad of reasons, which include a preference for a quicker resolution or a judge familiar with the law at issue. The plaintiff's choice should be respected unless the defendant can make a strong showing otherwise. Therefore, the Court finds that the "all other practical problems" factor weighs heavily against transfer.

**B.  The Public Interest Factors Weigh Strongly Against Transfer.**

>  **1.  The Administrative Difficulties Flowing from Court Congestion**

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Apple contends this factor is at worst neutral based on historical data that NDCA has a shorter time to trial for patent cases than WDTX and the uncertainty of future activity. ECF No. 15 at 18.

Uniloc responds by stating that the median time interval for a civil case from filing to disposition is 25.9 months for NDCA and 25.3 months for WDTX. ECF No. 38 at 18. Uniloc also

points out that this case has trial set to conclude March 19, 2021, which would give a time to trial of 18.4 months. *Id*. at 18–19.

The Court finds that this factor weighs against transfer. As previously discussed, Judge Yeakel found that the time to trial did not favor one side or the other. *See Uniloc USA Inc*, 2018 WL 2729202, at *4. Thus, during that time (and the data from which Apple relies on), the average time from filing to trial for patent cases in WDTX was approximately 32 months, and somewhat comparable to NDCA. *Fintiv*, 2019 WL 4743678, at *7. By contrast, because the Court has already set the trial date in this case, the prospective time from filing to trial is 18.4 months. Thus, filing to trial is now 42.5 percent faster than previous WDTX cases. *E.g., Uniloc USA Inc*, 2018 WL 2729202, at *4. Therefore, because the time to trial is significantly faster than NDCA, this factor weighs against transfer.

### 2.   The Local Interest in Having Localized Interests Decided at Home

Apple argues that NDCA has a stronger local interest than WDTX because that is where the Accused Products were designed and developed, where all of Apple's relevant employees are based, and NDCA is the location of Apple's headquarters. ECF No. 15 at 18. Apple also argues Uniloc has no connection to WDTX. *Id.* Apple further points to a similar decision where this Court favored transfer to the district with interests more closely connected with the issues to be tried. *Id.* (citing *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019)).

Conversely, Uniloc argues that WDTX has a similar local interest to NDCA because Apple's second largest campus with almost 8,000 employees is in Austin. ECF No. 38 at 19. The Court agrees that there is little, if any, difference in the local interest that Apple can claim between WDTX and NDCA. In fact, President Trump toured the Flextronics facility with Apple's CEO,

31

Tim Cook, on November 20, 2019 after Apple announced it would continue to manufacture Mac Pro computers in Austin.[15] Additionally, Uniloc contends that between the witnesses it identified (*e.g.,* Ms. Titus, seven employees in Austin with duties concerning Apple's CDN, and others) and the fact that Flextronics is located in this District, this factor weighs against transfer or is at worst, neutral. *Id.*

While this Court did grant a transfer of venue in *Datascape*, the Court only granted an intra-district transfer to the Austin Division as opposed to an inter-district transfer.[16] *See Datascape*, 2019 WL 4254069, at *3. In doing so, this Court maintained that both the Austin and Waco divisions have local interests in the case, but transferred the case to the Austin Division as the outcome of the suit would have "likely affect[ed] local Austin interests more acutely than local Waco interests." *See id.* The defendant had a clear difference in presence between Waco and Austin since the defendant's headquarters was located in Austin. However, Apple's presence is not so disparate. *Id.* In this case, Apple has substantial presences in both NDCA and WDTX, so both districts have a significant interest in this case. As such, Apple's presence and its potential witnesses in both districts indicate that WDTX has a similar localized interest to NDCA with respect to Apple. Moreover, as previously discussed, Apple's presence has *significantly* increased in this District, making the previous orders granting Apple's transfer motions unpersuasive. *See, supra,* at 11–13. Finally, WDTX has a significant localized interest because of the state and local tax benefits received by and pledged to Apple to build a second campus in Austin. Thus, the Court concludes that Apple's contribution to this factor is neutral.

---

[15] Nicole Cobler, *Trump to tour Apple manufacturing plant in Austin*, AUSTIN AMERICAN-STATESMAN, https://www.statesman.com/news/20191116/trump-to-tour-apple-manufacturing-plant-in-austin (last visited June 19, 2020).

[16] Apple, in this case, did not request that this Court make an inter-district transfer as Dell had in *Datascape* or Apple did in *Fintiv* or *STC.UNM*. *Fintiv*, 2019 WL 4743678, at *1; *STC.UNM*, No. 1:20-cv-00351-ADA, ECF No. 59 at 1.

The Court also concludes that Uniloc's presence in NDCA, but not in WDTX, weighs in favor of transfer. *See* ECF No. 38 at 19.

Finally, the presence of Flextronics in this District may also contribute towards a higher localized interest in this case. *Fintiv*, 2019 WL 4743678, at *8. Flextronics has a few hundred employees in WDTX—including some who may be potential witnesses—and its manufacturing facility is in Austin. Given that Flextronics may be providing infringing products in this case and given that it employs several hundred people in Austin, Flextronics' presence in this District weighs slightly against transfer. *See, e.g., Tex. Data Co, L.L.C. v. Target Brands, Inc.*, 771 F.Supp.2d 630, 647 (E.D. Tex. Jan. 12, 2011) (holding that third-party manufacture of an accused product within the transferor district "creates" a local interest). The Court notes that even if Flextronics was excluded from the Court's analysis of this factor, this factor would be neutral in terms of transfer.

Therefore, because of Apple's significant presence in both districts and Uniloc's and Flextronics's collective presences in NDCA and WDTX, respectively, the Court finds that the "local interest in having localized interests decided at home" factor weighs neutrally.

### 3. Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral. ECF No. 15 at 19 (Apple), ECF No. 38 at 20 (Uniloc). The Court also agrees.

### 4. Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 15 at 19 (Apple), ECF No. 38 at 20 (Uniloc). The Court also agrees.

## V. CONCLUSION

Having found that the ease of access to relevant sources of proof weighs in favor of transfer, the all other practical problems factor weighs heavily against transfer, the court congestion factor weighs against transfer, and other factors being neutral, the Court finds that Apple has not met its significant burden to demonstrate that NDCA is "clearly more convenient." *See Volkswagen II*, 545 F.3d at 314 n.10, *QR Spex*, 507 F.Supp.2d at 664. Therefore, because the Court finds that Apple has not demonstrated that NDCA is a clearly more convenient venue than WDTX, the Court **DENIES** Apple's Motion.

**SIGNED AND ENTERED** this 19th day of June, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

34