# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| UNILOC 2017 LLC,<br><br>            Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>            Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:19-cv-532<br><br><br>PATENT CASE<br><br><br>JURY TRIAL DEMANDED |

## APPLE INC.'S MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), Apple requests that the Court enter a protective order striking the interrogatories and requests for production from Uniloc's Second Set of Interrogatories (Nos. 12-20), Second Set of Requests for Production (Nos. 44-56) (collectively, "Second Set of Discovery"), Third Set of Interrogatories (Nos. 21-22), and Third Set of Requests for Production (Nos. 57-58) (collectively, "Third Set of Discovery") that exceed the discovery limits set by the Court's Order Governing Proceedings (Dkt. No. 11) ("OGP").

## I.  INTRODUCTION

Uniloc's recent discovery requests flout the Court's limits and are the latest in a pattern of unduly burdensome and harassing discovery tactics employed by Uniloc.  Indeed, when counted properly, Uniloc has now served 49 interrogatories and 95 requests for production, <u>well in excess of the Court's limits of 30 interrogatories and 75 RFPs</u>.  The vast majority of these requests are overbroad and contain multiple discrete subparts which, under the law of this Circuit, constitute separate requests.

Apple contacted Uniloc promptly upon receiving these improper requests and attempted to resolve this issue without involving the Court.  However, Uniloc was unwilling to withdraw the specific, improper requests.  Instead, Uniloc incorrectly claimed its general topics were sufficient to permit numerous, wide-ranging subpart questions that far exceed the Court's discovery limits.

This situation parallels Uniloc's prior abusive tactics where it served overly broad discovery requests and refused to specify the information it was actually seeking until either the night before or the day of calls with the Court.  This effectively provided Apple with less than 24 hours to investigate Uniloc's new requests (many of which had not been requested previously) while in the process of preparing for calls with the Court.

Once again Apple is facing overly broad and unduly burdensome discovery from Uniloc

in the form of excessive requests (both interrogatories and RFPs) that violate Court orders. Enough is enough. Apple submits this Protective Order to put an end to Uniloc's unfair, abusive and harassing discovery tactics and respectfully requests that the Court strike Uniloc's Interrogatory Nos. 17-22 and Request for Production Nos. 52-58 as violative of Rule 33 and the requirements of the OGP.

## II.   BACKGROUND

On May 4, 2020, Uniloc served its First Set of Interrogatories, along with its First Set of Requests for Production. Guaragna Decl. Exs. 1 and 2. On August 4, 2020, Uniloc served its Second Set of Discovery. *Id.* Exs. 3, 4. On August 21, Uniloc then served its Third Set of Discovery. *Id.* Exs. 5, 6. Many of the requests consist of multiple subparts as set forth in the chart below:

| Interrogatory | Discrete subparts | Request for Production | Discrete subparts |
|---|---|---|---|
| 1 | 4 | 22 | 4 |
| 3 | 4 | 39 | 2 |
| 12 | 4 | 44 | 6 |
| 13 | 2 | 45 | 4 |
| 14 | 2 | 47 | 2 |
| 15 | 3 | 48 | 4 |
| 16 | 4 | 49 | 3 |
| 19 | 7 | 50 | 7 |
| 21 | 5 | 53 | 6 |
| 22 | 2 | 55 | 5 |
|   |   | 57 | 5 |

On August 18, 2020, counsel for Apple sent a letter to Uniloc explaining Uniloc's excessive discovery requests. Guaragna Decl. Ex. 7. Uniloc's counsel responded by email, informing Apple that it will not withdraw any of its discovery requests and that "[i]n fact, Apple should expect to receive additional interrogatories and requests for production from Uniloc during the remaining discovery period." *Id.*, Ex. 8. Three days later, Uniloc indeed served the

2

Third Set of Discovery. Counsel for the parties met and conferred by telephone on August 25, 2020, after which Apple provided Uniloc with its specific counts for each discovery request. Over a month later, Uniloc's counsel asserted by letter that it still disagreed with Apple's position.[1] The parties have not been able to resolve their disagreements.[2]

This current situation risks placing Apple in the same unduly burdensome and unfair position it faced in response to Uniloc's earlier discovery requests. For example, Uniloc previously represented to the Court that Apple refused to produce documents relating to "Apple's CDN delivery functionality," as well as documents "that show how much money is related to the App Store, including revenue Apple has paid to app developers." *See* "2020_07_13 Uniloc Items to be Included in Discovery_532" at pp. 6-7. For both issues, Uniloc identified Request Nos. 21-23 and 41 as purportedly requiring the production of such documents. However, none of these requests could reasonably be interpreted to encompass the categories of documents that Uniloc failed to specify until hours before the Court's July 14 conference.[3]

In the same Court disclosure, Uniloc also demanded the production of "documents related to Apple's relationship with Flextronics, including Apple's instructions to Flextronics to load the operating system and App Store software on the Mac Pro in Austin. This also includes

---

[1] To the extent Uniloc's opposition asserts that Apple waived its objections to the First Set of Interrogatories and Requests for Production, that argument is meritless. Apple had no way of knowing that Uniloc would abuse the discovery process and serve subsequent sets of discovery with the knowledge that it had already exceeded the permissible number of discovery requests.

[2] Apple has additional objections to Uniloc's pending discovery and served those objections to Uniloc's second and third sets of discovery on their original due dates, September 3 and 21, respectively. By raising this threshold issue regarding the proper number of requests, Apple is not waiving and maintains its other objections.

[3] Request No. 21 seeks documents provided to app developers; Request No. 22 seeks documents pertaining to the use, design, performance, features, benefits, offers for sale by Apple's channel partners and app developers; Request No. 23 seeks documents relating to commercial success; and Request No. 41 seeks documents related to Apple's interrogatory responses. *See* Guaragna Decl. Ex. 2.

the quantity of the Accused Instrumentalities manufactured by Flextronics, the locations of where these products are shipped, and the revenue and costs generated by Apple relating to these activities." *Id*. at 9.  Uniloc cited Request Nos. 8 and 23, which again could not be plausibly read to encompass the information that Uniloc ultimately submitted to the Court as an outstanding demand for documents.[4]

As such, Apple's counsel was forced to meet and confer with Uniloc, confer with client representatives and prepare for a Court hearing in just a few hours – all <u>on requests that were not previously served on Apple.</u>  Uniloc's tactics have thus far allowed Uniloc to bypass the default 30 days provided under the Federal Rules for Apple to respond to discovery, and it has also allowed Uniloc to evade the discovery limitations in this case.  Apple again faces this risk with regard to Uniloc's excessive discovery requests, which are the subject of this Motion.

## III.    LEGAL STANDARDS

Rule 26(c)(1) authorizes protective orders, for good cause shown:

> to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

A protective order is warranted in those instances in which the moving party demonstrates good cause and a specific need for protection.  *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 434-35 (5th Cir. 1990).  The Court has broad discretion in determining whether to grant a motion for a protective order.  *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).  "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected

---

[4] Request No. 8 seeks documents relating to agreements between Apple and any third-party manufacturer and Request No. 23 seeks documents relating to commercial success.

4

by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Under Rule 33(a), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, <u>including all discrete subparts</u>" (emphasis added).  The Court's OGP increased the interrogatory limit to 30.  *See* Dkt. No. 11 at 2.  Rule 34, which governs requests for production, does not include a similar provision limiting the number of allowable requests, but the Court's OGP set that limit at 75 requests.  *Id*.

Discrete subparts are treated as individual discovery requests and if they exceed the discovery limits set by the Court, are considered violative of Fed. R. Civ. P. 33(a)(1).  *See, e.g.*, *Cleven v. Mid-Am. Apartment Communities, Inc.*, No. 1:16-cv-820-RP, 2017 WL 9480803, at *2 (W.D. Tex. May 4, 2017); *Maverick Whiskey, LLC v. Brewery on Half Moon Bay, Inc.*, No. SA-19-cv-00136-JKP, 2020 WL 110753, at *2 (W.D. Tex. Jan. 9, 2020) ("[A]n interrogatory with multiple subparts shall be counted separately toward [] the ten-interrogatory limit consistent with Rule 33(a) of the Federal Rules of Civil Procedure."); *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, 315 F.R.D. 191, 195 (E.D. Tex. May 13, 2016) ("Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate interrogatory.").  To determine whether a subpart should count as a separate interrogatory, "the court must determine if purported subparts are logically or factually subsumed within and necessarily related to the primary interrogatory in question." *Parkcrest Builders, LLC v. Housing Auth. of New Orleans (HANO)*, No. 15-1533, 2017 WL 1426933, at *3 (E.D. La. Apr. 21, 2017).  Put another way, if the first question can be answered fully and completely without answering the second question, then the second question is independent of the first and not factually subsumed within the primary question.  *Id*. at *4; *see also Erfindergemeinschaft*, 315 F.R.D. at 196.

5

## IV.     ARGUMENT

### A.     Uniloc Has Propounded At Least 49 Interrogatories and 95 Requests for Production, Exceeding The Discovery Limits Set By The Court

Uniloc has exceeded the discovery limitations permitted under the Federal Rules and this Court's OGP.  Although Uniloc's interrogatories are numbered 1-22, at least 13 of them (Nos. 1, 3, 12-22) contain discrete subparts.  Similarly, although Uniloc's requests for production are numbered 1-58, at least 11 of them (Nos. 22, 39, 44-45, 47-50, 53, 55, and 57) contain discrete subparts.[5]  Although Uniloc characterizes its improper use of subparts as "provid[ing] specific examples," that is neither a fair nor accurate representation of its discovery requests.  Uniloc's requests instead demand overbroad categories of information, such as "download and install base metrics" or "the degree of importance relating to the accused functionality" (*see* Guaragna Decl., Ex. 7 at 2), without acknowledging that its "specific examples" are not logically or factually subsumed within other subparts and must therefore be counted as separate requests.  Given the need to comply with the Local Rules, Apple has provided below a few examples of Uniloc's discovery requests which exceed the limits set by the OGP, but also has provided charts illustrating the excessive nature of all of Uniloc's discovery requests as Exhibits 9 and 10 to the Guaragna Declaration.

For example, Interrogatory No. 19 should be considered at least <u>seven</u> separate interrogatories as shown below:

> Identify and describe fully every content delivery network ("CDN"), whether developed and provided by You or by third-parties, that You have used since 2007 to provide for the storage, distribution, and/or downloading of software (*e.g.,* apps, operating systems, and updates thereto) by or via the Accused Instrumentalities, the Accused Functionality, and/or the updating or

---

[5] Uniloc apparently claims that the "subpart" analysis applies only to interrogatories, and not to requests for production.  This implausible position is just wrong.  Uniloc's claim would obviously render any limits useless if one could simply list different document requests as discrete subparts.

6

reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities; identify and describe the location, scope, and operation of each CDN, including any changes thereto since its first use by You for the above-referenced activities; identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory and agreements between You and any third-party CDN provider; and identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

Your response should include at least the following: the identity of any third-party CDN provider; the time period and extent to which You have used the CDN; the location of all network nodes and servers in the United States and worldwide; a description of the logical and physical architecture and layout of each CDN and its servers, nodes, cache locations, and data centers; a description of the processes, steps, and procedures used to provide the functions of storage, distribution, and/or downloading of software in each CDN; a description of the flow of data relating to the storage, distribution, downloading, and sale (including in-app purchases) of software (e.g., apps, operating systems, updates thereto) that is to, from, within, between, and among any and all CDNs and App Store-related servers in the United States and worldwide; an identification of each of Apple's agreements with each third-party CDN provider (e.g., Akamai, Level 3, Limelight, etc.); a description of the processes, data flow, and extent to which any CDN that is based in whole or in part in the United States is involved in the storage, distribution, and/or downloading of software (e.g., apps, operating systems, updates thereto) pertaining to the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities.

Documents to be identified should include, without limitation, presentations, flow charts, logical and physical maps, reports, summaries, data flows, white papers, agreements, contracts, diagrams, specifications, and spreadsheets.

Interrogatory Nos. 1, 3, 12-16, and 21-22 suffer from similar defects.

With respect to Uniloc's document requests, Request No. 44 should be considered at least six separate interrogatories as shown below:

All documents reflecting Your financial relationship, support, sponsorship, investment, partnership, patent-related activities (purchase, licensing, cross-licensing, sale, offer for sale, offer for purchase, transfer, acquisition, or assignment of patents), or ownership interest in, of, or with any entity (or its representatives or proxies) whose primary or sole business involves brokering patents, patent risk mitigation services, licensing patents and/or asserting patents through litigation (typically referred to as a patent licensing

entity, non-practicing entity, patent aggregator, or patent-assertion entity, e.g., Intellectual Ventures, Allied Security Trust ("AST"), Coller Capital, Rockstar Consortium f/k/a Rockstar Bidco, Cliff Island LLC, Digitude Innovations, and Goldpeak Innovations) (collectively, "Licensing Entities") and whom You had not sued or been sued for patent infringement during said relationship or activities.

Documents responsive to this Request include, without limitation, patent license agreements; patent licensing offers; patent purchase agreements; participation agreement for patent purchase; patent purchase offers; investment agreements in patent aggregator companies (AST and Intellectual Ventures); patent assignments; covenants not to sue; standstill agreements; settlement agreements; offers to purchase patents; investment or financing agreements; acquisition agreements; joint-venture agreements; patent or litigation assertion plans; lists of potential licensees; documents identifying or describing the patents that Apple purchased or licensed to or from the Licensing Entities; documents reflecting how much money Apple has paid or received to or from any Licensing Entities; any documents reflecting any Apple or third party assessment of the value of any of the foregoing documents, documents reflecting any advice or instructions that Apple has provided to any Licensing Entities relating to patent licensing or patent enforcement activities; documents relating to Apple receiving assurances, covenants not-to-sue, standstill agreements, indemnification, or protection from being sued for patent infringement by any Licensing Entities; and presentations and correspondence related thereto that involve the Licensing Entities.

Request Nos. 22, 39, 45, 47-50, 53, 55, and 57 also contain multiple improper subparts in each request.

Under Uniloc's interpretation of the Federal Rules, no subparts exist as long as the discovery request includes categories of information that are "factually and logically related to the primary question." But the *Erfindergemeinschaft UroPep GbR* case cited by Uniloc explains that the test is not simply whether the subparts are "logically related," but rather whether they are "logically or factually subsumed within and necessarily related to the primary interrogatory in question." *Erfindergemeinschaft*, 315 F.R.D. at 196. This requires a determination of whether the first question can be answered fully and completely without answering the second question; if the answer is yes, then the second question is independent of the first and not factually

8

subsumed within the primary question. *Id*. The Court should reject Uniloc's misinterpretation of the case law.

## V. CONCLUSION

When all discrete subparts are counted, Uniloc's interrogatories and requests for production exceed the limits imposed by the OGP by at least 19 interrogatories and 20 requests for production. Therefore, Apple respectfully requests that the Court grant its Motion for Protective Order and strike Uniloc's Interrogatory Nos. 17-22 and Request for Production Nos. 52-58 as violative of Rule 33 and the requirements of the OGP.

Dated: October 2, 2020

Respectfully submitted,

By: */s/ John M. Guaragna*
JOHN M. GUARAGNA (Bar No. 199277)
john.guaragna@dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Tel: 512.457.7000
Fax: 512.457.7001

MARK FOWLER *(admitted pro hac vice)*
Bar No. 124235
mark.fowler@dlapiper.com
CHRISTINE K. CORBETT *(admitted pro hac vice)*
Bar No. 209128
christine.corbett@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

ATTORNEYS FOR DEFENDANT
APPLE INC.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Apple has conferred with counsel for Uniloc in a good-faith effort to resolve the matter presented herein. Uniloc opposes the relief requested in the instant Motion.

*/s/ John M. Guaragna*
John M. Guaragna

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on October 2, 2020, pursuant to Local Rule CV-5(a) and has been served on all counsel whom have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ John M. Guaragna*
John M. Guaragna