EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| Uniloc 2017 LLC | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. 6:19-cv-532 |
| | § | |
| Apple Inc., | § | PATENT CASE |
| | § | |
| *Defendant* | § | Jury Trial Demanded |
| | § | |
| | § | |

**PLAINTIFF'S SECOND SET OF INTERROGATORIES**
**TO DEFENDANT APPLE INC. [Nos. 12-20]**

Pursuant to Federal Rules of Civil Procedure 33, Plaintiff Uniloc 2017 LLC ("Uniloc"), by its undersigned attorneys, hereby requests that Defendant Apple Inc. ("Apple" or "Defendant") answer fully in writing and under oath the following interrogatories within thirty (30) days after service hereof. Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing in nature and therefore require Defendant to furnish supplemental answers whenever Defendant obtains different or additional knowledge, information, or belief regarding its answers to these interrogatories.

## I. DEFINITIONS

Unless specifically indicated, or otherwise required by the context in which the terms and names are used, the following instructions and definitions shall apply:

1.      "Apple," "Defendant," "You" and/or "Your" mean Apple Inc. and all related entities, predecessors, successors, subsidiaries, divisions, and/or affiliates thereof, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

2.      "Uniloc" or "Plaintiff" means Plaintiff Uniloc 2017 LLC.

3.      "Accused Products" or "Accused Instrumentality" means each and every product or instrumentality identified in Plaintiff's Infringement Contentions and amendments and supplements thereto as well as all substantially similar products, and all associated computer hardware, software and digital content.   This definition includes, without limitation, Apple operating systems including macOS, iOS, iPadOS, tvOS, and watchOS versions subsequent to version 1.0 and associated servers implementing iOS/macOS/iPadOS/tvOS/watchOS update functionality, Mac desktop and notebook computers (MacBook, MacBook Pro, MacBook Air, iMac, iMac Pro, Mac Pro, Mac mini), iPad (iPad, iPad Air, iPad Pro, iPad mini), iPhone, Apple Watch, Apple TV, and iPod devices running said versions of macOS, iOS, iPadOS, tvOS, watchOS, the App Store (including Mac App Store, TV App Store, and Watch App Store) and associated servers implementing App Store functionality.

4.      "Accused Functionality" refers to the functionality illustrated by Uniloc 2017 LLC in its Infringement Contentions, amendments thereto, or subsequent notices and disclosures, and any reasonably similar functionality, that is incorporated into any of Your products and services.

5.      "Asserted Patent" refers to U.S. Patent No. 6,467,088, which may also be referred to herein and during the course of this Litigation as the "'088 Patent."

6.      "And" or "or" shall be both conjunctive and disjunctive.

7.      "Any" or "each" should be understood to include and encompass "all."

8.      "Communications" means any conveyance of information from one or more persons to one or more other persons and includes, but is not limited to, oral, written, electronic, verbal, and nonverbal modes.

9.   The "Complaint" refers to the operative complaint filed by Plaintiff in the Litigation.

10.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

11.     "Convoyed Products" means each and every product and/or service used, sold, offered for sale, or licensed in the United States by You that is intended to be used along with, in connection with, or related to the use of, any Accused Instrumentalities, Including product maintenance, training, service, and/or updates.

12.     "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation (including relationship to other events).

13.     "Document" and "Documents" shall have the broadest definition possible under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and shall include without limitation, any and all writings, communications, correspondence, emails, drawings, graphs, charts, recordings, photographs, and images.  The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not.

14.     "Electronically stored information" or "ESI" means any document that can be or has been stored in electronic form on a server, tape, electronic media such as an internal or external hard drive or any media whereby the document can be saved and be available for retrieval using any retrieval device, including a computer or server.

15.     "Entity" or "Entities" includes natural persons, proprietorships, partnerships, firms, corporations, public corporations, municipal corporations, governments (including foreign national governments, the government of the U.S. or any state or local government), all

departments and agencies thereof, any governmental agencies of any country, political subdivisions, groups, associations, or organization.

16.     "Evidencing" means proving, indicating, or being probative of the existence or nature of the subject of the document requests.

17.     "Identify" when used in reference to:

(a) An individual, means to state his or her full name, present or last known residential and business addresses, present or last known position and business affiliation, and if applicable, the history of employment of that individual;

(b) A firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation, and to identify each agent that acted for it with respect to the matters relating to the request or answer;

(c) A Document, means to state the Date, title, if any, subject matter, each author, each addressee or recipient if practicable, and otherwise a general description of the persons to whom the writing was distributed, the production number, and the type of Document, *i.e.*, publication, letter, memorandum, book, telegram, chart etc., or some other means of identifying the Document, and its present location and custodian;

(d) A Communication, means to state its Date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it;

(e) A Date, means to state the Date and set forth the basis for Your contention that the Date is responsive to the request;

(f) A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor,

or dealer of the product, service, or intellectual property during the relevant time period and currently. For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations;

(g) A fact or circumstance, means to state in reasonable detail all facts within Your knowledge, custody, or control, or that should be available to You based upon reasonable inquiry that form the basis of Your information, including identifying any relevant individuals, entities, Documents, Communications, Dates, and products.

(h) Prior art that is a patent, identify its number, country or origin, and Date of issue;

(i) Prior art qualifying (or that You claim and/or believe qualifies) under 35 U.S.C. § 102(b), specify the item offered for sale or publicly used or known, the Date the offer or use took place or the information became known, and the identity of the person or entity who made the use, or who made the offer and to whom it was made, or the person or entity who made the information known and to whom it was made known;

(j) Prior art qualifying (or that You claim and/or believe qualifies) under 35 U.S.C. § 102(f), provide the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived; and

(k) Prior art qualifying under 35 U.S.C. § 102(g), provide the identities of the person(s) or the entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s).

(l) A place or location, means state the address, city, state, country, and postal code.

18.     "Involving" is used in its broadest sense to mean without limitation including, employing, entailing, comprehending, and/or affecting.

19.     The "Lawsuit" or "Litigation" means the above-captioned lawsuit.

20.     "Person" means any natural person, legal entity, or business entity, including but not limited to any corporation, partnership, proprietorship, trust, association, organization or group of persons.

21.     Unless otherwise stated, "Relevant period" means the period from the date of first development of the Accused Instrumentalities through the present.

26.     "Relates," "relating," "refers to," or "regarding" means any relationship of whatever kind or nature, be it direct or indirect, and includes without limitation embodying, connected with, commenting upon, responding to, showing, describing, analyzing, reflecting, supporting and constituting.

27.     References to any natural person shall include, in addition to the natural person, any agent, employee, representative, attorney, superior, or principal thereof.

28.     References to any entity shall include, in addition to the entity, any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

29.     "Source Code" means any set of instructions, directives, commands, abstractions, expressions, or representations capable of being interpreted, compiled, or executed by a computer, whether written in any command-line interface, compiled language, interpreted language, scripting language, data/query language, or markup language.

30.     The use of the term "the" shall not be construed as limiting the request.

31.     Use of the singular shall also include the plural, and vice-versa.

## <u>INTERROGATORIES</u>

### <u>INTERROGATORY NO. 12</u>

Identify and describe in detail each instance in which You have engaged in a financial relationship, contractual agreement, financial transaction; partnership, joint-venture, consortium, patent-related activities (purchasing, licensing, cross-licensing, sale, offer for sale, offer for purchase, transfer, acquisition, or assignment of patents) with or have invested in, financially supported, or obtained an ownership interest in any entity (or its representatives or proxies) whose sole or primary business involves brokering patents, patent risk mitigation services, licensing patents and/or asserting patents through litigation (typically referred to as a patent licensing entity, non-practicing entity, patent aggregator, or patent-assertion entity, *e.g.,* Intellectual Ventures, Allied Security Trust, Coller Capital, Rockstar Consortium f/k/a Rockstar Bidco, Cliff Island LLC, Digitude Innovations, and Goldpeak Innovations) (collectively, "Licensing Entities") and whom You had not sued or been sued for patent infringement during said relationship or activities.  And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

Your response should include at least the following: the identity of each entity with whom You engaged in the above-referenced activities; a full description of the nature of the activities between You and any such Licensing Entities; the identity of patents that were involved; the amount of monies involved in each relationship, activity, or agreement; a full description of Your role in the above-referenced activities; and the identity of each document (whether produced thus far in this litigation or not) that You signed or executed and other documents of which You are that are relevant to the above-referenced activities.

Such documents would include, without limitation, patent license agreements; patent licensing offers; patent purchase agreements; participation agreement for patent purchase; patent purchase offers; investment agreements in patent aggregator companies (AST and Intellectual Ventures); patent assignments; covenants not to sue; standstill agreements; settlement agreements; offers to purchase patents; investment or financing agreements; acquisition agreements; joint-venture agreements; patent or litigation assertion plans; lists of potential licensees; documents identifying or describing the patents that Apple purchased or licensed to or from the Licensing Entities; documents reflecting how much money Apple has paid or received to or from any Licensing Entities; any documents reflecting any Apple or third party assessment of the value of any of the foregoing documents, documents reflecting any advice or instructions that Apple has provided to any Licensing Entities relating to patent licensing or patent enforcement activities; documents relating to Apple receiving assurances, covenants not-to-sue, standstill agreements, indemnification, or protection from being sued for patent infringement by any Licensing Entities; and presentations and correspondence related thereto that involve the Licensing Entities.

## INTERROGATORY NO. 13

For each of the Accused Instrumentalities, state Your U.S. and worldwide gross and net revenue, costs (including but not limited to costs of goods sold, material costs, operating costs, research & development costs, marketing costs, sales costs, royalty expenses), and profit (gross profits, operating profit, net income, gross profit margins, contribution margins, operating profit margins, net profit margins) since 2007 (or, if later than 2007, since the date of first commercialization of each of the Accused Instrumentalities), on a monthly basis (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary

court of Your business) and identify each revenue and cost component and the methodology used to calculate the revenue, costs, and profit.  And identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory and identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

With respect to App Store-related revenue and costs, Your response should include revenue and costs for at least the following:

a)  App Store billings — Payments generated by paid downloads and in-app purchases (including subscriptions) of first-party and third-party apps via the App Stores such as, without limitation, Apple's commission from sales of paid apps, in-app purchases, and app subscriptions, and sales of Apple's apps sold through the App Stores (*e.g.,* Final Cut Pro, Aperture).

b) Advertising conducted by Apple or others through the App Stores from within apps or via the App Stores such as, without limitation, App Store Search Ads and iAd.

c) Business and professional services provided by Apple to enterprise customers wherein such services include the use of the App Stores or customized versions thereof such as, without limitation, Apple Business Manager, Apple Developer Program, and Developer Enterprise Program.

To the extent that Your response relies on documents that are in the form of spreadsheets, please produce them in native file format (*e.g.,* Microsoft Excel format).

## INTERROGATORY NO. 14

Identify and describe in detail any and all analysis, estimates, written statements, projections, forecasts, and conclusions that You have made or adopted concerning any cost savings

or commercial benefits to Apple by offering and providing the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities, and being able to offer up-to-date and compatible apps to consumers.  And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify each document (whether produced thus far in this litigation or not) of which You are aware that reflects any such analysis, estimates, written statements, projections, forecasts, and conclusions. Such documents would include, without limitation presentations, slides, reports, summaries, spreadsheets, strategic plans, forecasts, projections, internal analyses, analyst and industry reports (*e.g.*, from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), white papers, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (*e.g.,* July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law).

Commercial benefits may include, without limitation, increasing or maintaining revenue, profitability, and market share; reducing costs (*e.g.*, due to fewer Apple Store visits, the cost of an Apple Store or telephonic customer service inquiry (*e.g.,* AppleCare, AppleCare+) compared to the cost of automatically pushing out a software update or patch), improving or maintaining customer acquisition, customer retention, or the "stickiness"[1] of the Apple ecosystem; estimated financial impact on Apple ecosystem; and Your standing, reputation, and position in the market

---

[1] UNI-APPLE-00067363 at 364 ("tie all of our products together, so we further lock customers into our ecosystem"), 365 ("make Apple ecosystem even more sticky").

among Your competitors such as Google, Microsoft, Samsung, Huawei, Dell, HP, LG, and Android device manufacturers.

The relevant time period for this interrogatory is 2007 to present.

## INTERROGATORY NO. 15.

For each Accused Instrumentality and each year since 2007 (or, if later than 2007, since the date of first commercialization of each Instrumentality), state and describe fully Your belief as to all of the features and attributes that drive consumer demand or preference for or consumers' purchasing decisions for that Accused Instrumentality that year; identify and describe how important each of those features and attributes are in driving consumer preferences or consumers' purchasing decisions that year; and state the basis for Your listing of the features and attributes and their importance.  If the set of features and attributes driving consumer preferences or consumers' purchasing decisions or the features and attributes considered to be most important or very important has changed between 2007 to the present, please describe fully in Your response how and why those have changed.

Also, identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory.  For example, if Apple has ever stated, analyzed, or conducted studies or surveys regarding how important certain features and attributes are in driving consumer demand or preferences or consumers' purchasing decisions, please identify all such documents, which may include, without limitation, studies and surveys[2] (*e.g.*, App Store

---

[2] Order re Discovery Motions, *Apple Inc., v. Samsung Electronics., Ltd., et al.,* Case No. 5:11-cv-01846-LHK, Dkt. 673 (N.D. Cal. Jan. 27, 2012), UNI-APPLE-00077883 at 903 ("Apple has agreed to produce final survey reports and

Survey; iTunes Store Review; iTunes Store Tracker Survey; App Store Marketing Research; App Store Developers Profiling Research; US App Store Developers Profiling Research; App Store Developers Profiling Research: US; App Store Developer Study; iPad Tracking Study; iPad Buyer Study, iPhone Buyer/Early Buyer Survey, *e.g.,* iPhone 3G Buyer Survey, iPhone 4S Early Buyer Survey; iPhone Owner study; iPhone Buyer Trending (US); iPod Buyer/Early Buyer Survey; Mac Buyer Tracking Study; and other similar studies and surveys related to the App Store, other Accused Instrumentalities, and Apps), surveys regarding how customer service regarding software updates or app updates can be improved, surveys regarding the importance of properly functioning and/or current apps in the App Store, raw survey data related to the foregoing surveys, documents reflecting the conclusions Apple has drawn from the survey data, market share and market research reports, competitive analysis, product comparisons, focus group results, questionnaires, reports (*e.g.,* Mobile Analytics Report, iPod Market Share and Wave 5 Customer Research Summary), business reviews (*e.g.,* Business Priorities Review), third-party surveys and industry reports (*e.g.,* reports from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), business plans, presentations, and executive meeting presentations and agendas (*e.g.,* annual Top 100 executive meeting), conference materials (*e.g.,* WWDC), slides, agendas, meeting minutes, videos, transcripts, summaries, speeches, testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (*e.g.,* July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the

---

raw survey data for all customer surveys related to iPhone, iPod Touch, iPad products, market research reports relating to those products, and a wide variety of print, television, and other advertisement media plans, as well as online click counts for the iPhone, iPod Touch, iPad products.").

Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law).

## INTERROGATORY NO. 16

For each category of accused hardware device (*e.g.,* iPhone, iPad, iPod, Mac, Apple TV, Apple Watch) and each year since 2007, state the volume of first downloads and app updates, and the active installed base, as follows:

a)  For each month (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary course of Your business), state the number of first downloads of applications (including operating system software) that have occurred, in the United States and separately worldwide, via the App Store and separately via other means such as the operating system of the Accused Instrumentalities;

b)  For each month (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary course of Your business), state the number of updates of applications (including operating system software) that have occurred, in the United States and separately worldwide, via the App Store and, separately via other means such as the operating system of the Accused Instrumentalities;

c)  For each time period reported for subparts a) and b) above, state the number of devices in active use ("active installed base") for each category of accused hardware device in the United States and separately worldwide and, for each category of accused hardware device in the active installed base, state how many devices are running on each version of the operating system for that device (*e.g.,* the number of iPhones running each of iOS version

1.x, 2.x, 3.x; the number of Macs running each of macOS/OS X version 10.7, 10.8, 10.9, etc.).

And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory.  Such documents may include, without limitation, spreadsheets, summaries, reports, and presentations reflecting the requested data; documents and data relied on by Apple's management when presenting App Store-related data and metrics during internal meetings, data relied upon for information contained in Apple Press Releases, Top 100 executive retreats, and conferences (*e.g.,* WWDC), testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (*e.g.,* July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law).

## INTERROGATORY NO. 17

State the full version history for each of the top 20 free iOS, macOS, tvOS, and watchOS apps and top 20 paid iOS, macOS, tvOS, and watchOS apps in each year since 2007.

And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory.

**INTERROGATORY NO. 18**

On a per product basis, state and describe fully Your entire basis for and identify all evidence that supports, tends to support, refute, or tends to refute Apple's belief that the products listed in Apple's First Notice of Unmarked Patented Articles (and any subsequent notices, amendments, or supplements related thereto) practice one or more claims of the '088 Patent and identify which claims of the '088 Patent that You allege each product practices.

And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory, that You have relied upon in answering this Interrogatory, or that support, tends to support, refute, or tends to refute Apple's belief that the products listed in the Notice practice one or more claims of the '088 Patent.  Such documents may include, without limitation, product guides, product and technical specifications, web pages, deposition and trial transcripts, articles, presentations, slides, reports, summaries, correspondence with third parties, and white papers.

**INTERROGATORY NO. 19**

Identify and describe fully every content delivery network ("CDN"), whether developed and provided by You or by third-parties, that You have used since 2007 to provide for the storage, distribution, and/or downloading of software (*e.g.,* apps, operating systems, and updates thereto) by or via the Accused Instrumentalities, the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities; identify and describe the location, scope, and operation of each CDN, including any changes thereto since its first use by You for the above-referenced activities; identify the documents

(whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory and agreements between You and any third-party CDN provider; and identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

Your response should include at least the following: the identity of any third-party CDN provider; the time period and extent to which You have used the CDN; the location of all network nodes and servers in the United States and worldwide; a description of the logical and physical architecture and layout of each CDN and its servers, nodes, cache locations, and data centers; a description of the processes, steps, and procedures used to provide the functions of storage, distribution, and/or downloading of software in each CDN; a description of the flow of data relating to the storage, distribution, downloading, and sale (including in-app purchases) of software (*e.g.,* apps, operating systems, updates thereto) that is to, from, within, between, and among any and all CDNs and App Store-related servers in the United States and worldwide; an identification of each of Apple's agreements with each third-party CDN provider (e.*g.,* Akamai[3], Level 3, Limelight, etc.)[4]; a description of the processes, data flow, and extent to which any CDN that is based in whole or in part in the United States is involved in the storage, distribution, and/or downloading of software (*e.g.,* apps, operating systems, updates thereto) pertaining to the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities.

---

[3] Apple's agreements with Akamai were referenced as a trial exhibit in the *Smartflash v. Apple* (E.D. Tex.) case.
[4] "Apple's multi-terabit, $100M CDN is live—with paid connection to Comcast," July 31, 2014, at https://arstechnica.com/information-technology/2014/07/apples-multi-terabit-100m-cdn-is-live-with-paid-connection-to-comcast/ ("Apple is still using Akamai and Level 3 CDN services for iTunes and app downloads,").

Documents to be identified should include, without limitation, presentations, flow charts, logical and physical maps, reports, summaries, data flows, white papers, agreements, contracts, diagrams, specifications, and spreadsheets.

## INTERROGATORY NO. 20

State and describe fully Apple's belief and understanding regarding the degree of importance that the App Store (including Mac App Store, TV App Store, and Watch App Store), Accused Functionality, updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities, and being able to offer up-to-date and compatible apps to consumers, have:

a) to Apple, including, without limitation, to the Apple products ecosystem, to the sales and features set of the products or services offered by Apple, to Apple's standing in the markets in which the Accused Instrumentalities compete, to Apple's market position in the United States and worldwide with respect to its competitors (*e.g.,* Google, Microsoft, Samsung, Huawei, Dell, HP, LG, and Android device manufacturers, etc.) in the markets in the United States and worldwide in which they compete, and

b) to Apple's customers and their purchasing decisions about Apple's products and services.

Also, identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory. For example, if Apple has ever stated or analyzed the degree of importance of the aforementioned items, please identify all such documents, which may include, without limitation, studies and surveys (*e.g.,* App Store Survey, iTunes Store

Review; iTunes Store Tracker Survey, App Store Marketing Research, App Store Developers Profiling Research, US App Store Developers Profiling Research, App Store Developers Profiling Research: US, App Store Developer Study, iPad Tracking Study; iPad Buyer Study; iPhone Buyer/Early Buyer Survey, *e.g.,* iPhone 3G Buyer Survey, iPhone 4S Early Buyer Survey; iPhone Owner study; iPhone Buyer Trending (US); iPod Buyer/Early Buyer Survey; Mac Buyer Tracking Study; and other similar studies and surveys related to the App Store, other Accused Instrumentalities, and Apps), raw survey data related to the foregoing surveys, documents reflecting the conclusions Apple has drawn from the survey data, market share and market research reports, competitive analysis, product comparisons, questionnaires, reports (*e.g.,* Mobile Analytics Report, iPod Market Share and Wave 5 Customer Research Summary), business reviews (*e.g.,* Business Priorities Review), third-party surveys and industry reports (*e.g.,* reports from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), business plans, presentations, and executive meeting presentations and agendas (e.g., annual Top 100 executive meeting), conference materials (*e.g.,* WWDC), slides, agendas, meeting minutes, videos, transcripts, summaries, speeches, testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (*e.g.,* July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law).

The relevant time period for this interrogatory is 2007 to present.  If the beliefs as to the degree of importance have changed over this time period, please describe how they have changed in your response.

DATED: August 4, 2020

Respectfully Submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Debra Coleman
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
Christian Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin
Texas State Bar No. 50511688
echin@bdavisfirm.com
Ty Wilson
Texas State Bar No. 24106583
Twilson@davisfirm.com

**DAVIS FIRM, P.C.**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
T: (903) 230-9090
F: (903) 230-9661

**Counsel for Plaintiff Uniloc 2017
LLC**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served via email to all counsel of

record on August 4, 2020.

/s/ William E. Davis, III

William E. Davis, III