EXHIBIT 9

*Uniloc 2017 v. Apple* (WDTX -532)

**Analysis of Number of Interrogatories Served by Uniloc**

| Full Text of ROG | Text Broken into Sub-ROGs | Total No. Sub-ROGs |
|---|---|---|
| 1. For the period of date of first development of the Accused Instrumentalities to present, Identify every offering, including but not limited to each Accused Instrumentality, that has the ability to perform, relies upon, or is related to the Accused Functionalities or updating or reconfiguring applications (including operating systems) in whole or in part when combined with other offerings. The identification requested by this Interrogatory is limited to offerings that You have made, sold, offered for sale, or used in the United States, or imported into the United States, and should include, for each such offering at least (a) all known names, abbreviations, labels, designations, SKUs, part numbers, inventory numbers, or other identifiers used by You or Your customers publicly, internally, or otherwise to refer to the offering; (b) the Dates that the offering has been made, sold, offered for sale, used or imported; (c) every material variation (e.g., version) of the offering by designation and release date; and (d) the name of each entity or group that has made, sold, offered for sale, and/or imported the offering. | all known names, abbreviations, labels, designations, SKUs, part numbers, inventory numbers, or other identifiers used by You or Your customers publicly, internally, or otherwise to refer to the offering<br><br>the Dates that the offering has been made, sold, offered for sale, used or imported<br><br>every material variation (e.g., version) of the offering by designation and release date<br><br>the name of each entity or group that has made, sold, offered for sale, and/or imported the offering | 4 |
| 2. For each offering identified in Your response to Interrogatory No. 1, describe in detail how that offering has the ability to perform or rely upon the Accused Functionalities, including the process by which applications are updated via the App Store as well as updates to the Operating System (e.g., iOS, iPadOS, MacOS, tvOS, and watchOS). | | 1 |
| 3. For the period of date of first development of the Accused Instrumentalities to present, for each offering identified in response to Interrogatory No. 1, describe | all known names, abbreviations, labels, designations, SKUs, part numbers inventory numbers, or other | 4 |

| | | |
|---|---|---|
| in detail all services, support, and/or subscriptions that may be provided with that offering, including all Convoyed Products that You have made, sold, offered, for sale, or used in the United States, or imported into the United States, by providing, for each such offering: (a) all known names, abbreviations, labels, designations, SKUs, part numbers inventory numbers, or other identifiers used by You or Your customers publicly, internally, or otherwise to refer to the offering; (b) the Dates that the offering has been made, sold, offered for sale, used, or imported; (c) every material variation (i.e., version) of the offering by designation and release date; and (d) the name of each entity or group that has made, sold, offered for sale, or imported the offering. | identifiers used by You or Your customers publicly, internally, or otherwise to refer to the offering; <br><br> the Dates that the offering has been made, sold, offered for sale, used, or imported; <br><br> every material variation (i.e., version) of the offering by designation and release date; and <br><br> the name of each entity or group that has made, sold, offered for sale, or imported the offering | |
| 4. For each offering identified in response to Interrogatory Nos. 1 and 3, describe in detail the process by which each is made, sold, offered for sale, used, and imported into the United States, including Identifying any third parties involved in said activities. Your response should Identify and describe with specificity where the components of the Accused Instrumentalities are manufactured and assembled, including, without limitation, the location at which the code providing the Accused Functionalities is loaded onto the Accused Instrumentalities, and for certain Accused Instrumentalities that are offered as software, the identity, location, and interrelationship of servers from which the software is accessed or downloaded by customers or from which applications (including operating systems) are provided or transmitted to customers and/or end users. | | 1 (Court narrowed this request to 1) |
| 5. Identify and describe the location, job title, and job responsibility of all persons or groups responsible for the design, development, coding, sale, support, | | 1 |

| | | |
|---|---|---|
| training, marketing, manufacturing assembly, distribution, and/or testing of all offerings identified in response to Interrogatory Nos. 1 and 3. | | |
| 6. Separately for each offering Identified in Your response to Interrogatory Nos. 1 and 3, state in detail all factual and legal bases for Your contention (if You do so contend) that You do not infringe, directly or indirectly, any claim of the Asserted Patent, Identifying the claim element(s) that You allege are not included in each Accused Instrumentality that You contend does not infringe and explain in detail why each such element is not included (both literally and under the doctrine of equivalents). As part of Your response, if You disagree with any of Uniloc's infringement contentions, separately Identify any contention with which You disagree and explain in detail why You disagree and Identify the person(s) who are most knowledgeable about the facts underlying Your answer and Documents related thereto. | | 1 |
| 7. Describe in detail each patent license agreement to which You are or have been a party, signatory, or beneficiary at any time that covers or relates to application or software updating technology (including, without limitation, licenses for the offerings identified in response to Interrogatory Nos. 1 and 3), including without limitation: (i) the Date of the agreement; (ii) the parties to the agreement; (iii) the patent(s) involved; (iv) the product(s) covered; and (v) the amount paid and/or consideration exchanged, including any applicable royalty rate, upfront/lump-sum payments, or technology/patents transferred; and Identify all Documents reflecting the circumstances surrounding Your entry into such agreements or | | 1 |

*Uniloc 2017 v. Apple* (WDTX -532)

| | | |
|---|---|---|
| reflecting any Communications related to such agreements. | | |
| 8. To the extent You contend that any non-infringing alternatives to any offering identified in Your response to Interrogatory Nos. 1 and 3 exist, describe in detail any such contention, including Identifying each alleged non-infringing alternative, describing why each alleged non-infringing alternative is technologically and economically feasible and acceptable, providing the cost to implement each alleged non-infringing alternative, Identifying the Date upon which You became aware of each alleged non-infringing alternative, describing your use, implementation, study, testing at any time of each alleged non-infringing alternative, Identifying the person or persons who are knowledge able the facts supporting Your contentions, and Identifying any Documents that support Your contentions. | | 1 |
| 9. Describe when and how You first learned of or acquired knowledge of the Asserted Patent, including: (a) the Date on which You first learned of or acquired knowledge or awareness of the patent; (b) the identity of Your employee(s) who first acquired such knowledge; and (c) the manner in which such persons acquired such knowledge. | | 1 |
| 10. Identify the minimum skills, qualifications, and criteria You contend are applicable to a person of ordinary skill in the art of the Asserted Patent, and state all legal and factual bases for Your contention. | | 1 |
| 11. Describe in detail Your efforts to identify and avoid infringement of the Asserted Patent that relate to any offering identified in Your response to Interrogatory Nos. 1 and 3, including any attempts to design around or develop any alleged non-infringing alternatives to any such Patent (Including the Patents-in-Suit) or | | 1 |

| | | |
|---|---|---|
| ceasing to make, use sell, or offer to sell in the United States or import into the United States, those offerings. | | |
| 12. Identify and describe in detail each instance in which You have engaged in a financial relationship, contractual agreement, financial transaction; partnership, joint-venture, consortium, patent-related activities (purchasing, licensing, cross-licensing, sale, offer for sale, offer for purchase, transfer, acquisition, or assignment of patents) with or have invested in, financially supported, or obtained an ownership interest in any entity (or its representatives or proxies) whose sole or primary business involves brokering patents, patent risk mitigation services, licensing patents and/or asserting patents through litigation (typically referred to as a patent licensing entity, non-practicing entity, patent aggregator, or patent-assertion entity, e.g., Intellectual Ventures, Allied Security Trust, Coller Capital, Rockstar Consortium f/k/a Rockstar Bidco, Cliff Island LLC, Digitude Innovations, and Goldpeak Innovations) (collectively, "Licensing Entities") and whom You had not sued or been sued for patent infringement during said relationship or activities. And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.<br><br>Your response should include at least the following: the identity of each entity with whom You engaged in the above-referenced activities; a full description of the nature of the activities between You and any such Licensing Entities; the identity of patents that were involved; the amount of monies involved in each relationship, activity, or agreement; a full description of Your role in the above-referenced activities; and the | a full description of each instance in which Apple entered into an agreement or transaction with an entity whose business involves brokering patents, patent risk mitigation services, licensing patents, and/or asserting patents;<br><br>documents reflecting any Apple or third party assessment of the value of any of the foregoing documents;<br><br>documents reflecting any advice or instructions that Apple has provided to any Licensing Entities relating to patent licensing or patent enforcement activities;<br><br>documents related to Apple receiving assurances by any Licensing Entities | 4 |

| | | |
|---|---|---|
| identity of each document (whether produced thus far in this litigation or not) that You signed or executed and other documents of which You are that are relevant to the above-referenced activities.<br><br>Such documents would include, without limitation, patent license agreements; patent licensing offers; patent purchase agreements; participation agreement for patent purchase; patent purchase offers; investment agreements in patent aggregator companies (AST and Intellectual Ventures); patent assignments; covenants not to sue; standstill agreements; settlement agreements; offers to purchase patents; investment or financing agreements; acquisition agreements; joint-venture agreements; patent or litigation assertion plans; lists of potential licensees; documents identifying or describing the patents that Apple purchased or licensed to or from the Licensing Entities; documents reflecting how much money Apple has paid or received to or from any Licensing Entities; any documents reflecting any Apple or third party assessment of the value of any of the foregoing documents, documents reflecting any advice or instructions that Apple has provided to any Licensing Entities relating to patent licensing or patent enforcement activities; documents relating to Apple receiving assurances, covenants not-to-sue, standstill agreements, indemnification, or protection from being sued for patent infringement by any Licensing Entities; and presentations and correspondence related thereto that involve the Licensing Entities. | | |
| 13. For each of the Accused Instrumentalities, state Your U.S. and worldwide gross and net revenue, costs (including but not limited to costs of goods sold, material costs, operating costs, research & | <span style="color:red">gross and net revenue and costs (financial documents)</span><br><br><span style="color:green">methodology used to calculate the revenue, costs, and profit</span> | 2 |

development costs, marketing costs, sales costs, royalty expenses), and profit (gross profits, operating profit, net income, gross profit margins, contribution margins, operating profit margins, net profit margins) since 2007 (or, if later than 2007, since the date of first commercialization of each of the Accused Instrumentalities), on a monthly basis (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary court of Your business) and identify each revenue and cost component and the methodology used to calculate the revenue, costs, and profit. And identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory and identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

With respect to App Store-related revenue and costs, Your response should include revenue and costs for at least the following:

a) App Store billings — Payments generated by paid downloads and in-app purchases (including subscriptions) of first-party and third-party apps via the App Stores such as, without limitation, Apple's commission from sales of paid apps, in-app purchases, and app subscriptions, and sales of Apple's apps sold through the App Stores (e.g., Final Cut Pro, Aperture).

b) Advertising conducted by Apple or others through the App Stores from within apps or via the App Stores such as, without limitation,

| | | |
|---|---|---|
| App Store Search Ads and iAd.<br>c) Business and professional services provided by Apple to enterprise customers wherein such services include the use of the App Stores or customized versions thereof such as, without limitation, Apple Business Manager, Apple Developer Program, and Developer Enterprise Program.<br><br>To the extent that Your response relies on documents that are in the form of spreadsheets, please produce them in native file format (e.g., Microsoft Excel format). | | |
| 14. Identify and describe in detail any and all analysis, estimates, written statements, projections, forecasts, and conclusions that You have made or adopted concerning any cost savings or commercial benefits to Apple by offering and providing the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities, and being able to offer up-to-date and compatible apps to consumers. And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify each document (whether produced thus far in this litigation or not) of which You are aware that reflects any such analysis, estimates, written statements, projections, forecasts, and conclusions. Such documents would include, without limitation presentations, slides, reports, summaries, spreadsheets, strategic plans, forecasts, projections, internal analyses, analyst and industry reports (e.g., from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, | <span style="color:red">Analyses of cost savings to Apple by having App Store</span><br><br><span style="color:green">Analyses of commercial benefits to Apple by having App Store</span> | 2 |

| | | |
|---|---|---|
| Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), white papers, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (e.g., July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law).<br><br>Commercial benefits may include, without limitation, increasing or maintaining revenue, profitability, and market share; reducing costs (e.g., due to fewer Apple Store visits, the cost of an Apple Store or telephonic customer service inquiry (e.g., AppleCare, AppleCare+) compared to the cost of automatically pushing out a software update or patch), improving or maintaining customer acquisition, customer retention, or the "stickiness"[1] of the Apple ecosystem; estimated financial impact on Apple ecosystem; and Your standing, reputation, and position in the market among Your competitors such as Google, Microsoft, Samsung, Huawei, Dell, HP, LG, and Android device manufacturers.<br><br>The relevant time period for this interrogatory is 2007 to present. | | |
| 15. For each Accused Instrumentality and each year since 2007 (or, if later than 2007, since the date of first commercialization of each Instrumentality), state and describe fully Your belief as to all of the features and | <span style="color:red">identification of the features and attributes that drive consumer demand;</span> | 3 |

---

[1] UNI-APPLE-00067363 at 364 ("tie all of our products together, so we further lock customers into our ecosystem"), 365 ("make Apple ecosystem even more sticky").

| | | |
|---|---|---|
| attributes that drive consumer demand or preference for or consumers' purchasing decisions for that Accused Instrumentality that year; identify and describe how important each of those features and attributes are in driving consumer preferences or consumers' purchasing decisions that year; and state the basis for Your listing of the features and attributes and their importance. If the set of features and attributes driving consumer preferences or consumers' purchasing decisions or the features and attributes considered to be most important or very important has changed between 2007 to the present, please describe fully in Your response how and why those have changed.<br><br>Also, identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory. For example, if Apple has ever stated, analyzed, or conducted studies or surveys regarding how important certain features and attributes are in driving consumer demand or preferences or consumers' purchasing decisions, please identify all such documents, which may include, without limitation, studies and surveys[2] (e.g., App Store Survey; iTunes Store Review; iTunes Tracker Survey; App Store Marketing Research; App Store Developers Profiling Research; US App Store | describe how important each of those features and attributes are in driving consumer preferences or consumers' purchasing decisions that year;<br><br>explain whether the listing has changed from year to year | |

---

[2] Order re Discovery Motions, Apple Inc., v. Samsung Electronics., Ltd., et al., Case No. 5:11-cv-01846-LHK, Dkt. 673 (N.D. Cal. Jan. 27, 2012), UNI-APPLE-00077883 at 903 ("Apple has agreed to produce final survey reports and raw survey data for all customer surveys related to iPhone, iPod Touch, iPad products, market research reports relating to those products, and a wide variety of print, television, and other advertisement media plans, as well as online click counts for the iPhone, iPod Touch, iPad products.").

| | | |
|---|---|---|
| Developers Profiling Research; App Store Developers Profiling Research: US; App Store Developer Study; iPad Tracking Study; iPad Buyer Study, iPhone Buyer/Early Buyer Survey, e.g., iPhone 3G Buyer Survey, iPhone 4S Early Buyer Survey; iPhone Owner study; iPhone Buyer Trending (US); iPod Buyer/Early Buyer Survey; Mac Buyer Tracking Study; and other similar studies and surveys related to the App Store, other Accused Instrumentalities, and Apps), surveys regarding how customer service regarding software updates or app updates can be improved, surveys regarding the importance of properly functioning and/or current apps in the App Store, raw survey data related to the foregoing surveys, documents reflecting the conclusions Apple has drawn from the survey data, market share and market research reports, competitive analysis, product comparisons, focus group results, questionnaires, reports (e.g., Mobile Analytics Report, iPod Market Share and Wave 5 Customer Research Summary), business reviews (e.g., Business Priorities Review), third-party surveys and industry reports (e.g., reports from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), business plans, presentations, and executive meeting presentations and agendas (e.g., annual Top 100 executive meeting), conference materials (e.g., WWDC), slides, agendas, meeting minutes, videos, transcripts, summaries, speeches, testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (e.g., July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, | | |

| | | |
|---|---|---|
| Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law). | | |
| 16. For each category of accused hardware device (e.g., iPhone, iPad, iPod, Mac, Apple TV, Apple Watch) and each year since 2007, state the volume of first downloads and app updates, and the active installed base, as follows:<br><br>    a)  For each month (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary course of Your business), state the number of first downloads of applications (including operating system software) that have occurred, in the United States and separately worldwide, via the App Store and separately via other means such as the operating system of the Accused Instrumentalities;<br><br>    b)  For each month (or, only if not available on a monthly basis, per time period for which you keep such information in the ordinary course of Your business), state the number of updates of applications (including operating system software) that have occurred, in the United States and separately worldwide, via the App Store and, separately via other means such as the operating system of the Accused Instrumentalities;<br><br>    c)  For each time period reported for subparts a) and b) above, state the number of | <span style="color:red">the number of first downloads of applications that have occurred in the United States and worldwide</span><br><br><span style="color:green">the number of updates of applications that have occurred in the United States and worldwide</span><br><br><span style="color:blue">the number of devices in active use for each of the above categories</span><br><br><span style="color:blue">the number of devices running on each version of the operating system for each category of accused device</span> | 4 |

devices in active use ("active installed base") for each category of accused hardware device in the United States and separately worldwide and, for each category of accused hardware device in the active installed base, state how many devices are running on each version of the operating system for that device (e.g., the number of iPhones running each of iOS version 1.x, 2.x, 3.x; the number of Macs running each of macOS/OS X version 10.7, 10.8, 10.9, etc.).

And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory. Such documents may include, without limitation, spreadsheets, summaries, reports, and presentations reflecting the requested data; documents and data relied on by Apple's management when presenting App Store-related data and metrics during internal meetings, data relied upon for information contained in Apple Press Releases, Top 100 executive retreats, and conferences (e.g., WWDC), testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (e.g., July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and

| | | |
|---|---|---|
| Administrative Law). | | |
| 17. State the full version history for each of the top 20 free iOS, macOS, tvOS, and watchOS apps and top 20 paid iOS, macOS, tvOS, and watchOS apps in each year since 2007.<br><br>And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory. | | 1 |
| 18. On a per product basis, state and describe fully Your entire basis for and identify all evidence that supports, tends to support, refute, or tends to refute Apple's belief that the products listed in Apple's First Notice of Unmarked Patented Articles (and any subsequent notices, amendments, or supplements related thereto) practice one or more claims of the '088 Patent and identify which claims of the '088 Patent that You allege each product practices.<br><br>And identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory, that You have relied upon in answering this Interrogatory, or that support, tends to support, refute, or tends to refute Apple's belief that the products listed in the Notice practice one or more claims of the '088 Patent. Such documents may include, without limitation, product guides, product and technical specifications, web pages, deposition | | 1 |

| | | |
|---|---|---|
| and trial transcripts, articles, presentations, slides, reports, summaries, correspondence with third parties, and white papers. | | |
| 19. Identify and describe fully every content delivery network ("CDN"), whether developed and provided by You or by third-parties, that You have used since 2007 to provide for the storage, distribution, and/or downloading of software (*e.g.,* apps, operating systems, and updates thereto) by or via the Accused Instrumentalities, the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities; identify and describe the location, scope, and operation of each CDN, including any changes thereto since its first use by You for the above-referenced activities; identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory and agreements between You and any third-party CDN provider; and identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory.

Your response should include at least the following: the identity of any third-party CDN provider; the time period and extent to which You have used the CDN; the location of all network nodes and servers in the United States and worldwide; a description of the logical and physical architecture and layout of each CDN and its servers, nodes, cache locations, and data centers; a description of the processes, steps, and procedures used to provide the functions of storage, distribution, and/or downloading of software in each CDN; a description of the flow of data relating to the storage, distribution, downloading, and sale (including in-app purchases) of software (e.g., apps, operating systems, updates thereto) that is to, from, | <span style="color:teal">identify and describe the location, scope, and operation of each content delivery network ("CDN"), including any changes thereto since its first use</span>

<span style="color:green">the identity of any third-party CDN provider</span>

<span style="color:purple">the time period and extent to which You have used the CDN</span>

<span style="color:red">the location of all network nodes and servers in the United States and worldwide</span>

<span style="color:blue">a description of the logical and physical architecture and layout of each CDN and its servers, nodes, cache locations, and data centers</span>

<span style="color:red">a description of the processes, steps, and procedures used to provide the functions of storage, distribution, and/or downloading of software in each CDN</span>

<span style="color:orange">an identification of each of Apple's agreements with each third-party CDN provider</span> | 7 |

| | | |
|---|---|---|
| within, between, and among any and all CDNs and App Store-related servers in the United States and worldwide; an identification of each of Apple's agreements with each third-party CDN[3] provider (e.g., Akamai[3], Level 3, Limelight, etc.)[4]; a description of the processes, data flow, and extent to which any CDN that is based in whole or in part in the United States is involved in the storage, distribution, and/or downloading of software (e.g., apps, operating systems, updates thereto) pertaining to the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities.<br><br>Documents to be identified should include, without limitation, presentations, flow charts, logical and physical maps, reports, summaries, data flows, white papers, agreements, contracts, diagrams, specifications, and spreadsheets. | | |
| 20. State and describe fully Apple's belief and understanding regarding the degree of importance that the App Store (including Mac App Store, TV App Store, and Watch App Store), Accused Functionality, updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities, and being able to offer up-to-date and compatible apps to consumers, have:<br>    a)    to Apple, including, without limitation, to the Apple products ecosystem, to the sales and features set of the products or services | | 1 |

---

[3] Apple's agreements with Akamai were referenced as a trial exhibit in the Smartflash v. Apple (E.D. Tex.) case.

[4] "Apple's multi-terabit, $100M CDN is live—with paid connection to Comcast," July 31, 2014, at https://arstechnica.com/information-technology/2014/07/apples-multi-terabit-100m-cdn-is- live-with-paid-connection-to-comcast/ ("Apple is still using Akamai and Level 3 CDN services for iTunes and app downloads,").

|  | offered by Apple, to Apple's standing in the markets in which the Accused Instrumentalities compete, to Apple's market position in the United States and worldwide with respect to its competitors (e.g., Google, Microsoft, Samsung, Huawei, Dell, HP, LG, and Android device manufacturers, etc.) in the markets in the United States and worldwide in which they compete, and |  |  |
|---|---|---|---|
| b) | to Apple's customers and their purchasing decisions about Apple's products and services.<br><br>Also, identify the persons most knowledgeable concerning the facts set forth in Your response to this Interrogatory and identify the documents (whether produced thus far in this litigation or not) of which You are aware that reflect the information requested in this Interrogatory or that You have relied upon in answer this Interrogatory. For example, if Apple has ever stated or analyzed the degree of importance of the aforementioned items, please identify all such documents, which may include, without limitation, studies and surveys (e.g., App Store Survey, iTunes Store Review; iTunes Store Tracker Survey, App Store Marketing Research, App Store Developers Profiling Research, US App Store Developers Profiling Research, App Store Developers Profiling Research: US, App Store Developer Study, iPad Tracking Study; iPad Buyer Study; iPhone Buyer/Early Buyer Survey, e.g., iPhone 3G Buyer Survey, iPhone 4S Early Buyer Survey; iPhone Owner study; iPhone Buyer Trending (US); iPod Buyer/Early Buyer Survey; Mac Buyer Tracking Study; and other similar studies and surveys |  |  |

| | | |
|---|---|---|
| related to the App Store, other Accused Instrumentalities, and Apps), raw survey data related to the foregoing surveys, documents reflecting the conclusions Apple has drawn from the survey data, market share and market research reports, competitive analysis, product comparisons, questionnaires, reports (e.g., Mobile Analytics Report, iPod Market Share and Wave 5 Customer Research Summary), business reviews (e.g., Business Priorities Review), third-party surveys and industry reports (e.g., reports from Analysis Group, Comtech, Nielsen, NPD, comScore, Piper Jaffray, Gartner, Forrester Research, DC, Frost & Sullivan, etc.; Nielsen: Mobile Connected Device Report; Nielsen: Mobile Apps Playbook), business plans, presentations, and executive meeting presentations and agendas (e.g., annual Top 100 executive meeting), conference materials (e.g., WWDC), slides, agendas, meeting minutes, videos, transcripts, summaries, speeches, testimony by Apple employees, and documents, emails, and other evidence that Apple has produced to Congress pertaining to the App Store (e.g., July 29, 2020 Hearing on "Online Platforms and Market Power: Examining the Dominance of Amazon, Apple, Facebook, and Google" before the U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law). <br><br> The relevant time period for this interrogatory is 2007 to present. If the beliefs as to the degree of importance have changed over this time period, please describe how they have changed in your response. | | |
| 21. Identify and describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips | Describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips Netherlands, Philips U.S., any entity | 5 |

| | | |
|---|---|---|
| (including but not limited to Koninklijke Philips Electronics N.V., Philips North America Corporation, Royal Philips), between You and any entity owned or co-owned by Philips (including but not limited to Intertrust Technologies or Signify Holding), or between You and any entity acting on Philips' behalf, relating to any Philips Technology; U.S. Patent No. 6,467,088 and related patent applications; the Accused Products; the Accused Functionality; any technology that You believe is technologically comparable to the '088 Patent; and any technology that You believe is relevant to a *Georgia-Pacific* analysis or an apportionment analysis in this case. In Your description of each agreement, offer, or transaction, please identify the type of agreement, offer, or transaction, license term, relevant dates, amounts paid, patents purchased or licensed, other essential terms, and the identity of the persons most knowledgeable concerning each agreement, offer, or transaction. | owned or co-owned by Philips, or any entity acting on Philips' behalf, relating to any Philips Technology<br><br>Describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips Netherlands, Philips U.S., any entity owned or co-owned by Philips, or any entity acting on Philips' behalf, relating to U.S. Patent No. 6,467,088 and related patent applications<br><br>Describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips Netherlands, Philips U.S., any entity owned or co-owned by Philips, or any entity acting on Philips' behalf, relating to Accused Products/Accused Functionality<br><br>Describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips Netherlands, Philips U.S., any entity owned or co-owned by Philips, or any entity acting on Philips' behalf, relating to any technology that You believe is technologically comparable to the '088 Patent<br><br>Describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and Philips Netherlands, Philips U.S., any entity owned or co-owned by Philips, or any entity acting on Philips' behalf, relating to any technology that You believe is relevant to a *Georgia-Pacific* analysis or an apportionment analysis in this case | |
| 22. For each product or article listed in Apple's First Notice of Unmarked Patented Articles (and any subsequent notices, amendments, or supplements | describe fully the factual basis underlying Your belief and assertion that each product and article qualifies as "'patented articles' subject to 35 U.S.C. § 287" | 2 |

| related thereto) ("Apple's Notice"), identify and describe fully the factual basis underlying Your belief and assertion that each product and article qualifies as "'patented articles' subject to 35 U.S.C. § 287"[1] and that each product and article was sold or offered for sale in the United States after the execution of the patent license or patent purchase agreements identified in Apple's Notice, and identify by Bates Number each document, each of "Uniloc's public statements, discovery materials, and other sources of proof,"[2] and the URL of each of the "public websites"[3] upon which Apple has relied for its beliefs and assertions pertaining to Apple's Notice. | describe fully the factual basis underlying Your belief and assertion that each product and article was sold or offered for sale in the United States after the execution of the patent license or patent purchase agreements identified in Apple's Notice | |