# IN THE UNITED STATES DISTRICT COURT
# FOR WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| Uniloc 2017 LLC, | § § § § | |
|     *Plaintiff* | | |
| v. | § § § | Case No. 6:19-cv-532-ADA |
| Apple Inc., | § § § | PATENT CASE |
|     *Defendant* | § § § | Jury Trial Demanded |

**PLAINTIFF UNILOC 2017 LLC'S RESPONSE TO
APPLE'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 96)**

## I. INTRODUCTION

Uniloc 2017 LLC respectfully requests that the Court deny Apple's Motion for Protective Order ("Motion") (Dkt. No. 96). Apple seeks protection from discovery on the ground that Uniloc's requests for production and interrogatories contain multiple discrete subparts that, according to Apple's count, exceeds the limits set out in the Order Governing Proceedings (Dkt. No. 11). Apple's Motion, which was also untimely filed, should be denied because each of the subparts it identifies are logically and factually subsumed within Uniloc's discovery requests.

Apple's numerosity objection improperly counts specific examples provided in Uniloc's requests as discrete subparts. Uniloc went out of its way to provide these specific examples of the types of documents and responses it expects to receive from Apple. This was done to avoid Apple's often employed tactic of responding that it does know what discovery Uniloc is requesting. Apple devotes a substantial portion of its Motion lamenting the "harras[ment]" it has supposedly endured from Uniloc. While Uniloc, of course, disagrees with and rejects these accusations, they are ultimately irrelevant to the presented issue and only act to distract from the merits. What matters here, and what Uniloc decided to focus on, is the fact that specific examples logically related to a topic of discovery are not discrete subparts. Apple's Motion should, accordingly, be de denied.

## II. FACTUAL BACKGROUND

Uniloc served its Second Set of Interrogatories and Second Set of Requests for Production (collectively, "Uniloc's Second Set of Discovery Requests") on August 4 and its Third Set of Interrogatories and Third Set of Requests for Production (collectively, "Uniloc's Third Set of Discovery Requests") on August 21.

In these requests, Uniloc made a request regarding content delivery networks ("CDNs") along with specific examples of the types of documents Uniloc believed to be responsive. Specifically, Request for Production No. 53 seeks "[a]ll documents relating to each [CDN]" used by Apple since 2007, and the specific examples of responsive information are:

> **[1]** presentations, flow charts, logical and physical maps, reports, summaries, data flows, white papers, agreements, contracts, diagrams, specifications, spreadsheets) that describe, identify, or show the logical and physical location, architecture, and layout of each CDN and its servers, nodes, cache locations, and data centers;
>
> **[2]** the processes, steps, and procedures used to provide the functions of storage, distribution, and/or downloading of software in each CDN; the flow of data relating to the storage, distribution, downloading, and sale (including in-app purchases) of software (e.g., apps, operating systems, updates thereto) that is to, from, within, between, and among any and all CDNs and App Store-related servers in the United States and worldwide;
>
> **[3]** Apple's agreements with each third-party CDN provider (e.g., Akamai, Level 3, Limelight, etc.);
>
> **[4]** revenue and costs related to each CDN; and
>
> **[5]** the processes, data flow, and extent to which any CDN based in whole or in part in the United States is involved in the storage, distribution, and/or downloading of software (e.g., apps, operating systems, updates thereto) pertaining to the App Store (including Mac App Store, TV App Store, and Watch App Store), the Accused Functionality, and/or the updating or reconfiguring of applications (including operating systems) via or by the Accused Instrumentalities.

Exh. A, Uniloc's Second Set of Requests for Production, at 20–21 (Request for Production No. 53) (numbering added); *see also* Exh. B, Uniloc's Second Set of Interrogatories, at 15–17 (Interrogatory No. 19). Apple contends that these five examples, together with the general request, constitute six separate requests for production. Dkt. No. 96-11, at 19–20.

Uniloc similarly requested information on patent agreements and licenses between Apple and Koninklijke Philips Electronics N.V. ("Philips"), the original assignee and owner of the '088 Patent. Specifically, Interrogatory No. 21 provides, in pertinent part:

> Identify and describe each agreement, offer, settlement, or transaction involving the licensing or purchase of patents between You and [Philips], relating to any
>
> **[1]** Philips Technology;
>
> **[2]** U.S. Patent No. 6,467,088 and related patent applications;
>
> **[3]** the Accused Products; the Accused Functionality;
>
> **[4]** any technology that You believe is technologically comparable to the '088 Patent; and
>
> **[5]** any technology that You believe is relevant to a *Georgia-Pacific* analysis or an apportionment analysis in this case.

Exh. C, Uniloc's Third Set of Interrogatories, at 8 (numbering added). Apple believes this interrogatory contains five different subparts, counting each specific type of exemplary agreement as a separate interrogatory. Dkt. No. 96-11, at 20–21. In other words, Apple is arguing that the specific topic of patent licenses between Apple and Philips that relate to the Accused Products is (somehow) not factually subsumed within the general topic of patent licenses between Apple and Philips. *See id*.

The remainder of Uniloc's discovery requests followed a similar format as the ones identified above: a narrow request for specific subject matter with examples of the type of information falling within that subject matter to avoid any confusion as to what information Uniloc sought.

After Apple refused to provide full discovery to Uniloc's Second and Third Set of Discovery Requests, the parties met and conferred on August 25, 2020 and October 1, 2020. Apple did not mention on either call that it would file a Motion for Protective Order. Apple filed its Motion on October 2, 2020.

### III.    LEGAL STANDARD

To determine whether, under Rule 33,[1] "discrete subparts" exist, "most courts follow the related question approach.'" *Superior Sales W. Inc. v. Gonzalez*, No. EP-19-CV-329-KC, 2020 U.S. Dist. LEXIS 94740, at *14 (W.D. Tex. May 27, 2020) (quoting *Moser v. Navistar Int'l Corp.*, No. 4:17-cv-598, 2018 U.S. Dist. LEXIS 127007, at *6 (E.D. Tex. July 27, 2018)).  "One articulation of the inquiry is that where one interrogatory can be separated into multiple questions, 'subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories.'" *Id*.

### IV.    ARGUMENT

#### A.    Apple's Motion Is Untimely

"A motion for a Rule 26(c) protective order is not timely if it is filed after the date or time set for the discovery at issue." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015 U.S. Dist. LEXIS 46045, at *4–5 (N.D. Tex. Apr. 8, 2015).  Apple filed its Motion on October 2, 2020, after the response deadline for each of Uniloc's sets of discovery requests:

| Set | Document Title | Date Served | Response Deadline |
|---|---|---|---|
| First | Uniloc's First Set of Interrogatories (Nos. 1–11) | 5/4/20 | 6/3/20 |
| First | Uniloc's First Set of Requests for Production (Nos. 1–43) | 5/4/20 | 6/3/20 |
| Second | Uniloc's Second Set of Interrogatories (Nos. 12–20) | 8/4/20 | 9/3/20 |
| Second | Uniloc's Second Set of Requests for Production (Nos. 44–56) | 8/4/20 | 9/3/20 |
| Third | Uniloc's Third Set of Interrogatories (Nos. 21–22) | 8/21/20 | 9/21/20 |
| Third | Uniloc's Third Set of Requests for Production (Nos. 57–58) | 8/21/20 | 9/21/20 |

---

[1] Unless indicated otherwise, the term "Rule" as used throughout this Response refers to the Federal Rules of Civil Procedure.

Apple's Motion is untimely, and Apple does not attempt to establish good cause for its delay. The facts also show that Apple lacked good cause. Uniloc did not agree to extend the deadline for Apple to move for a protective order, as Apple never mentioned that it would move for a protective order—not in its August 18, 2020 correspondence, not on the August 25, 2020 meet-and-confer call, and not on the October 1, 2020 meet-and-confer call. Apple could have moved in advance of the September deadlines for Uniloc's Second Set of Discovery Requests. And Apple did not even raise an issue with the First Set of Discovery Requests until September 1, 2020—nearly three months after the deadline to respond to those Requests.

The Court would be well within its discretion to deny Apple's Motion on timeliness alone. *See, e.g.*, *Ring Plus, Inc. v. Cingular Wireless, LLC*, No. 2:06CV159, 2007 U.S. Dist. LEXIS 102190, at * 6 (E.D. Tex. July 24, 2007) (finding denial of an untimely motion for protective order appropriate when movant failed to show good cause). And it does not matter that Uniloc and Apple continued to meet-and-confer on these issues in the context of Uniloc's Motion to Compel (which Uniloc timely raised) when Apple itself never even mentioned it would file a Motion for Protective Order. *See E. Coast Test Prep, LLC v. Allnurses.com, Inc.*, No. 15-3705 (JRT/ECW), 2018 U.S. Dist. LEXIS 224307 (D. Minn. Dec. 11, 2018) ("Even if Plaintiff failed to adequately explain why they needed the [discovery] or refused to meaningfully limit their [requests], it was incumbent upon Defendants to seek protection from the Court through a timely motion.").[2]

---

[2] Indeed, Apple's Certificate of Conference is silent on Apple's relief of a Protective Order. It simply states that "Apple has conferred with counsel for Uniloc in a good-faith effort to resolve *the matter presented herein*," Mot. at 11 (emphasis added), which was in connection with Uniloc's Motion to Compel.

1.  **Waived Objections**

Also, for Requests for Production No. 22 and 39, Apple failed to include in its response a specific objection based on the purported existence of discrete subparts. Exh. D, Apple's Responses to Uniloc's First Set of Requests for Production, at 25–26 and 41–42. Apple, thus, waived these objections. *See Morris v. Sorenson*, No. MO-16-CV-00071-KC, 2017 U.S. Dist. LEXIS 224482, at *4 (W.D. Tex. Dec. 14, 2017) (finding waiver of untimely objections to written discovery).

B.  **Uniloc's Discovery Requests Do Not Exceed the Permissible Limits**

Apple contends that Uniloc's Interrogatories Nos. 1, 3, and 12–22 and its Requests for Production Nos. 22, 39, 44–45, 47–50, 53, 55, and 57 contain discrete subparts. Mot. at 6. Apple is incorrect. Each subpart identified by Apple is "logically or factually subsumed within and necessarily related to the primary question" and should, therefore, not be treated as separate interrogatories. *See Superior Sales W.*, 2020 U.S. Dist. LEXIS 94740, at *14. Inspection of the examples used by Apple in its Motion—Interrogatory No. 19 and Request for Production No. 44—demonstrate this point.

The "primary question" of Interrogatory No. 19 is the request for Apple to "identify and describe fully every content delivery network ["CDN"] . . . that [it has] used since 2007 . . . ." *See* Exh. B, Uniloc's Second Set of Interrogatories, at 15–17. Each of the seven subparts identified by Apple seeks particularized information that logically relates to and is subsumed within the overarching primary question. For example, facts showing "the location of all network nodes and servers in the United States and worldwide" logically constitutes a means to "identify and describe" CDNs used by Apple.

Whether or not a request to "identify and describe" Apple's CDN is overbroad, irrelevant, or unduly burdensome is a different analysis and unrelated to the current issue. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 197 (E.D. Tex. 2016) (Discreteness "*turns on* a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory . . . .") (emphasis added).  Here, it is as simple as recognizing that "the location of . . . servers" are facts that logically "describe" CDNs.

The answer is the same in regard to Uniloc's Request for Production No. 44.  For this request, the "primary question" calls for documents reflecting "[Apple's] financial relationship . . . with any [patent licensing] entity . . . ."  *See* Exh. A, Uniloc's Second Set of Requests for Production, at 11–12.  Logically encapsulated in this general request are each subpart identified by Apple, such as the subpart: "documents reflecting any advice or instructions that Apple has provided to any Licensing Entities relating to patent licensing or patent enforcement activities."  *See id*.

The one case Apple relies on to show the existence of discrete subparts—*Erfindergemeinschaft*—actually supports Uniloc's argument. *See Erfindergemeinschaft*, 315 F.R.D. at 199.  In that case, the Court found that an interrogatory seeking "the detailed description of three patent applications . . . and the description of the testing for those applications" contained no discrete subparts. *Id*.  Apple would disagree.  For instance, Uniloc's Request for Production No. 39 reads: "All documents concerning the use, design, implementation, performance, benefits, advantages, and importance of updating or reconfiguring applications (including operating systems) in or relating to the Accused Instrumentality or Accused Functionality." Exh. D, Apple's Responses to Uniloc's First Set of Requests for Production, at 41.  Apple contends that this constitutes two separate requests, believing "benefits" and "importance" must be separated from

"design" and "implementation." Dkt. No. 96-11, at 9. But both of these categories of information logically and factually relate to the "use" of the Accused Functionality, and to say otherwise conflicts with *Erfindergemeinschaft* and would have required that Court to find that the "testing" relating to patent applications is not factually related to a "description" of the applications themselves. *See Erfindergemeinschaft*, 315 F.R.D. at 199.

Further, discovery requests of a nature comparable to Uniloc's have been found by other district courts to lack discrete subparts. For instance, in *Synopsys, Inc. v. Atoptech, Inc.*, the district court found no discrete subparts in an interrogatory that was propounded against a defendant in a patent infringement suit and sought "information about each accused instrumentality . . . including the number of units made, used, sold, licensed, or offered for sale, the revenue realized, the cost of goods sold, the profit realized, and the personal knowledge about [defendant's] response"). 319 F.R.D. 293, 298 (N.D. Cal. 2016). Again, Apple would have reached a different result, as shown by its belief that Uniloc's Request for Production No. 22 contains four discrete subparts. Dkt. No. 96-11, at 5. This Request, however, is materially the same to the one in *Synopsys*, reading: "All documents pertaining to the use, design, development, performance, features, benefits, deployment, implementation, training, sale/license, and offer for sale/license of the Accused Instrumentalities or the Accused Functionality by Your channel partners, app developer partners, and technology partners." Exh. D, Apple's Responses to Uniloc's First Set of Requests for Production, at 25.

As shown, Apple is not drawing its conception of when information is factually and logically subsumed within a request from the comparable caselaw, which it largely neglects to cite in its Motion. Instead, Apple uses a standard that has been contrived to frustrate discovery and is incompatible with the relevant precedent. *See Powell v. Home Depot USA, Inc.* No. 07-80435-

Civ, 2008 U.S. Dist. LEXIS 49144, at *7–9 (S.D. Fla. June 16, 2008) (finding no discrete subparts in an interrogatory calling for "a list of names, addresses and telephone numbers of all persons who participated in the design, development, testing, production, manufacturing, marketing, licensing, or sale . . . of the [accused product], as well as the date, nature, and extent of the participation of all such persons."). It should be rejected.

Even Apple's own discovery conduct contradicts its argument. Each of Apple's discovery requests would likely be found to contain discrete subparts if held to the same standard as the one Apple is attempting to impose on Uniloc, *e.g.*, Apples Interrogatory No. 4 would contain at least five discrete subparts:

> **[1]** Describe with particularity all occasions on which You . . . were offered or agreed to license, convey, or acquire any rights in or to the Patent-in-Suit and for each instance, **[2]** identify any Third Party involved in the offeree, the patents involved, the dates if the relevant communications **[3]** the proposed (and if applicable, actual) terms or conditions of the proposed or actual license . . . **[4]** all individuals having knowledge regarding the instance, and **[5]** all Documents comprising, referring to, or reflecting the instance.

*See* Exh. E, Apple's First Set of Interrogatories, at 6–7 (numbering added).

Additionally, if Apple's Motion is granted, the Court would set a bad precedent and reward Apple for its contradictory behavior meant to frustrate basic discovery requests: Apple did not produce full discovery in response to Uniloc's First Set of Discovery because they were allegedly too broad and now withholds discovery in response to Uniloc's narrower requests on the basis of numerosity. For this, and the other reasons identified above, the Court should find that Uniloc's discovery requests contain no discrete subparts. *See Erfindergemeinschaft*, 315 F.R.D. at 199 (interrogatory that could have asked about chemical compounds generally does not become 11 separate interrogatories merely because the party propounding the interrogatory listed out the compounds, as "*adding specificity in interrogatories is desirable and should not 'be counted as a*

*separate interrogatory*'") (quoting *Ginn v. Gemnini Inc.*, 137 F.R.D. 320, 321–22 (D. Nev. 1991)) (emphasis added).

      **C.**      **Apple Fails to Identify an Argument Applicable to Requests for Production**

The discrete subpart principle originates from a portion of the advisory committee notes to Rule 33, namely, the portion interpreting the 25-interrogatory-limit imposed by Subsection (a)(1) of the Rule. *See* FED. R. CIV. P. 33, 1993 Advisory Committee Notes. Apple does not cite any rule or caselaw applying this standard in the context of Rule 34 requests for production. Its own independent legal conclusions of what is "obvious[]" do not carry any weight. *See* Mot. at 6 n.5. For this additional reason, Apple's request to strike Uniloc's Requests for Production Nos. 52–58 should be rejected. *See United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 U.S. Dist. LEXIS 7480, at *12 (E.D. Tex. Jan. 22, 2016) (finding conclusory allegations insufficient to establish the good cause necessary for a protective order).

**V.**      **CONCLUSION**

For the foregoing reasons, Uniloc respectfully requests that the Court deny Apple's Motion, overrule its objections, and order it to respond to Uniloc's requests.

Dated: October 9, 2020

Respectfully Submitted,

By: */s/*William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Debra Coleman
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
Christian Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin
Texas State Bar No. 50511688
echin@bdavisfirm.com

                                                  Ty Wilson
                                                  Texas State Bar No. 24106583
                                                  Twilson@davisfirm.com
                                                  DAVIS FIRM
                                                  213 N. Fredonia Street, Suite 230
                                                  Longview, Texas 75601
                                                  T: (903) 230-9090
                                                  F: (903) 230-9661

                                                  **Counsel for Plaintiff Uniloc 2017 LLC**

## CERTIFICATE OF SERVICE

      The undersigned certifies that on this 9th day of October, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

                                                  By: */s/ William E. Davis, III*
                                                         William E. Davis, III